ORIGINAL

E-filing

1   BRADLEY S. PHILLIPS (State Bar No. 085263)
    JOHN M. RAPPAPORT (State Bar No. 254459)
2   MUNGER, TOLLES & OLSON LLP
    355 South Grand Avenue, 35th Floor
3   Los Angeles, CA 90071-1560
    Telephone:    (213) 683-9100
4   Facsimile:    (213) 687-3702

5   MICHELLE FRIEDLAND (State Bar No. 234124)
    MUNGER, TOLLES & OLSON LLP
6   560 Mission Street, 27th Floor
    San Francisco, CA 94105-2907
7   Telephone:    (415) 512-4000
    Facsimile:    (415) 512-4077

8

9   CHARLES F. ROBINSON (State Bar No. 113197)
    KAREN J. PETRULAKIS (State Bar No. 168732)
    MARGARET L. WU (State Bar No. 184167)
10  OFFICE OF THE GENERAL COUNSEL
    UNIVERSITY OF CALIFORNIA
11  1111 Franklin Street
    Oakland, CA 94607
12  Telephone:    (510) 987-9800
    Facsimile:    (510) 987-9757
13

14  Attorneys for Defendants
    THE UNIVERSITY OF CALIFORNIA; THE
15  REGENTS OF THE UNIVERSITY OF
    CALIFORNIA; MARK G. YUDOF; MARYE
16  ANNE FOX; GARY MATTHEWS

FILED

APR 20 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

ADR

JCS

JC

17                UNITED STATES DISTRICT COURT

18                NORTHERN DISTRICT OF CALIFORNIA

19              SAN FRANCISCO/OAKLAND DIVISION

C12-01978

20  TIMOTHY WHITE, ROBERT L. BETTINGER, and      CASE NO.
    MARGARET SCHOENINGER,
21                                               **NOTICE OF REMOVAL OF
                   Plaintiffs,                   ACTION UNDER 28 U.S.C. §
22                                               1441**
            vs.
23                                               (Alameda Superior Court Case No.
    THE UNIVERSITY OF CALIFORNIA; THE            RG12625891)
24  REGENTS OF THE UNIVERSITY OF CALIFORNIA;
    MARK G. YUDOF, in his individual and official
25  capacity as President of the University; MARYE ANNE
    FOX, in her individual and official capacity as
26  Chancellor of the University of California, San Diego;
    GARY MATTHEWS, in his individual and official
27  capacity as Vice Chancellor of the University of
    California, San Diego; and DOES 1-50, inclusive,
28
                   Defendants.

16197584.1                                       NOTICE OF REMOVAL

1    TO THE CLERK OF THE ABOVE-ENTITLED COURT:

2         PLEASE TAKE NOTICE that Defendants hereby remove the above-captioned

3    matter, which was commenced in the Superior Court of the State of California in and for the

4    County of Alameda as case number RG12625891, to the United States District Court for the

5    Northern District of California, San Francisco/Oakland Division.

6         In support of their Notice of Removal, Defendants state the following:

7         1.    This is a civil action over which this District Court has original jurisdiction

8    under 28 U.S.C. §§ 1331 and 1367 and 25 U.S.C. § 3013, and which Defendants are entitled to

9    remove to this Court pursuant to 28 U.S.C. §§ 1441(a) and (b).

10        2.    This action is removed on the basis of federal question jurisdiction because

11   it includes claims "arising under the Constitution, laws, or treaties of the United States." 28

12   U.S.C. § 1331. In particular, the First Cause of Action alleges a violation of a federal statute, the

13   Native American Graves Protection and Repatriation Act ("NAGPRA"), 25 U.S.C. § 3001 et seq.

14   (Compl. ¶¶ 47-53); the Third Cause of Action invokes 42 U.S.C. § 1983 and the First

15   Amendment (Compl. ¶¶ 65-71); and the petition for writ of mandamus and/or administrative

16   mandamus arises under both NAGPRA and the Fourteenth Amendment (Compl. ¶¶ 36-38).

17        3.    This action is also removed under NAGPRA itself, which states that "[t]he

18   United States district courts shall have jurisdiction over any action brought by any person alleging

19   a violation of this Act." 25 U.S.C. § 3013. As noted, Plaintiffs' First Cause of Action alleges a

20   violation of NAGPRA. (Compl. ¶¶ 47-53.)

21        4.    Any state-law claims "form part of the same case or controversy" as the

22   federal claims; this Court thus has supplemental jurisdiction over them. 28 U.S.C. § 1367.

23        5.    The Complaint in the Superior Court action was served on Defendants on

24   April 18, 2012. Thus, removal of this action is timely under 28 U.S.C. § 1446(b). *See Murphy*

25   *Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-55 (1999).

26        6.    Removal to the United States District Court for the Northern District of

27   California, San Francisco/Oakland Division, is proper because the Northern District embraces the

28

16197584.1                        - 1 -                        NOTICE OF REMOVAL

1   Superior Court of California for the County of Alameda, where Plaintiffs filed their complaint.

2   28 U.S.C. § 1446(a).

3           7.      Written notice of the filing of this Notice of Removal will be provided to

4   Plaintiffs, and a copy of this Notice will be filed in the appropriate state court, as required by 28

5   U.S.C. § 1446(d). This Notice of Removal is signed pursuant to Fed. R. Civ. P. 11. *See* 28

6   U.S.C. § 1446(a).

7           8.      Attached as Exhibit A are true and correct copies all of the process,

8   pleadings, and orders received or served by Defendants in this action.

9          BASED ON THE FOREGOING, Defendants hereby remove this action, now

10   pending in the Superior Court of the State of California for the County of Alameda, Case Number

11   RG12625891, to the United States District Court for the Northern District of California.

12

13   DATED: April 20, 2012                MUNGER, TOLLES & OLSON LLP
                                            BRADLEY S. PHILLIPS

14                                        MICHELLE FRIEDLAND
                                       JOHN M. RAPPAPORT

15

16                             By: _____
                                       JOHN M. RAPPAPORT

17

18                             Attorneys for Defendants
                            THE UNIVERSITY OF CALIFORNIA; THE

19                             REGENTS OF THE UNIVERSITY OF
                            CALIFORNIA; MARK G. YUDOF; MARYE

20                             ANNE FOX; GARY MATTHEWS

21

22

23

24

25

26

27

28

16197584.1                     - 2 -                       NOTICE OF REMOVAL

Exhibit A

# Case Summary

**RG12625891**          White VS The University Of California

General
Information

Parties

Attorneys

Register
of Actions

Future
Hearings

Minutes

Rulings &
CMC Orders

Tentative
Rulings

Judgments

Related
Cases

## Register of Actions

| Date | Action | Image (Java) | Image (TIFF) |
|---|---|---|---|
| 04/16/12 | Petition for Writ of Mandate Filed | 📄 | 📄 |
| 04/16/12 | Civil Case Cover Sheet Filed for Timothy White | 📄 | 📄 |
| 04/16/12 | Complex Designation Requested | | |
| 04/16/12 | Summons Issued and Filed | 📄 | 📄 |
| 04/17/12 | Temporary Restraining Order & OSC re Preliminary Injunction Reservation Set for dept: 31 date: 04/23 | | |
| 04/18/12 | Miscellaneous errata to petition for writ of mandamus Filed | 📄 | 📄 |
| 04/18/12 | Application Re: Temporary Restraining Order & OSC re Preliminary Injunction Filed for Timothy White, | 📄 | 📄 |
| 04/19/12 | Complex Determination Hearing 05/22/2012 08:45 AM D- 21 | | |
| 04/19/12 | Case Management Conference 06/25/2012 08:30 AM D- 21 | 📄 | 📄 |

1   JAMES McMANIS (40958)
    CHRISTINE PEEK (234573)
2   BRANDON ROSE (269196)
    JENNIFER MURAKAMI (273603)
3   McMANIS FAULKNER
    A Professional Corporation
4   50 West San Fernando Street, 10th Floor
    San Jose, California 95113
5   Telephone:    (408) 279-8700
    Facsimile:    (408) 279-3244
6   Email:    cpeek@mcmanislaw.com

7   Attorneys for Petitioners and Plaintiffs,
    TIMOTHY WHITE,
8   ROBERT L. BETTINGER, and
    MARGARET SCHOENINGER
9

ENDORSED
FILED
ALAMEDA COUNTY

APR 1 6 2012

CLERK OF THE SUPERIOR COURT
By Tasha Perry, Deputy

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                     FOR THE COUNTY OF ALAMEDA

12   TIMOTHY WHITE, an individual; ROBERT          Case No. RG 1 2 6 2 5 8 9 1
     L. BETTINGER, an individual; and
13   MARGARET SCHOENINGER, an individual,

14
                  Petitioners and plaintiffs,
15
                  vs.                              PETITION FOR WRIT OF MANDAMUS
16                                                 (CODE CIV. PROC., § 1085), OR IN THE
                                                   ALTERNATIVE, FOR WRIT OF
17   THE UNIVERSITY OF CALIFORNIA; THE             ADMINISTRATIVE MANDAMUS (CODE
     REGENTS OF THE UNIVERSITY OF                  CIV. PROC., § 1094.5); COMPLAINT FOR
18   CALIFORNIA; MARK G. YUDOF, in his             DECLARATORY AND INJUNCTIVE
     individual and official capacity as President of   RELIEF (CODE CIV. PROC., §§ 526a,
19   the University; MARYE ANNE FOX, in her        1060)
     individual and official capacity as Chancellor of
20   the University of California, San Diego; GARY
     MATTHEWS, in his individual and official
21   capacity as Vice Chancellor of the University of
     California, San Diego; and DOES 1-50,
22   inclusive,

23                Respondents and defendants.

24

25

26

27

28
                                                1
     PETITION FOR WRIT OF MANDAMUS; COMPLAINT, Case No.

1    1.    Petitioners and Plaintiffs, TIMOTHY WHITE ("WHITE"), ROBERT L.

2    BETTINGER ("BETTINGER"), and MARGARET SCHOENINGER ("SCHOENINGER"),

3    (collectively "Petitioners" or "Plaintiffs"), allege as follows:

4    **PARTIES**

5    2.    Plaintiff WHITE is an individual who lives in Berkeley, California. He is a real

6    property owner in and resident of the County of Alameda and the State of California, and pays

7    federal, state, and local taxes. WHITE is a professor of Integrative Biology at the University of

8    California, Berkeley. He holds Bachelor of Science degrees in both Biology and Anthropology

9    from the University of California, Riverside, and a Master of Arts and Ph.D. in Biological

10    Anthropology from the University of Michigan, Ann Arbor. He is renowned for his work in the

11    study of ancient humans. For example, in the 1990's, WHITE led an expedition in Ethiopia that

12    resulted in the discovery of a 4.4 million-year-old skeleton, dubbed "Ardi," which predated Lucy

13    by 1.2 million years.

14    3.    Plaintiff BETTINGER is an individual who lives in Davis, California. He is a

15    real property owner in and resident of the County of Solano and the State of California, and pays

16    federal, state, and local taxes. BETTINGER is a professor of Anthropology at the University of

17    California, Davis. He holds a Bachelor of Arts and a Ph.D. in Anthropology from the University

18    of California, Riverside. BETTINGER's scholarship and fieldwork have focused on hunter-

19    gatherers and the population expansions of hunter-gatherers.

20    4.    Plaintiff SCHOENINGER is an individual who lives in Encinitas, California. She

21    is a real property owner in and resident of the County of San Diego and the State of California,

22    and pays federal, state, and local taxes. SCHOENINGER is a professor of Anthropology at the

23    University of California, San Diego. She holds a Bachelor of Arts in Anthropology from the

24    University of Florida, a Master of Arts in Anthropology from the University of Cincinnati, and a

25    Ph.D. in Anthropology from the University of Michigan. SCHOENINGER's research centers on

26    the subsistence strategies of early humans.

27    5.    Defendant UNIVERSITY OF CALIFORNIA ("UNIVERSITY") is a public trust

28    established by article IX of the California Constitution.

2

1    4.    Defendant THE REGENTS OF THE UNIVERSITY OF CALIFORNIA
2  ("REGENTS") is a public corporation that administers the UNIVERSITY. (Cal. Const., art. IX,
3  § 9, subd. (a).)

4    5.    Defendant MARK YUDOF ("YUDOF") is an individual, who serves as President
5  of the UNIVERSITY. The President is the chief executive officer of the UNIVERSITY, and
6  governs through authority delegated by the REGENTS. The President is responsible directly to
7  the REGENTS. Moreover, the President "shall serve as the guardian of the public trust, ensuring
8  legal and ethical compliance, managing system risk, and providing information regarding
9  University activities." (*See* Regents Policy 1500, Statement Of Expectations Of The President
10  Of The University (March 2011) ("Regents Policy"), *available at*
11  http://www.universityofcalifornia.edu/regents/policies/1500.html.) YUDOF is sued here in his
12  individual and official capacities.

13    6.    Defendant MARYE ANNE FOX ("FOX") is an individual employed by
14  employed by the UNIVERSITY as the Chancellor of its San Diego campus ("UCSD"). The
15  campus Chancellor is the chief campus officer and executive head of all campus activities. FOX
16  is sued here in her individual and official capacities.

17    7.    Defendant GARY MATTHEWS ("MATTHEWS") is an individual employed by
18  the UNIVERSITY as Vice Chancellor, Resource Management and Planning, at UCSD. He is
19  sued here in his individual and official capacities.

20    8.    Plaintiffs do not know the true names and capacities of Defendants DOES 1
21  through 50, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiffs
22  may amend this Writ Petition and Complaint to allege their true names and capacities when
23  ascertained. Plaintiffs are informed and believe that each of the fictitiously named Defendants is
24  responsible in some manner for the occurrences herein alleged, and that the illegal acts as herein
25  alleged were proximately caused by their conduct.

26    9.    At all times referenced herein, Defendants, including those named as DOES 1
27  through 50, were the agents, servants, and employees of their co-defendants, and in doing the
28  things alleged were acting in the scope of their authority as such agents, servants and employees,

3

1 | under the direction and supervision and with the permission and consent of their co-defendants.

2 | **GENERAL ALLEGATIONS**

3 |     10.    In 1976, Professor Gail Kennedy of UCLA led an archaeological field excavation

4 | project on University property in San Diego (the "site"). The Chancellor's official residence,

5 | University House, is also located on the site. Professor Kennedy's team discovered a rare double

6 | burial. The bones have great scientific significance due to the age of the two skeletons ("La Jolla

7 | Skeletons"), which are estimated to date back 8977 to 9603 years ago. The La Jolla Skeletons

8 | are extremely old by North American osteological standards. They are similar to, though likely

9 | older than, another skeleton found in Kennewick in 1996, which was the subject of federal

10 | litigation that resolved in 2004. (*See Bonnichsen v. United States* (9th Cir. 2004) 367 F.3d 864.)

11 | Because of their extreme age and relatively good condition, the La Jolla Skeletons represent a

12 | unique opportunity for all people to understand human origins in North America.

13 |     11.    The SAN DIEGO ARCHAEOLOGICAL CENTER ("SDAC") presently has

14 | physical custody of the La Jolla Skeletons, and holds them on behalf of the UNIVERSITY. The

15 | SDAC is a California nonprofit corporation located in Escondido, California. By taking custody

16 | of the La Jolla Skeletons on behalf of the UNIVERSITY, the SDAC is acting as the

17 | UNIVERSITY's agent with respect to the La Jolla Skeletons.

18 |     12.    In 1990, Congress passed the Native American Graves Protection and

19 | Repatriation Act ("NAGPRA"). NAGPRA imposes various requirements on, inter alia, state

20 | government agencies and institutions of higher learning that receive federal funds, and that hold

21 | "Native American" human remains or cultural items. NAGPRA defines "Native American" as

22 | follows:

23 |         'Native American' means of, or relating to, a tribe, people, or culture that is
        indigenous to the United States.

24 |

25 | (25 U.S.C. § 3001(9).) The Ninth Circuit has held that human remains must bear some

26 | relationship to a presently existing tribe, people, or culture to be considered "Native American"

27 | within the meaning of NAGPRA. (*See Bonnichsen v. United States, supra,* 367 F.3d at 875-76.)

28 | NAGPRA does not apply to remains that are not "Native American" or "Native Hawaiian." For

PETITION FOR WRIT OF MANDAMUS; COMPLAINT, Case No.

1    remains or cultural items that are "Native American," NAGPRA may require that they be
2    "repatriated" or returned to a tribe, depending on whether or not certain conditions are met.
3    NAGPRA's statutory scheme does not require repatriation of "culturally unidentifiable" human
4    remains, however.

5        13.    NAGPRA requires those entities subject to it to compile an inventory of "Native
6    American" human remains and cultural objects in their possession, and to submit the inventory
7    to the DOI. (25 U.S.C. § 3003.)

8        14.    The UNIVERSITY has created a system-wide University Advisory Group on
9    Cultural Repatriation and Human Remains and Cultural Items ("Advisory Group"). (*See*
10   University of California Policies and Procedures On Curation and Repatriation of Human
11   Remains and Cultural Items ("Human Remains Policies").) The Human Remains Policies are
12   attached as Exhibit A. If a tribe requests repatriation, the Advisory Group must review all
13   campus determinations and report its findings and recommendations to the President or the
14   President's designee. The President or the President's designee has final authority to approve or
15   disapprove determinations regarding disposition of remains and cultural items.

16       15.    Under the Human Remains Policies, each campus with a collection of Native
17   American remains or cultural items must designate a liaison to work with native communities
18   considering or requesting repatriation from the UNIVERSITY. Defendant MATTHEWS is the
19   liaison for the San Diego campus.

20       16.    The Kumeyaay Nation ("Kumeyaay"), a coalition of 12 Native American tribes,
21   claims to have occupied the site on which the La Jolla Skeletons were found. Although the
22   Kumeyaay have asserted that the La Jolla Skeletons are culturally affiliated with their coalition
23   of tribes, there is insufficient evidence to support the conclusion that the Kumeyaay are
24   descended from the people who were buried at the site, approximately 10,000 years ago. In
25   addition, there is insufficient evidence to conclude that any Kumeyaay tribe actually occupied
26   the site at the time the La Jolla Skeletons were buried there. The evidence does not support a
27   finding that there is any link between the La Jolla Skeletons and any Kumeyaay tribe, or any
28   currently existing Native American tribe, for the following reasons, among other reasons:

5

PETITION FOR WRIT OF MANDAMUS; COMPLAINT, Case No.

1         a.     The burial pattern of the La Jolla Skeletons differs from that of the

2    Kumeyaay as reported in early ethnographies. Before the Spanish explorers made

3    contact with North America, the Kumeyaay cremated, rather than buried, their dead.

4         b.     Preliminary carbon and nitrogen stable isotope analysis of human bone

5    collagen from the La Jolla Skeletons is consistent with a year-round diet of open-ocean

6    and some nearshore marine fish or marine mammals. This contrasts with the diet of the

7    Kumeyaay, who lived on wild plants, supplemented with more small than large game,

8    and in some places, fish. Seasonal dependence on marine foods would produce lower

9    values of the isotope signals than those recovered from the La Jolla Skeletons.

10        c.     The skeletal morphology of the La Jolla Skeletons does not show any link

11    to the Kumeyaay, or any other Native American tribe. The La Jolla Skeletons have long,

12    narrow cranial vaults and short, relatively narrow faces compared with extant Native

13    Americans. A detailed 2007 morphological study by Professor Douglas Owsley

14    concluded the La Jolla Skeletons were not Native American.

15        d.     Because there has been no genetic testing of the La Jolla Skeletons

16    (because the UNIVERSITY has not allowed any testing), there is no genetic or DNA

17    evidence linking the Kumeyaay or any other Native American tribe to the La Jolla

18    Skeletons.

19       17.    On or about October 22, 2008, the UNIVERSITY submitted a "Notice of

20  Inventory Completion" and inventory to the United States Department Of The Interior ("DOI"),

21  which included the La Jolla Skeletons and various other items said to be associated with the

22  remains. The DOI includes, as a bureau, the National Park Service ("NPS"). In turn, the NPS

23  includes the Native American Graves Protection and Repatriation Review Committee

24  ("NAGPRA Review Committee").

25       18.    The inventory was based on a 2008 report written by the local UC San Diego

26  NAGPRA Review Committee. The 2008 report was silent on whether the La Jolla Skeletons

27  were "Native American" within the meaning of NAGPRA, and made no attempt to determine

28  whether or not the La Jolla Skeletons were subject to NAGPRA. The 2008 report did conclude,

6

1 | however, that there was insufficient evidence to conclude the remains were culturally affiliated
2 | with the Kumeyaay.

3       19.    Because there is insufficient evidence to conclude the La Jolla Skeletons are
4 | "Native American" within the meaning of NAGPRA, Defendants' decision to include them on
5 | the October 22, 2008 inventory was legally erroneous. NAGPRA and its accompanying
6 | regulations do not apply to the La Jolla Skeletons at all, because the La Jolla Skeletons do not
7 | fall within the class of human remains that NAGPRA covers. Therefore, the La Jolla Skeletons
8 | should not have been included on any federal inventory.

9       20.    On or about February 23, 2009, MATTHEWS submitted to the DOI, through its
10 | NAGPRA Review Committee, a Request by a Museum or Federal Agency that the Review
11 | Committee Act on an Agreement Concerning the Disposition of Human Remains and Associated
12 | Funerary Objects Determined to be Unidentifiable ("2009 Repatriation Request").
13 | MATTHEWS requested that the DOI approve an agreement between FOX and the Kumeyaay
14 | Cultural Repatriation Committee ("KCRC") to transfer custody of the La Jolla Skeletons to the
15 | KCRC. The KCRC is a coalition of 12 different Kumeyaay tribes of San Diego County. The
16 | 2009 Repatriation Request was later withdrawn.

17       21.    In 2010, the DOI and its Secretary Ken Salazar ("Salazar") purported to
18 | promulgate a new federal regulation governing the disposition of "culturally unidentifiable"
19 | human remains that meet NAGPRA's definition of "Native American." For all "culturally
20 | unidentifiable" "Native American" human remains, Salazar and the DOI purported to impose the
21 | following requirements, among other requirements:

22       a.    Requirements that the federal agency or museum in possession of the
23 | remains consult with tribal representatives concerning culturally unidentifiable remains
24 | and associated funerary objects;

25       b.    Requirements that federal agencies and museums offer to transfer control
26 | of such remains to "(i) [t]he Indian tribe . . . from whose tribal land, at the time of the
27 | excavation or removal, the human remains were removed; or (ii) [t]he Indian tribe or
28 | tribes that are recognized as aboriginal to the area from which the human remains were

1    removed," unless the agency or museum can prove a right of possession;

2              c.       Authorization for federal agencies and museums to transfer control to

3    other tribes or Native Hawaiian organizations, in the event no tribe described above

4    agrees to accept the remains; and

5              d.       Notification requirements.

6        22.    On or about June 4, 2010, YUDOF wrote to FOX, stating that he planned to give

7    "significant deference" to the Chancellors of the respective UC campuses regarding decisions

8    about the disposition of remains.  YUDOF instructed FOX that the UCSD campus had the

9    responsibility to conduct consultations and analysis required under NAGPRA, and to make

10   initial determinations and recommendations regarding cultural affiliation.  YUDOF further

11   instructed FOX that once UCSD completed its assessment, it should determine whether it needed

12   to amend the previous NAGPRA inventory or prepare a new draft Notice of Inventory

13   Completion.

14       23.    The La Posta Band of Diegueno Mission Indians of the La Posta Reservation ("La

15   Posta Band of Mission Indians") is a federally recognized tribe of Kumeyaay people.

16       24.    On or about August 2, 2010, Steve Banegas, a spokesperson for the KCRC, wrote

17   to the UCSD campus and requested that the La Jolla Skeletons be repatriated to the La Posta

18   Band of Mission Indians, along with certain other objects previously excavated from the site.

19       25.    On or about October 21, 2010, MATTHEWS circulated a new Draft Notice of

20   Inventory Completion ("Draft Notice") for review by the Advisory Group.  The new notice was

21   deficient for many reasons.  It referred to "associated funerary items," even though the published

22   paper describing the burials stated that no cultural items were found in association with the La

23   Jolla Skeletons.  It asserted that stone and shell recovered from the site was "reasonably believed

24   to have been placed with or near" the La Jolla Skeletons, "at the time of death or later as part of

25   the death rite or ceremony," without any factual support, and in apparent contradiction to Gail

26   Kennedy's account of the excavation.  The Draft Notice referred to the La Jolla Skeletons as

27   "Native American," despite a detailed 2007 morphological study by Professor Owsley

28   concluding they were not Native American.  Finally, the Draft Notice stated that a detailed

8

1 | assessment of the La Jolla Skeletons had been made by UC professional staff, when in fact, the
2 | only staff who had seen the La Jolla Skeletons included Gail Kennedy (who did not refer to them
3 | as Native American), Philip Walker (now deceased, who concluded they were not Native
4 | American), and plaintiff SCHOENINGER. SCHOENINGER never made any determination that
5 | the remains were "Native American" within the meaning of NAGPRA, nor was she asked to do
6 | so. In its responses to comments published along with the final version of 43 C.F.R. § 10.11, the
7 | DOI included language indicating that museums must make a "threshold determination" that
8 | culturally unidentifiable remains are "Native American" before including them on a federal
9 | inventory. (See 75 Fed.Reg. 12387 (response to Comment 55).)

10 | 26. On or about March 2, 2011, the Advisory Group considered MATTHEWS' Draft
11 | Notice and submitted a summary and report. The Advisory Group recommended that UCSD
12 | should not forward the Draft Notice without further consultation with tribes other than the
13 | Kumeyaay. The Advisory Group also recommended that the San Diego campus reanalyze
14 | whether the supposed "associated funerary objects" are, in fact, funerary objects, and if not, to
15 | revise the Draft Notice accordingly. The Advisory Group did not reach a consensus on any other
16 | recommendations.

17 | 27. On or about May 11, 2011, YUDOF wrote to FOX, stating that he intended to
18 | defer to the campus's determination on the issue of whether or not the remains were "Native
19 | American" under NAGPRA, and to authorize the campus to proceed under the NAGPRA
20 | process. YUDOF authorized UCSD to dispose of the La Jolla Skeletons under NAGPRA,
21 | subject to the following directions and recommendations:

22 | a. UCSD was required to reanalyze, including through expert analysis,
23 | whether the materials listed on the Draft Notice were funerary objects, and if not, to
24 | revise the Draft Notice.

25 | b. YUDOF advised UCSD to revise its Notice of Inventory Completion to
26 | acknowledge an alleged "division among experts" on the issue of whether the La Jolla
27 | Skeletons are "Native American" within the meaning of NAGPRA.

28 | c. YUDOF instructed UCSD to consult more broadly with other tribes in the

9

1    region. Following this consultation, if UCSD determined that additional tribes were

2    aboriginal to the site, YUDOFF instructed UCSD to revise its Notice of Inventory

3    Completion accordingly. If there were no competing claims, however, YUDOF

4    authorized FOX to dispose of the La Jolla Skeletons to the La Posta Band of Mission

5    Indians in accordance with NAGPRA, 30 days after publication in the Federal Register.

6    28.    The La Jolla Skeletons are in good enough condition that it may be possible to

7    retrieve DNA samples and perform DNA sequencing. Not only would this provide a wealth of

8    information of interest to the general public, such sequences also could be used to assess whether

9    or not the remains share any genetic affiliation with modern Native American groups.

10    29.    FOX and UCSD have authority to grant requests to study the La Jolla Skeletons,

11    but have refused to allow any research to be conducted.

12    30.    On or about August 16, 2010, BETTINGER requested permission to study the La

13    Jolla Skeletons. He proposed to perform (1) macro-morphological work; (2) stable isotope

14    analyses to determine diet and place of origin; and (3) ancient DNA work to establish genetic

15    affinity. These studies are essential to understanding the colonization of California and Western

16    North America, and of the New World generally. These studies are also central to

17    BETTINGER's long-standing research on hunter gatherers and hunter gatherer expansions. Dr.

18    Art Ellis, UCSD Vice Chancellor for Research, replied that UCSD was finalizing procedures for

19    dealing with such requests and that while he (Ellis) was shortly leaving UCSD, he had forwarded

20    BETTINGER's request to Associate Vice Chancellor George Tynan, whom BETTINGER could

21    look forward to hearing from. BETTINGER never heard back from Tynan. If the repatriation

22    does not go forward, BETTINGER and other experts in the field of ancient DNA and stable

23    isotope analysis plan to pursue these studies. Because they are so well preserved, and because

24    there are two of them, the La Jolla Skeletons present a unique opportunity to study patterns at a

25    population level rather than an individual level, enabling scientists to apply the results of the

26    studies in a wide variety of other contexts. No other set of New World remains holds such a high

27    degree of research potential.

28    31.    In or about April, 2009, WHITE asked to study the La Jolla Skeletons. He

10

PETITION FOR WRIT OF MANDAMUS; COMPLAINT, Case No.

1 engaged in communications with various UNIVERSITY representatives regarding his request
2 from 2009 to 2011 without ever receiving a final response to his request. For WHITE, the La
3 Jolla Skeletons represent part of a worldwide sample of early humanity, which is critical to the
4 understanding of the species, *Homo sapiens*. If the La Jolla Skeletons are not repatriated,
5 WHITE still plans to study them.

6      32.     In 2009, SCHOENINGER spoke informally to the Senior Vice Chancellor for
7 Academic Affairs, Paul Drake, and the then Vice Chancellor for Research at UCSD, Art Ellis,
8 about studying the La Jolla Skeletons. She gave a presentation to the Academic Senate Council
9 regarding the research value of the skeletons in 2009. The Academic Senate Council told
10 SCHOENINGER she could not study the La Jolla Skeletons or involve herself further in any
11 requests to study them, because she allegedly had a "conflict of interest." SCHOENINGER
12 wants to preserve the opportunity to study the La Jolla Skeletons in the future, especially in the
13 event that studies by BETTINGER or WHITE implicate new research questions in her area of
14 focus.

15      33.     On or about December 5, 2011, defendants published, or caused to be published,
16 in the Federal Register, a Notice of Inventory Completion: The University of California, San
17 Diego, San Diego, CA ("Repatriation Notice"). The Repatriation Notice is attached as Exhibit
18 B. The Repatriation Notice stated that if no one else came forward and claimed the La Jolla
19 Skeletons by January 4, 2012, the La Jolla Skeletons would be repatriated to the La Posta Band
20 of Mission Indians after that date. The Repatriation Notice also made the following purported
21 findings, among other findings:

22        a.     The La Jolla Skeletons are "Native American," pursuant to 25 U.S.C. §
23 3001(9).

24        b.     Pursuant to 25 U.S.C. § 3001(2), a relationship of shared group identity
25 cannot be reasonably traced between the La Jolla Skeletons and any present-day Indian
26 tribe.

27        c.     Pursuant to 25 U.S.C. § 3001(3)(A), approximately 25 objects found at the
28 site are "reasonably believed to have been placed with or near" the La Jolla Skeletons, "at

1    the time of death or later as part of the death rite or ceremony."

2        d.    Pursuant to 43 C.F.R. § 10.11(c)(1), and based upon request from the

3    Kumeyaay Cultural Repatriation Committee, on behalf of the 12 associated Kumeyaay

4    tribes, disposition of the La Jolla Skeletons is to the La Posta Band of Diegueno Mission

5    Indians of the La Posta Indian Reservation, California.

6    34.    On or about January 25, 2012, the parties entered into a Tolling Agreement, by

7    which respondents and defendants agreed that, "any and all statutes of limitation applicable to

8    any claims whatsoever that plaintiffs may have against defendants relating to the La Jolla

9    Skeletons that have not already expired shall be tolled to and including April 16, 2012."

10   ## PETITION FOR WRIT OF MANDAMUS (Code Civ. Proc. § 1085),
11   ## OR IN THE ALTERNATIVE, FOR WRIT OF ADMINISTRATIVE MANDAMUS
     ## (Code Civ. Proc. § 1094.5)

12   ### [All Petitioners Against All Respondents]

13

14   35.    Petitioners hereby incorporate by reference paragraphs 1 through 33, inclusive.

15   36.    NAGPRA only applies to the La Jolla Skeletons if they meet the legal definition

16   of "Native American" under NAGPRA.  Title 43, part 10.11, subdivision (a) of the Code of

17   Federal Regulations also specifically states that it applies "to human remains previously

18   determined to be Native American under § 10.9, but for which no lineal descendant or culturally

19   affiliated Indian tribe or Native Hawaiian organization has been identified."

20   37.    Under NAGPRA and its accompanying regulations, Respondents have a clear,

21   present, mandatory and ministerial duty to make a formal determination whether or not the La

22   Jolla Skeletons are "Native American" within the meaning of NAGPRA, before repatriating

23   them under the alleged authority of 43 C.F.R. § 10.11.

24   38.    Under article I, sections 7 and 15 of the California Constitution, and the

25   Fourteenth Amendment to the United States Constitution, Respondents have a clear, present,

26   mandatory and ministerial duty to comply with the minimum requirements of due process,

27   including a clear, present, mandatory and ministerial duty to avoid imposition of arbitrary

28   adjudicative procedures.

39.     In addition, Respondents have a clear, present, mandatory and ministerial duty to administer the UNIVERSITY as a public trust, pursuant to the state constitutional mandate. "[D]ecisions are to be made solely to promote the best interests of the University as a public trust, rather than the interests of a particular constituency, and that Board members will disclose personal, familial, business relationships, or other potential conflicts of interest as appropriate." (*See* Regents Policy 1100, Statement Of Expectations Of The Members Of The Board Of Regents (Jan. 2010), *available at* http://www.universityofcalifornia.edu/regents/policies/ 1100.html.) The public has an interest in preserving scientifically and historically significant items, as does the UNIVERSITY.

40.     Petitioners are beneficially interested in the issuance of a writ of mandamus, because they have a clear, present, substantial and vested right in Respondents' performance of their duty to determine whether or not NAGPRA and its accompanying regulations actually apply to the La Jolla Skeletons, before Respondents dispose of them to the Kumeyaay. A disposition without such a formal determination would arbitrarily and illegally destroy the La Jolla Skeletons' incalculable scientific value to Petitioners, and to the public at large, and would violate NAGPRA.

41.     In addition, Petitioners are beneficially interested as citizens and taxpayers in Respondents' performance of their duties under the law. Respondents' threatened act of repatriation not only would deprive Petitioners' of any opportunity to research the La Jolla Skeletons, it would also arbitrarily and illegally deprive all members of the public of the opportunity to understand the origins of humanity in North America.

42.     The above-described actions of Respondents, including but not limited to, Respondents' inclusion of the La Jolla Skeletons on the October 22, 2008 Notice of Inventory Completion and the Repatriation Notice, were arbitrary and capricious, in excess of Respondents' jurisdiction, a prejudicial abuse of their discretion, and/or there was not a fair trial, for, inter alia, the following reasons:

    a.     Respondents failed to make a formal and adequate finding or
           determination whether or not the La Jolla Skeletons are "Native American" under

13

PETITION FOR WRIT OF MANDAMUS; COMPLAINT, Case No.

NAGPRA. On information and belief, Respondents failed to consider any evidence or conduct a hearing on this issue. In failing to make this decision using procedures that meet minimum constitutional standards, and in making their purported "findings" without considering any evidence or providing Petitioners.a full and fair opportunity to present evidence, Respondents acted in an arbitrary and capricious manner, in violation of Petitioners' fundamental due process rights, and in violation of Respondents' duty to administer the University as a public trust;

b.      For the same reasons, Respondents' decision to include the La Jolla Skeletons on the October 22, 2008 Notice of Inventory Completion and the Repatriation Notice was not supported by an adequate finding or determination that the La Jolla Skeletons are "Native American" under NAGPRA;

c.      To the extent Respondents made a formal finding or determination that the La Jolla Skeletons were "Native American" under NAGPRA, their determination was arbitrary and capricious, not supported by the weight of the evidence, and/or was not supported by substantial evidence in light of the whole record. Respondents' decision was further flawed in that Respondents apparently based their decision on the geographic relationship of the Kumeyaay to the UCSD site, even though the "aboriginal territories" occupied and defined for historic Indian tribes are not in any way linked to the prehistoric territories that their lineal ancestors may have occupied;

d.      Petitioners were not allowed to present evidence in opposition to Respondents' summary conclusion that the La Jolla Skeletons were "Native American" within the meaning of NAGPRA;

e.      On information and belief, Respondents did not reanalyze whether the materials listed on the Draft Notice were funerary objects, as required by YUDOF's May 11, 2011 letter;

f.      On information and belief, Respondents' purported finding that the 25 objects were "reasonably believed" to have been placed at the site at or near the time of death or later as part of the "death rite or ceremony" is not supported by any evidence in

14

1   the record, and/or Petitioners were not allowed to present evidence in opposition to

2   Respondents' summary conclusion. Respondents' purported finding is arbitrary and

3   capricious ;

4        g.    The Human Remains Policies Respondents followed in drafting and

5   submitting the Notice of Inventory Completion and Repatriation Notice are fatally

6   flawed, because they provide no guidelines for determining whether remains are "Native

7   American" within the meaning of NAGPRA. Furthermore, they provide no standards

8   governing what evidence is admissible on the question of whether the remains are

9   "Native American" within the meaning of NAGPRA, or what weight the evidence is to

10   be given. The lack of standards renders it impossible for Petitioners to challenge the

11   evidence presented or Respondents' summary conclusion. The Human Remains Policies

12   do not provide notice of what evidence may be relied upon in the evaluation of whether

13   remains are or are not "Native American." The lack of procedures and standards renders

14   the Human Remains Policies unconstitutionally vague and violates due process.

15        43.    By including the La Jolla Skeletons on the October 22, 2008 Notice of Inventory

16   Completion and Repatriation Notice, Respondents acted in an arbitrary and capricious manner

17   and in violation of Petitioners' and the public's right to a fair determination of whether or not the

18   La Jolla Skeletons are "Native American" within the meaning of NAGPRA.

19        44.    Petitioners have no plain, speedy, and adequate remedy in the ordinary course of

20   law other than the relief sought by this petition.

21        45.    Petitioners have exhausted all administrative procedures required of them by law.

22        46.    If the relief sought by this petition is not granted, Petitioners and the general

23   public will suffer irreparable injury and harm, in that the ability to study the La Jolla Skeletons

24   will be lost forever. Petitioners are informed and believe that Respondents will repatriate the

25   remains to the La Posta Band of Mission Indians as soon as possible after January 4, 2012,

26   unless Respondents are restrained by this Court. Petitioners are informed and believe that the La

27   Posta Band of Mission Indians will fail to maintain the skeletons in a manner that preserves their

28   scientific value, and therefore the skeletons' scientific value will be destroyed, unless

PETITION FOR WRIT OF MANDAMUS; COMPLAINT, Case No.

1  Respondents are restrained by this Court.

2      WHEREFORE, Petitioners pray for judgment against Respondents as set forth below.

3                                 **COMPLAINT**

4  **FIRST CAUSE OF ACTION – DECLARATORY AND INJUNCTIVE RELIEF -**
5  **VIOLATION OF NAGPRA (Code Civ. Proc. §§ 526a, 1060)**

6                        **[All Plaintiffs Against All Defendants]**

7      47.    Plaintiffs hereby incorporate by reference paragraphs 1 through 45, inclusive.

8      48.    NAGPRA only applies to the La Jolla Skeletons if they meet the legal definition

9  of "Native American" under NAGPRA. Title 43, part 10.11, subdivision (a) of the Code of

10  Federal Regulations also specifically states that it applies "to human remains previously

11  determined to be Native American under § 10.9, but for which no lineal descendant or culturally

12  affiliated Indian tribe or Native Hawaiian organization has been identified." Defendants' actions

13  in approving the transfer of the La Jolla Skeletons to the La Posta Band of Mission Indians are

14  illegal, invalid, null and void, because Defendants failed to make a finding or determination, or

15  failed to make an adequate finding or determination, that the remains are "Native American"

16  within the meaning of NAGPRA. Defendants' actions are also illegal, invalid, null and void to

17  the extent Defendants concluded the remains were "Native American," because their conclusion

18  is not supported by the evidence.

19      49.    Defendants have expended public funds in support of their illegal efforts to

20  repatriate the La Jolla Skeletons, without determining whether they are "Native American"

21  within the meaning of NAGPRA, and/or without considering all of the evidence concerning

22  whether or not the La Jolla Skeletons are "Native American" within the meaning of NAGPRA.

23      50.    An actual, present controversy exists between Plaintiffs and Defendants, because

24  Plaintiffs contend and Defendants deny that that Defendants' actions in approving the transfer of

25  the La Jolla Skeletons to the La Posta Band of Mission Indians are illegal, invalid, null and void.

26      51.    Plaintiffs desire a judicial determination that Defendants' actions in approving the

27  transfer of the La Jolla Skeletons to the La Posta Band of Mission Indians are illegal, invalid,

28  null and void. A judicial declaration is necessary and appropriate at this time, so that Plaintiffs

                                          16

1 | may ascertain their rights, the rights of the general public, and Defendants' duties under the law.

2 |     52.    Unless Defendants are enjoined, Plaintiffs and the general public will suffer

3 | irreparable injury and harm, in that the ability to study the La Jolla Skeletons will be lost forever.

4 | Plaintiffs are informed and believe that Defendants will repatriate the remains to the La Posta

5 | Band of Mission Indians as soon as possible after January 4, 2012, unless Defendants are

6 | restrained by this Court. Plaintiffs are informed and believe that the La Posta Band of Mission

7 | Indians will fail to maintain the skeletons in a manner that preserves their scientific value, and

8 | therefore the skeletons' scientific value will be destroyed, unless Defendants are restrained by

9 | this Court.

10 |     53.    Plaintiffs and the general public have no plain, adequate, or speedy remedy at law

11 | and are entitled to injunctive relief against Defendants. Plaintiffs and the general public have no

12 | administrative remedy because Defendants' procedures for approving the transfer of the La Jolla

13 | Skeletons, and the short timeframe for repatriation after Defendants published their Repatriation

14 | Notice, preclude any administrative relief.

15 | 

### SECOND CAUSE OF ACTION – DECLARATORY AND INJUNCTIVE RELIEF - BREACH OF PUBLIC TRUST

16 |

17 | 

**[All Petitioners Against Defendants REGENTS, YUDOF, FOX and MATTHEWS]**

    54.    Plaintiffs hereby incorporate by reference paragraphs 1 through 52, inclusive.

18 |

19 |     55.    The UNIVERSITY is a public trust established by article nine of the California

20 | Constitution.

21 |     56.    The La Jolla Skeletons are part of the public trust that is the UNIVERSITY. In

22 | addition, the UNIVERSITY maintains its collections of human remains and cultural items – to

23 | which the La Jolla Skeletons belong – as a public trust.

24 |     57.    Defendants REGENTS and YUDOF are trustees of the UNIVERSITY. FOX is

25 | an agent of YUDOF when she is performing YUDOF's duties as trustee of the UNIVERSITY.

26 | MATTHEWS is an agent of YUDOF when acting as an agent of FOX when she is performing

27 | YUDOF's duties as trustee of the UNIVERSITY. Plaintiffs are informed and believe that

28 | YUDOF and the REGENTS neglected to take reasonable steps to compel FOX and

17

1  MATTHEWS to correct what defendants knew or should have known were violations of

2  NAGPRA.

3      58.     Plaintiffs and the general public are beneficiaries of the public trust, of which the

4  La Jolla Skeletons are a part.

5      59.     Defendants have a duty to administer the UNIVERSITY as a public trust,

6  pursuant to the state constitutional mandate. (*See* Regents Policy 1100 (REGENTS are to serve

7  as trustees for the people of the State of California and as stewards for the University of

8  California, "acting to govern the University in fulfillment of its educational, research, and public

9  service missions in the best interests of the people of California"); *see also* Regents Policy 1500

10  ("The President is expected to direct the management and administration of the University of

11  California system consistent with the Bylaws and Standing Orders, administering the University

12  in fulfillment of its educational, research, and public service missions in the best interests of the

13  people of California").) Defendants have a duty to fulfill the UNIVERSITY's educational,

14  research, and public service missions in the best interests of the people of California.

15      60.     Defendants breached their duty to Plaintiffs and to the public to administer the

16  public trust for the public interest by (1) arbitrarily and capriciously including the La Jolla

17  Skeletons on the October 22, 2008 Notice of Inventory Completion and Repatriation Notice,

18  even though defendants lacked a reasonable or good faith belief that the remains are "Native

19  American" within the meaning of NAGPRA; (2) approving the transfer of the La Jolla Skeletons

20  to the La Posta Band of Mission Indians, even though defendants lacked a reasonable or good

21  faith belief that the remains are "Native American" within the meaning of NAGPRA, or that they

22  had any relationship to the tribe known as the La Posta Band of Mission Indians; (3) failing to

23  conduct a good faith inquiry and make a formal determination whether or not the remains are

24  "Native American" within the meaning of NAGPRA; and (4) misrepresenting that "25 objects"

25  were "reasonably believed" to have been placed at the site at or near the time of death or later as

26  part of the "death rite or ceremony," contrary to Gail Kennedy's account of the excavation.

27      61.     An actual, present controversy exists between Plaintiffs and Defendants, because

28  Plaintiffs contend and Defendants deny that that Defendants' actions alleged above constitute a

18

1 breach of trust.

2      62.    Plaintiffs desire a judicial determination that Defendants' actions constitute a

3 breach of trust. A judicial declaration is necessary and appropriate at this time, so that Plaintiffs

4 may ascertain their rights and the rights of the general public, and Defendants' duties under the

5 law.

6      63.    Plaintiffs seek to compel the trustees to perform their duties and to enjoin the

7 trustees from committing future breaches. Plaintiffs are informed and believe that Defendants

8 will repatriate the remains to the La Posta Band of Mission Indians as soon as possible after

9 January 4, 2012, unless defendants are restrained by this Court. Plaintiffs are informed and

10 believe that the La Posta Band of Mission Indians will fail to maintain the skeletons in a manner

11 that preserves their scientific value, and therefore the skeletons' scientific value will be

12 destroyed, contrary to the public interest, unless defendants are restrained by this Court.

13      64.    Plaintiffs and the general public have no plain, adequate, or speedy remedy at law

14 and are entitled to injunctive relief against Defendants. Plaintiffs and the general public have no

15 administrative remedy because Defendants' procedures for approving the transfer of the La Jolla

16 Skeletons, and the short timeframe for repatriation after Defendants published their Repatriation

17 Notice, preclude any administrative relief.

18      **THIRD CAUSE OF ACTION – 42 U.S.C. § 1983 AND THE UNITED STATES**
**CONSTITUTION – FIRST AMENDMENT**

19

20      **[All Plaintiffs Against Defendants YUDOF, FOX, and MATTHEWS]**

21      65.    Plaintiffs hereby incorporate by reference paragraphs 1 through 63, inclusive.

22      66.    Plaintiffs have a First Amendment right to receive information and ideas. The

23 opportunity to use the La Jolla Skeletons for research purposes is the only means of accessing the

24 information and ideas contained within them.

25      67.    Defendants' actions alleged above have deprived, and will continue to deprive,

26 Plaintiffs of their right to receive information under the First Amendment to the United States

27 Constitution. Plaintiffs have been unable to study the remains, despite having made study

28 requests. The government may not, "consistently with the spirit of the First Amendment,

19

1  contract the spectrum of available knowledge." (*See Griswold v. Connecticut* (1965) 381 U.S.
2  479, 482.)

3      68.    In committing the acts herein alleged, Defendants were acting under color of state
4  law.

5      69.    Plaintiffs desire a judicial determination that Defendants' actions violate
6  Plaintiffs' First Amendment right to receive information. A judicial declaration is necessary and
7  appropriate at this time, so that Plaintiffs may ascertain their rights and the rights of the general
8  public, and Defendants' duties under the law.

9      70.    An actual and immediate controversy has arisen and now exists between Plaintiffs
10  and Defendants related to their respective rights and duties. Plaintiffs contend, and Defendants
11  deny, that Defendants' actions have deprived, and will continue to deprive, Plaintiffs of their
12  right to receive information under the First Amendment to the United States Constitution.

13      71.    Plaintiffs and the general public have no plain, adequate, or speedy remedy at law
14  and are entitled to injunctive relief against Defendants. Unless Defendants are enjoined,
15  Plaintiffs and the general public will suffer irreparable injury and harm, in that the ability to
16  study the La Jolla Skeletons will be lost forever. Plaintiffs are informed and believe that
17  Defendants will repatriate the remains to the La Posta Band of Mission Indians as soon as
18  possible after January 4, 2012, unless Defendants are restrained by this Court. Plaintiffs are
19  informed and believe that the La Posta Band of Mission Indians will fail to maintain the
20  skeletons in a manner that preserves their scientific value, and therefore the skeletons' scientific
21  value will be destroyed, unless Defendants are restrained by this Court.

22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

20

## **PRAYER FOR RELIEF**

Petitioners and Plaintiffs pray for judgment against Respondents and Defendants as follows:

1.    On the petition for writ of traditional mandamus, or in the alternative, writ of administrative mandamus:

(a)    For a peremptory writ directing Respondents to set aside the Notice of Inventory Completion of October 22, 2008 and December 5, 2011, respectively; AND

(b)    For a peremptory writ directing Respondents to make a formal determination whether or not the La Jolla Skeletons are "Native American" within the meaning of NAGPRA; AND

(c)    For a peremptory writ directing Respondents to set aside and cease and desist from any actions taken to implement the decision to transfer possession of the La Jolla Skeletons to the La Posta Band of Mission Indians, unless and until Respondents have made a formal determination that the remains are "Native American" within the meaning of NAGPRA.

OR IN THE ALTERNATIVE:

(a)    For a peremptory writ directing Respondents to set aside the Notice of Inventory Completion of October 22, 2008 and December 5, 2011, respectively; AND

(b)    For a peremptory writ prohibiting Respondents from transferring possession of the La Jolla Skeletons to the La Posta Band of Mission Indians, on the ground that they are not "Native American" within the meaning of NAGPRA.

2.    On the first cause of action for declaratory and injunctive relief:

(a)    A declaration, order and judgment that the La Jolla Skeletons are not "Native American" within the meaning of NAGPRA; AND

(b)    A declaration, order and judgment that Defendants, in attempting to transfer possession of the La Jolla Skeletons to the La Posta Band of Mission Indians, acted arbitrarily and without jurisdiction or authority, and that Defendants' decision to approve such transfer, and all subsequent actions to implement such transfer, are illegal,

21

1   invalid, null and void; AND

2       (c)   A preliminary and permanent injunction requiring Defendants to set aside

3   and cease and desist from any and all actions implementing the decision to transfer

4   possession of the La Jolla Skeletons to the La Posta Band of Mission Indians; AND

5       (d)   A permanent injunction prohibiting Defendants from taking any action in

6   the future to approve or implement a transfer of possession of the La Jolla Skeletons to

7   the La Posta Band of Mission Indians, or any other Native American tribe.

8   3.    On the second cause of action for breach of trust:

9       (a)   A declaration, order and judgment Defendants' actions constituted a

10   breach of trust; AND

11       (b)   A preliminary and permanent injunction requiring Defendants to compel

12   the Defendants to perform their duties as trustees of the UNIVERSITY and protect the

13   UNIVERSITY's research assets from destruction; AND

14       (c)   A preliminary and permanent injunction requiring Defendants set aside

15   and cease and desist from any and all actions implementing the decision to transfer

16   possession of the La Jolla Skeletons to the La Posta Band of Mission Indians; AND

17       (d)   A permanent injunction prohibiting Defendants from taking any action in

18   the future to approve or implement a transfer of possession of the La Jolla Skeletons to

19   the La Posta Band of Mission Indians, or any other Native American tribe.

20   4.    On the third cause of action for violation of the First Amendment:

21       (a)   A declaration, order and judgment that Defendants' actions violate

22   Plaintiffs' First Amendment right to receive information; AND

23       (b)   A preliminary and permanent injunction requiring Defendants set aside

24   and cease and desist from any and all actions implementing the decision to transfer

25   possession of the La Jolla Skeletons to the La Posta Band of Mission Indians; AND

26       (c)   A permanent injunction prohibiting Defendants from taking any action in

27   the future to approve or implement a transfer of possession of the La Jolla Skeletons to

28   the La Posta Band of Mission Indians, or any other Native American tribe.

PETITION FOR WRIT OF MANDAMUS; COMPLAINT, Case No.

5.     For Petitioners' and Plaintiffs' costs of suit;

6.     For Petitioners' and Plaintiffs' attorneys' fees; AND

7.     For any other and further relief that this Court may deem just and proper.

DATED: April 16, 2012                 McMANIS FAULKNER

*Christine E. Peek*

JAMES MCMANIS
CHRISTINE PEEK

Attorneys for Petitioners and Plaintiffs,

TIMOTHY WHITE,
ROBERT L. BETTINGER, and
MARGARET SCHOENINGER

23

FROM :                          FAX NO. :                          Apr. 09 2012 02:01PM  P1

1      **VERIFICATION TO PETITION FOR WRIT OF MANDAMUS**
       **(CODE CIV. PROC., § 1085), OR IN THE ALTERNATIVE,**
2   **FOR WRIT OF ADMINISTRATIVE MANDAMUS (CODE CIV. PROC., § 1094.5)**

3          I, Timothy White, Ph.D., declare:

4          I am one of the Petitioners and Plaintiffs in the instant action. I have read the Petition For

5   Writ Of Mandamus (Code Civ. Proc., § 1085), Or In The Alternative, For Writ Of

6   Administrative Mandamus (Code Civ. Proc., § 1094.5) against Respondents and know its

7   contents. The allegations of the Petition For Writ Of Mandamus (Code Civ. Proc., § 1085), Or

8   In The Alternative, For Writ Of Administrative Mandamus (Code Civ. Proc., § 1094.5) are true

9   of my own knowledge, except as to those matters which are alleged on information and belief,

10   and as to those matters, I believe them to be true.

11         I declare under penalty of perjury under the laws of the State of California that the

12   foregoing is true and correct.

13

14   Date: APRIL 9, 2012                    _____
                                            Name:  Timothy White, Ph.D.
15

16

17

18

19

20

21

22

23

24

25

26

27

28
_____
Verification to Petition for Writ of Mandate, Case No.

CM-010

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>James McManis (40958)<br>McManis Faulkner<br>50 W. San Fernando St., 10th Fl.<br>San Jose, CA 95113<br>TELEPHONE NO: (408) 279-8700    FAX NO: (408) 279-3244<br>ATTORNEY FOR *(Name):* Timothy White, Robert Bettinger, Margaret Schoeninger | **FOR COURT USE ONLY**<br><br>**ENDORSED**<br>**FILED**<br>**ALAMEDA COUNTY**<br><br>APR 1 6 2012<br><br>CLERK OF THE SUPERIOR COURT<br>By Tasha Parry Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **Alameda**
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland, California 94612
BRANCH NAME: Rene C. Davidson Courthouse

CASE NAME:
White v. The University of California

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | RG 1 2 6 2 5 8 9 1<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[✓] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [✓] is [ ] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [ ] monetary  b. [✓] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify):* Writ petition plus complaint with three causes of action.
5. This case [ ] is [✓] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: April 16, 2012
Christine Peek
_____    ▶ Christine E. Peek
(TYPE OR PRINT NAME)                (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)–Personal Injury/Property
      Damage/Wrongful Death
  Uninsured Motorist (46) (*if the
      case involves an uninsured
      motorist claim subject to
      arbitration, check this item
      instead of Auto*)

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
  Asbestos (04)
      Asbestos Property Damage
      Asbestos Personal Injury/
          Wrongful Death
  Product Liability (*not asbestos or
      toxic/environmental*) (24)
  Medical Malpractice (45)
      Medical Malpractice–
          Physicians & Surgeons
      Other Professional Health Care
          Malpractice
  Other PI/PD/WD (23)
      Premises Liability (e.g., slip
          and fall)
      Intentional Bodily Injury/PD/WD
          (e.g., assault, vandalism)
      Intentional Infliction of
          Emotional Distress
      Negligent Infliction of
          Emotional Distress
      Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
      Practice (07)
  Civil Rights (e.g., discrimination,
      false arrest) (*not civil
      harassment*) (08)
  Defamation (e.g., slander, libel)
      (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
      Legal Malpractice
      Other Professional Malpractice
          (*not medical or legal*)
  Other Non-PI/PD/WD Tort (35)
**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
      Breach of Rental/Lease
          Contract (*not unlawful detainer
          or wrongful eviction*)
      Contract/Warranty Breach–Seller
          Plaintiff (*not fraud or negligence*)
      Negligent Breach of Contract/
          Warranty
      Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
      book accounts) (09)
      Collection Case–Seller Plaintiff
      Other Promissory Note/Collections
          Case
  Insurance Coverage (*not provisionally
      complex*) (18)
      Auto Subrogation
      Other Coverage
  Other Contract (37)
      Contractual Fraud
      Other Contract Dispute

**Real Property**
  Eminent Domain/Inverse
      Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
      Writ of Possession of Real Property
      Mortgage Foreclosure
      Quiet Title
      Other Real Property (*not eminent
      domain, landlord/tenant, or
      foreclosure*)

**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) (*if the case involves illegal
      drugs, check this item; otherwise,
      report as Commercial or Residential*)

**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
      Writ–Administrative Mandamus
      Writ–Mandamus on Limited Court
          Case Matter
      Writ–Other Limited Court Case
          Review
  Other Judicial Review (39)
      Review of Health Officer Order
      Notice of Appeal–Labor
          Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
      (*arising from provisionally complex
      case type listed above*) (41)

**Enforcement of Judgment**
  Enforcement of Judgment (20)
      Abstract of Judgment (Out of
          County)
      Confession of Judgment (*non-
          domestic relations*)
      Sister State Judgment
      Administrative Agency Award
          (*not unpaid taxes*)
      Petition/Certification of Entry of
          Judgment on Unpaid Taxes
      Other Enforcement of Judgment
          Case

**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint (*not specified
      above*) (42)
      Declaratory Relief Only
      Injunctive Relief Only (*non-
          harassment*)
      Mechanics Lien
      Other Commercial Complaint
          Case (*non-tort/non-complex*)
      Other Civil Complaint
          (*non-tort/non-complex*)

**Miscellaneous Civil Petition**
  Partnership and Corporate
      Governance (21)
  Other Petition (*not specified
      above*) (43)
      Civil Harassment
      Workplace Violence
      Elder/Dependent Adult
          Abuse
      Election Contest
      Petition for Name Change
      Petition for Relief From Late
          Claim
      Other Civil Petition

**CIVIL CASE COVER SHEET**

# SUMMONS
## (CITACION JUDICIAL)

*10396622*

0

*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:** THE UNIVERSITY OF CALIFORNIA; THE REGENTS
*(AVISO AL DEMANDADO):* OF THE UNIVERSITY OF CALIFORNIA; MARK G.
YUDOF, in his individual and official capacity as President of
the University; MARYE ANNE FOX, in her individual and official
capacity as Chancellor of the University of California, San
Diego; GARY MATTHEWS, in his individual and official capacity as
Vice Chancellor of the University of California, San Diego, and
DOES 1-50, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:** TIMOTHY WHITE, an
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* individual; ROBERT
L. BETTINGER; an individual; and MARGARET
SCHOENINGER, an individual,

**FILED**
ALAMEDA COUNTY

APR 1 6 2012

CLERK OF THE SUPERIOR COURT
By _Dasha Perry_ Deputy

File on Demand

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* | CASE NUMBER *(Número del Caso)*: R G 1 2 6 2 5 8 9 1 |
|---|---|

Alameda County Superior Court
1225 Fallon Street

Oakland, CA 94612

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
James McManis (40958) Christine Peek (234573) (408) 279-8700 (408) 279-3244
McManis Faulkner
50 W. San Fernando Street
San Jose, CA 95113

DATE: APR 16 2012 Pat S. Sweeten Clerk, by _Dasha Perry_, Deputy
*(Fecha)* *(Secretario)* *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify):*

4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Legal Solutions Plus | Code of Civil Procedure §§ 412.20, 465 |
|---|---|---|---|

**SUMMONS**
*(CITACION JUDICIAL)*

**SUM-100**

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:** THE UNIVERSITY OF CALIFORNIA; THE REGENTS
*(AVISO AL DEMANDADO):* OF THE UNIVERSITY OF CALIFORNIA; MARK G.
YUDOF, in his individual and official capacity as President of
the University; MARYE ANNE FOX, in her individual and official
capacity as Chancellor of the University of California, San
Diego; GARY MATTHEWS, in his individual and official capacity as
Vice Chancellor of the University of California, San Diego, and
DOES 1-50, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:** TIMOTHY WHITE, an
*(LO ESTA DEMANDANDO EL DEMANDANTE):* individual; ROBERT
L. BETTINGER; an individual; and MARGARET
SCHOENINGER, an individual,

ENDORSED
FILED
ALAMEDA COUNTY

APR 1 6 2012

CLERK OF THE SUPERIOR COURT
By Tasha Perry Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Alameda County Superior Court<br>1225 Fallon Street<br><br>Oakland, CA 94612 | CASE NUMBER:<br>*(Número del Caso):*  1 2 6 2 5 8 9 1 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
James McManis (40958) Christine Peek (234573)    (408) 279-8700  (408) 279-3244
McManis Faulkner
50 W. San Fernando Street
San Jose, CA 95113

DATE: APR 1 6 2012    **Pat S. Sweeten**   Clerk, by  *Tasha Perry*  , Deputy
*(Fecha)*    *(Secretario)*    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Marye Ann Fox

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☒ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. July 1, 2009)

**SUMMONS**

Legal
Solutions
Plus

Code of Civil Procedure §§ 412.20, 465

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

**NOTICE TO DEFENDANT:** THE UNIVERSITY OF CALIFORNIA; THE REGENTS
**(AVISO AL DEMANDADO):** OF THE UNIVERSITY OF CALIFORNIA; MARK G.
YUDOF, in his individual and official capacity as President of
the University; MARYE ANNE FOX, in her individual and official
capacity as Chancellor of the University of California, San
Diego; GARY MATTHEWS, in his individual and official capacity as
Vice Chancellor of the University of California, San Diego, and
DOES 1-50, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:** TIMOTHY WHITE, an
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):** individual; ROBERT
L. BETTINGER; an individual; and MARGARET
SCHOENINGER, an individual,

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

ENDORSED
FILED
ALAMEDA COUNTY

APR 1 6 2012

CLERK OF THE SUPERIOR COURT
By Tasha Perry Deputy

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>(El nombre y dirección de la corte es):<br>Alameda County Superior Court<br>1225 Fallon Street<br><br>Oakland, CA 94612 | CASE NUMBER:<br>(Número del Caso): 1 2 6 2 5 8 9 1 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
James McManis (40958) Christine Peek (234573)    (408) 279-8700  (408) 279-3244
McManis Faulkner
50 W. San Fernando Street
San Jose, CA 95113

DATE:    **Pat S. Sweeten**    Clerk, by _Tasha Perry_ , Deputy
(Fecha) APR 1 6 2012         (Secretario)                          (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):
3. ☒ on behalf of (specify): The University of California

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☒ CCP 416.90 (authorized person)
          ☐ other (specify):
4. ☐ by personal delivery on (date):

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Legal<br>Solutions<br>Plus | Code of Civil Procedure §§ 412.20, 465 |

## SUMMONS
### (CITACION JUDICIAL)

**SUM-100**

| | |
|---|---|
| | *FOR COURT USE ONLY*<br>*(SOLO PARA USO DE LA CORTE)* |

**NOTICE TO DEFENDANT:** THE UNIVERSITY OF CALIFORNIA; THE REGENTS
*(A VISO AL DEMANDADO):* OF THE UNIVERSITY OF CALIFORNIA; MARK G.
YUDOF, in his individual and official capacity as President of
the University; MARYE ANNE FOX, in her individual and official
capacity as Chancellor of the University of California, San
Diego; GARY MATTHEWS, in his individual and official capacity as
Vice Chancellor of the University of California, San Diego, and
DOES 1-50, inclusive,

**ENDORSED**
**FILED**
ALAMEDA COUNTY

APR 1 6 2012

CLERK OF THE SUPERIOR COURT
By Tasha Perry, Deputy

**YOU ARE BEING SUED BY PLAINTIFF:** TIMOTHY WHITE, an
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* individual; ROBERT
L. BETTINGER; an individual; and MARGARET
SCHOENINGER, an individual,

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Alameda County Superior Court<br>1225 Fallon Street<br><br>Oakland, CA 94612 | CASE NUMBER<br>*(Número del Caso):*  1 2 6 2 5 8 9 1 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
James McManis (40958) Christine Peek (234573)   (408) 279-8700  (408) 279-3244
McManis Faulkner
50 W. San Fernando Street
San Jose, CA 95113

| DATE:<br>*(Fecha)*  APR 1 6 2012 | Pat S. Sweeten  Clerk, by _Tasha Perry_ , Deputy<br>*(Secretario)* *(Adjunto)* |
|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* The Regents of the University of California

under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)  ☒ CCP 416.90 (authorized person)
☐ other *(specify):*

4. ☐ by personal delivery on *(date):*

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Legal Solutions Plus |

Code of Civil Procedure §§ 412.20, 465

## SUMMONS
### *(CITACION JUDICIAL)*

**SUM-100**

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:** THE UNIVERSITY OF CALIFORNIA; THE REGENTS
*(AVISO AL DEMANDADO):* OF THE UNIVERSITY OF CALIFORNIA; MARK G.
YUDOF, in his individual and official capacity as President of
the University; MARYE ANNE FOX, in her individual and official
capacity as Chancellor of the University of California, San
Diego; GARY MATTHEWS, in his individual and official capacity as
Vice Chancellor of the University of California, San Diego, and
DOES 1-50, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:** TIMOTHY WHITE, an
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* individual; ROBERT
L. BETTINGER; an individual; and MARGARET
SCHOENINGER, an individual,

ENDORSED
FILED
ALAMEDA COUNTY

APR 1 6 2012

CLERK OF THE SUPERIOR COURT
By Tasha Perry, Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Alameda County Superior Court<br>1225 Fallon Street<br>Oakland, CA 94612 | CASE NUMBER:<br>*(Número del Caso):* RG 1 2 6 2 5 8 9 1 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
James McManis (40958) Christine Peek (234573)    (408) 279-8700  (408) 279-3244
McManis Faulkner
50 W. San Fernando Street
San Jose, CA 95113

| | | | |
|---|---|---|---|
| DATE: APR 1 6 2012<br>*(Fecha)* | Pat S. Sweeten | Clerk, by _Tasha Perry_<br>*(Secretario)* | , Deputy<br>*(Adjunto)* |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010).)*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Gary Matthews

under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)  ☒ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL]

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 |

Legal Solutions Plus

## SUMMONS
### (CITACION JUDICIAL)

**SUM-100**

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:** THE UNIVERSITY OF CALIFORNIA; THE REGENTS
*(AVISO AL DEMANDADO):* OF THE UNIVERSITY OF CALIFORNIA; MARK G.
YUDOF, in his individual and official capacity as President of
the University; MARYE ANNE FOX, in her individual and official
capacity as Chancellor of the University of California, San
Diego; GARY MATTHEWS, in his individual and official capacity as
Vice Chancellor of the University of California, San Diego, and
DOES 1-50, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:** TIMOTHY WHITE, an
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* individual; ROBERT
L. BETTINGER; an individual; and MARGARET
SCHOENINGER, an individual,

ENDORSED
FILED
ALAMEDA COUNTY

APR 1 6 2012

CLERK OF THE SUPERIOR COURT
By Tasha Perry, Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Alameda County Superior Court
1225 Fallon Street
Oakland, CA 94612

| CASE NUMBER: *(Número del Caso)*: | RG12625891 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
James McManis (40958) Christine Peek (234573)   (408) 279-8700   (408) 279-3244
McManis Faulkner
50 W. San Fernando Street
San Jose, CA 95113

DATE: APR 1 6 2012    Pat S. Sweeten    Clerk, by _Tasha Perry_ , Deputy
*(Fecha)*                *(Secretario)*              *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

| [SEAL] | 1. ☐ as an individual defendant. |
| | 2. ☐ as the person sued under the fictitious name of *(specify):* |
| | 3. ☒ on behalf of *(specify):*  Mark G. Yudof |
| | under: ☐ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor) |
| | ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee) |
| | ☐ CCP 416.40 (association or partnership)   ☒ CCP 416.90 (authorized person) |
| | ☐ other *(specify):* |
| | 4. ☐ by personal delivery on *(date):* |

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Legal
Solutions
& Plus 

Code of Civil Procedure §§ 412.20, 465

1 | JAMES McMANIS (40958)
CHRISTINE PEEK (234573)
2 | BRANDON ROSE (269196)
JENNIFER MURAKAMI (273603)
3 | McMANIS FAULKNER
A Professional Corporation
4 | 50 West San Fernando Street, 10th Floor
San Jose, California 95113
5 | Telephone:    (408) 279-8700
Facsimile:     (408) 279-3244
6 | Email:         cpeek@mcmanislaw.com

7 | Attorneys for Petitioners and Plaintiffs,
TIMOTHY WHITE,
8 | ROBERT L. BETTINGER, and
MARGARET SCHOENINGER

ENDORSED
FILED
ALAMEDA COUNTY

APR 1 0 2012

CLERK OF THE SUPERIOR COURT
By_____
Deputy

9

10 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

11 | FOR THE COUNTY OF ALAMEDA

12 | TIMOTHY WHITE, an individual; ROBERT
L. BETTINGER, an individual; and
13 | MARGARET SCHOENINGER, an individual,

Case No. RG 12-625891

**ERRATA TO PETITION FOR WRIT OF
MANDAMUS (CODE CIV. PROC., §
1085), OR IN THE ALTERNATIVE, FOR
WRIT OF ADMINISTRATIVE
MANDAMUS (CODE CIV. PROC., §
1094.5); COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF (CODE CIV. PROC., §§ 526a,
1060)**

14 | Petitioners and plaintiffs,

15

16 | vs.

17 | THE UNIVERSITY OF CALIFORNIA; THE
REGENTS OF THE UNIVERSITY OF
CALIFORNIA; MARK G. YUDOF, in his
18 | individual and official capacity as President of
the University; MARYE ANNE FOX, in her
19 | individual and official capacity as Chancellor of
the University of California, San Diego; GARY
20 | MATTHEWS, in his individual and official
capacity as Vice Chancellor of the University of
21 | California, San Diego; and DOES 1-50,
inclusive,

22

23 | Respondents and defendants.

24

25

26

27

28

1

1    Petitioners and plaintiffs respectfully submit this Errata to their Petition For Writ Of

2 Mandamus (Code Civ. Proc., § 1085), Or In The Alternative, For Writ Of Administrative

3 Mandamus (Code Civ. Proc., § 1094.5); Complaint For Declaratory And Injunctive Relief (Code

4 Civ. Proc., §§ 526a, 1060), which inadvertently was filed without Exhibits A and B.  Attached as

5 Exhibit 1 is a true and correct copy of the Petition For Writ Of Mandamus (Code Civ. Proc., §

6 1085), Or In The Alternative, For Writ Of Administrative Mandamus (Code Civ. Proc., §

7 1094.5); Complaint For Declaratory And Injunctive Relief (Code Civ. Proc., §§ 526a, 1060) filed

8 on April 16, 2012, which includes Exhibits A and B.

9 DATED:  April 18, 2012    McMANIS FAULKNER

10

11           Christine E. Peek

12           JAMES MCMANIS
            CHRISTINE PEEK

13           Attorneys for Petitioners and Plaintiffs,

14           TIMOTHY WHITE,
            ROBERT L. BETTINGER, and
15           MARGARET SCHOENINGER

16

17

18

19

20

21

22

23

24

25

26

27

28

1  JAMES McMANIS (40958)
   CHRISTINE PEEK (234573)
2  BRANDON ROSE (269196)
   JENNIFER MURAKAMI (273603)
3  McMANIS FAULKNER
   A Professional Corporation
4  50 West San Fernando Street, 10th Floor
   San Jose, California 95113
5  Telephone:    (408) 279-8700
   Facsimile:    (408) 279-3244
6  Email:        cpeek@mcmanislaw.com

7  Attorneys for Petitioners and Plaintiffs,
   TIMOTHY WHITE,
8  ROBERT L. BETTINGER, and
   MARGARET SCHOENINGER
9

ENDORSED
FILED
ALAMEDA COUNTY

APR 1 6 2012

CLERK OF THE SUPERIOR COURT
By Tasha Perry, Deputy

10                SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                       FOR THE COUNTY OF ALAMEDA

12  TIMOTHY WHITE, an individual; ROBERT    | Case No. RG1 2 6 2 5 8 9 1
    L. BETTINGER, an individual; and
13  MARGARET SCHOENINGER, an individual,

14

15              Petitioners and plaintiffs,

16          vs.

17  THE UNIVERSITY OF CALIFORNIA; THE
    REGENTS OF THE UNIVERSITY OF
18  CALIFORNIA; MARK G. YUDOF, in his
    individual and official capacity as President of
19  the University; MARYE ANNE FOX, in her
    individual and official capacity as Chancellor of
20  the University of California, San Diego; GARY
    MATTHEWS, in his individual and official
21  capacity as Vice Chancellor of the University of
    California, San Diego; and DOES 1-50,
22  inclusive,

23              Respondents and defendants.

24

**PETITION FOR WRIT OF MANDAMUS
(CODE CIV. PROC., § 1085), OR IN THE
ALTERNATIVE, FOR WRIT OF
ADMINISTRATIVE MANDAMUS (CODE
CIV. PROC., § 1094.5); COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF (CODE CIV. PROC., §§ 526a,
1060)**

25

26

27

28

1

PETITION FOR WRIT OF MANDAMUS; COMPLAINT, Case No.

1      1.    Petitioners and Plaintiffs, TIMOTHY WHITE ("WHITE"), ROBERT L.

2  BETTINGER ("BETTINGER"), and MARGARET SCHOENINGER ("SCHOENINGER"),

3  (collectively "Petitioners" or "Plaintiffs"), allege as follows:

4                       **PARTIES**

5      2.    Plaintiff WHITE is an individual who lives in Berkeley, California. He is a real

6  property owner in and resident of the County of Alameda and the State of California, and pays

7  federal, state, and local taxes. WHITE is a professor of Integrative Biology at the University of

8  California, Berkeley. He holds Bachelor of Science degrees in both Biology and Anthropology

9  from the University of California, Riverside, and a Master of Arts and Ph.D. in Biological

10  Anthropology from the University of Michigan, Ann Arbor. He is renowned for his work in the

11  study of ancient humans. For example, in the 1990's, WHITE led an expedition in Ethiopia that

12  resulted in the discovery of a 4.4 million-year-old skeleton, dubbed "Ardi," which predated Lucy

13  by 1.2 million years.

14      3.    Plaintiff BETTINGER is an individual who lives in Davis, California. He is a

15  real property owner in and resident of the County of Solano and the State of California, and pays

16  federal, state, and local taxes. BETTINGER is a professor of Anthropology at the University of

17  California, Davis. He holds a Bachelor of Arts and a Ph.D. in Anthropology from the University

18  of California, Riverside. BETTINGER's scholarship and fieldwork have focused on hunter-

19  gatherers and the population expansions of hunter-gatherers.

20      4.    Plaintiff SCHOENINGER is an individual who lives in Encinitas, California. She

21  is a real property owner in and resident of the County of San Diego and the State of California,

22  and pays federal, state, and local taxes. SCHOENINGER is a professor of Anthropology at the

23  University of California, San Diego. She holds a Bachelor of Arts in Anthropology from the

24  University of Florida, a Master of Arts in Anthropology from the University of Cincinnati, and a

25  Ph.D. in Anthropology from the University of Michigan. SCHOENINGER's research centers on

26  the subsistence strategies of early humans.

27      5.    Defendant UNIVERSITY OF CALIFORNIA ("UNIVERSITY") is a public trust

28  established by article IX of the California Constitution.

PETITION FOR WRIT OF MANDAMUS; COMPLAINT, Case No.

1       4.    Defendant THE REGENTS OF THE UNIVERSITY OF CALIFORNIA

2    ("REGENTS") is a public corporation that administers the UNIVERSITY.  (Cal. Const., art. IX,

3    § 9, subd. (a).)

4       5.    Defendant MARK YUDOF ("YUDOF") is an individual, who serves as President

5    of the UNIVERSITY.  The President is the chief executive officer of the UNIVERSITY, and

6    governs through authority delegated by the REGENTS.  The President is responsible directly to

7    the REGENTS.  Moreover, the President "shall serve as the guardian of the public trust, ensuring

8    legal and ethical compliance, managing system risk, and providing information regarding

9    University activities." (*See* Regents Policy 1500, Statement Of Expectations Of The President

10   Of The University (March 2011) ("Regents Policy"), *available at*

11   http://www.universityofcalifornia.edu/regents/policies/1500.html.)  YUDOF is sued here in his

12   individual and official capacities.

13      6.    Defendant MARYE ANNE FOX ("FOX") is an individual employed by

14   employed by the UNIVERSITY as the Chancellor of its San Diego campus ("UCSD").  The

15   campus Chancellor is the chief campus officer and executive head of all campus activities.  FOX

16   is sued here in her individual and official capacities.

17      7.    Defendant GARY MATTHEWS ("MATTHEWS") is an individual employed by

18   the UNIVERSITY as Vice Chancellor, Resource Management and Planning, at UCSD.  He is

19   sued here in his individual and official capacities.

20      8.    Plaintiffs do not know the true names and capacities of Defendants DOES 1

21   through 50, inclusive, and therefore sue these Defendants by such fictitious names.  Plaintiffs

22   may amend this Writ Petition and Complaint to allege their true names and capacities when

23   ascertained.  Plaintiffs are informed and believe that each of the fictitiously named Defendants is

24   responsible in some manner for the occurrences herein alleged, and that the illegal acts as herein

25   alleged were proximately caused by their conduct.

26      9.    At all times referenced herein, Defendants, including those named as DOES 1

27   through 50, were the agents, servants, and employees of their co-defendants, and in doing the

28   things alleged were acting in the scope of their authority as such agents, servants and employees,

3

PETITION FOR WRIT OF MANDAMUS; COMPLAINT, Case No.

1 | under the direction and supervision and with the permission and consent of their co-defendants.

2 | **GENERAL ALLEGATIONS**

3 |      10.    In 1976, Professor Gail Kennedy of UCLA led an archaeological field excavation
4 | project on University property in San Diego (the "site"). The Chancellor's official residence,
5 | University House, is also located on the site. Professor Kennedy's team discovered a rare double
6 | burial. The bones have great scientific significance due to the age of the two skeletons ("La Jolla
7 | Skeletons"), which are estimated to date back 8977 to 9603 years ago. The La Jolla Skeletons
8 | are extremely old by North American osteological standards. They are similar to, though likely
9 | older than, another skeleton found in Kennewick in 1996, which was the subject of federal
10 | litigation that resolved in 2004. (*See Bonnichsen v. United States* (9th Cir. 2004) 367 F.3d 864.)
11 | Because of their extreme age and relatively good condition, the La Jolla Skeletons represent a
12 | unique opportunity for all people to understand human origins in North America.

13 |      11.    The SAN DIEGO ARCHAEOLOGICAL CENTER ("SDAC") presently has
14 | physical custody of the La Jolla Skeletons, and holds them on behalf of the UNIVERSITY. The
15 | SDAC is a California nonprofit corporation located in Escondido, California. By taking custody
16 | of the La Jolla Skeletons on behalf of the UNIVERSITY, the SDAC is acting as the
17 | UNIVERSITY's agent with respect to the La Jolla Skeletons.

18 |      12.    In 1990, Congress passed the Native American Graves Protection and
19 | Repatriation Act ("NAGPRA"). NAGPRA imposes various requirements on, inter alia, state
20 | government agencies and institutions of higher learning that receive federal funds, and that hold
21 | "Native American" human remains or cultural items. NAGPRA defines "Native American" as
22 | follows:

23 |     'Native American' means of, or relating to, a tribe, people, or culture that is
24 |     indigenous to the United States.

25 | (25 U.S.C. § 3001(9).) The Ninth Circuit has held that human remains must bear some
26 | relationship to a presently existing tribe, people, or culture to be considered "Native American"
27 | within the meaning of NAGPRA. (*See Bonnichsen v. United States, supra*, 367 F.3d at 875-76.)
28 | NAGPRA does not apply to remains that are not "Native American" or "Native Hawaiian." For

4

1    remains or cultural items that are "Native American," NAGPRA may require that they be
2    "repatriated" or returned to a tribe, depending on whether or not certain conditions are met.
3    NAGPRA's statutory scheme does not require repatriation of "culturally unidentifiable" human
4    remains, however.

5         13.     NAGPRA requires those entities subject to it to compile an inventory of "Native
6    American" human remains and cultural objects in their possession, and to submit the inventory
7    to the DOI. (25 U.S.C. § 3003.)

8         14.     The UNIVERSITY has created a system-wide University Advisory Group on
9    Cultural Repatriation and Human Remains and Cultural Items ("Advisory Group"). (*See*
10   University of California Policies and Procedures On Curation and Repatriation of Human
11   Remains and Cultural Items ("Human Remains Policies").) The Human Remains Policies are
12   attached as Exhibit A. If a tribe requests repatriation, the Advisory Group must review all
13   campus determinations and report its findings and recommendations to the President or the
14   President's designee. The President or the President's designee has final authority to approve or
15   disapprove determinations regarding disposition of remains and cultural items.

16        15.     Under the Human Remains Policies, each campus with a collection of Native
17   American remains or cultural items must designate a liaison to work with native communities
18   considering or requesting repatriation from the UNIVERSITY. Defendant MATTHEWS is the
19   liaison for the San Diego campus.

20        16.     The Kumeyaay Nation ("Kumeyaay"), a coalition of 12 Native American tribes,
21   claims to have occupied the site on which the La Jolla Skeletons were found. Although the
22   Kumeyaay have asserted that the La Jolla Skeletons are culturally affiliated with their coalition
23   of tribes, there is insufficient evidence to support the conclusion that the Kumeyaay are
24   descended from the people who were buried at the site, approximately 10,000 years ago. In
25   addition, there is insufficient evidence to conclude that any Kumeyaay tribe actually occupied
26   the site at the time the La Jolla Skeletons were buried there. The evidence does not support a
27   finding that there is any link between the La Jolla Skeletons and any Kumeyaay tribe, or any
28   currently existing Native American tribe, for the following reasons, among other reasons:

5

       a.     The burial pattern of the La Jolla Skeletons differs from that of the Kumeyaay as reported in early ethnographies. Before the Spanish explorers made contact with North America, the Kumeyaay cremated, rather than buried, their dead.

       b.     Preliminary carbon and nitrogen stable isotope analysis of human bone collagen from the La Jolla Skeletons is consistent with a year-round diet of open-ocean and some nearshore marine fish or marine mammals. This contrasts with the diet of the Kumeyaay, who lived on wild plants, supplemented with more small than large game, and in some places, fish. Seasonal dependence on marine foods would produce lower values of the isotope signals than those recovered from the La Jolla Skeletons.

       c.     The skeletal morphology of the La Jolla Skeletons does not show any link to the Kumeyaay, or any other Native American tribe. The La Jolla Skeletons have long, narrow cranial vaults and short, relatively narrow faces compared with extant Native Americans. A detailed 2007 morphological study by Professor Douglas Owsley concluded the La Jolla Skeletons were not Native American.

       d.     Because there has been no genetic testing of the La Jolla Skeletons (because the UNIVERSITY has not allowed any testing), there is no genetic or DNA evidence linking the Kumeyaay or any other Native American tribe to the La Jolla Skeletons.

17.    On or about October 22, 2008, the UNIVERSITY submitted a "Notice of Inventory Completion" and inventory to the United States Department Of The Interior ("DOI"), which included the La Jolla Skeletons and various other items said to be associated with the remains. The DOI includes, as a bureau, the National Park Service ("NPS"). In turn, the NPS includes the Native American Graves Protection and Repatriation Review Committee ("NAGPRA Review Committee").

18.    The inventory was based on a 2008 report written by the local UC San Diego NAGPRA Review Committee. The 2008 report was silent on whether the La Jolla Skeletons were "Native American" within the meaning of NAGPRA, and made no attempt to determine whether or not the La Jolla Skeletons were subject to NAGPRA. The 2008 report did conclude,

6

1  however, that there was insufficient evidence to conclude the remains were culturally affiliated

2  with the Kumeyaay.

3       19.    Because there is insufficient evidence to conclude the La Jolla Skeletons are

4  "Native American" within the meaning of NAGPRA, Defendants' decision to include them on

5  the October 22, 2008 inventory was legally erroneous.  NAGPRA and its accompanying

6  regulations do not apply to the La Jolla Skeletons at all, because the La Jolla Skeletons do not

7  fall within the class of human remains that NAGPRA covers.  Therefore, the La Jolla Skeletons

8  should not have been included on any federal inventory.

9       20.    On or about February 23, 2009, MATTHEWS submitted to the DOI, through its

10  NAGPRA Review Committee, a Request by a Museum or Federal Agency that the Review

11  Committee Act on an Agreement Concerning the Disposition of Human Remains and Associated

12  Funerary Objects Determined to be Unidentifiable ("2009 Repatriation Request").

13  MATTHEWS requested that the DOI approve an agreement between FOX and the Kumeyaay

14  Cultural Repatriation Committee ("KCRC") to transfer custody of the La Jolla Skeletons to the

15  KCRC.  The KCRC is a coalition of 12 different Kumeyaay tribes of San Diego County.  The

16  2009 Repatriation Request was later withdrawn.

17       21.    In 2010, the DOI and its Secretary Ken Salazar ("Salazar") purported to

18  promulgate a new federal regulation governing the disposition of "culturally unidentifiable"

19  human remains that meet NAGPRA's definition of "Native American."  For all "culturally

20  unidentifiable" "Native American" human remains, Salazar and the DOI purported to impose the

21  following requirements, among other requirements:

22       a.    Requirements that the federal agency or museum in possession of the

23  remains consult with tribal representatives concerning culturally unidentifiable remains

24  and associated funerary objects;

25       b.    Requirements that federal agencies and museums offer to transfer control

26  of such remains to "(i) [t]he Indian tribe . . . from whose tribal land, at the time of the

27  excavation or removal, the human remains were removed; or (ii) [t]he Indian tribe or

28  tribes that are recognized as aboriginal to the area from which the human remains were

7

1     removed," unless the agency or museum can prove a right of possession;

2         c.     Authorization for federal agencies and museums to transfer control to

3 other tribes or Native Hawaiian organizations, in the event no tribe described above

4 agrees to accept the remains; and

5         d.     Notification requirements.

6     22.     On or about June 4, 2010, YUDOF wrote to FOX, stating that he planned to give

7 "significant deference" to the Chancellors of the respective UC campuses regarding decisions

8 about the disposition of remains. YUDOF instructed FOX that the UCSD campus had the

9 responsibility to conduct consultations and analysis required under NAGPRA, and to make

10 initial determinations and recommendations regarding cultural affiliation. YUDOF further

11 instructed FOX that once UCSD completed its assessment, it should determine whether it needed

12 to amend the previous NAGPRA inventory or prepare a new draft Notice of Inventory

13 Completion.

14     23.     The La Posta Band of Diegueno Mission Indians of the La Posta Reservation ("La

15 Posta Band of Mission Indians") is a federally recognized tribe of Kumeyaay people.

16     24.     On or about August 2, 2010, Steve Banegas, a spokesperson for the KCRC, wrote

17 to the UCSD campus and requested that the La Jolla Skeletons be repatriated to the La Posta

18 Band of Mission Indians, along with certain other objects previously excavated from the site.

19     25.     On or about October 21, 2010, MATTHEWS circulated a new Draft Notice of

20 Inventory Completion ("Draft Notice") for review by the Advisory Group. The new notice was

21 deficient for many reasons. It referred to "associated funerary items," even though the published

22 paper describing the burials stated that no cultural items were found in association with the La

23 Jolla Skeletons. It asserted that stone and shell recovered from the site was "reasonably believed

24 to have been placed with or near" the La Jolla Skeletons, "at the time of death or later as part of

25 the death rite or ceremony," without any factual support, and in apparent contradiction to Gail

26 Kennedy's account of the excavation. The Draft Notice referred to the La Jolla Skeletons as

27 "Native American," despite a detailed 2007 morphological study by Professor Owsley

28 concluding they were not Native American. Finally, the Draft Notice stated that a detailed

8

PETITION FOR WRIT OF MANDAMUS; COMPLAINT, Case No.

1    assessment of the La Jolla Skeletons had been made by UC professional staff, when in fact, the
2    only staff who had seen the La Jolla Skeletons included Gail Kennedy (who did not refer to them
3    as Native American), Philip Walker (now deceased, who concluded they were not Native
4    American), and plaintiff SCHOENINGER. SCHOENINGER never made any determination that
5    the remains were "Native American" within the meaning of NAGPRA, nor was she asked to do
6    so. In its responses to comments published along with the final version of 43 C.F.R. § 10.11, the
7    DOI included language indicating that museums must make a "threshold determination" that
8    culturally unidentifiable remains are "Native American" before including them on a federal
9    inventory. (*See* 75 Fed.Reg. 12387 (response to Comment 55).)

10         26.    On or about March 2, 2011, the Advisory Group considered MATTHEWS' Draft
11   Notice and submitted a summary and report. The Advisory Group recommended that UCSD
12   should not forward the Draft Notice without further consultation with tribes other than the
13   Kumeyaay. The Advisory Group also recommended that the San Diego campus reanalyze
14   whether the supposed "associated funerary objects" are, in fact, funerary objects, and if not, to
15   revise the Draft Notice accordingly. The Advisory Group did not reach a consensus on any other
16   recommendations.

17         27.    On or about May 11, 2011, YUDOF wrote to FOX, stating that he intended to
18   defer to the campus's determination on the issue of whether or not the remains were "Native
19   American" under NAGPRA, and to authorize the campus to proceed under the NAGPRA
20   process. YUDOF authorized UCSD to dispose of the La Jolla Skeletons under NAGPRA,
21   subject to the following directions and recommendations:

22              a.     UCSD was required to reanalyze, including through expert analysis,
23         whether the materials listed on the Draft Notice were funerary objects, and if not, to
24         revise the Draft Notice.

25              b.     YUDOF advised UCSD to revise its Notice of Inventory Completion to
26         acknowledge an alleged "division among experts" on the issue of whether the La Jolla
27         *Skeletons are "Native American" within the meaning of NAGPRA.*

28              c.     YUDOF instructed UCSD to consult more broadly with other tribes in the

1  region. Following this consultation, if UCSD determined that additional tribes were

2  aboriginal to the site, YUDOFF instructed UCSD to revise its Notice of Inventory

3  Completion accordingly. If there were no competing claims, however, YUDOF

4  authorized FOX to dispose of the La Jolla Skeletons to the La Posta Band of Mission

5  Indians in accordance with NAGPRA, 30 days after publication in the Federal Register.

6      28.    The La Jolla Skeletons are in good enough condition that it may be possible to

7  retrieve DNA samples and perform DNA sequencing. Not only would this provide a wealth of

8  information of interest to the general public, such sequences also could be used to assess whether

9  or not the remains share any genetic affiliation with modern Native American groups.

10      29.    FOX and UCSD have authority to grant requests to study the La Jolla Skeletons,

11  but have refused to allow any research to be conducted.

12      30.    On or about August 16, 2010, BETTINGER requested permission to study the La

13  Jolla Skeletons. He proposed to perform (1) macro-morphological work; (2) stable isotope

14  analyses to determine diet and place of origin; and (3) ancient DNA work to establish genetic

15  affinity. These studies are essential to understanding the colonization of California and Western

16  North America, and of the New World generally. These studies are also central to

17  BETTINGER's long-standing research on hunter gatherers and hunter gatherer expansions. Dr.

18  Art Ellis, UCSD Vice Chancellor for Research, replied that UCSD was finalizing procedures for

19  dealing with such requests and that while he (Ellis) was shortly leaving UCSD, he had forwarded

20  BETTINGER's request to Associate Vice Chancellor George Tynan, whom BETTINGER could

21  look forward to hearing from. BETTINGER never heard back from Tynan. If the repatriation

22  does not go forward, BETTINGER and other experts in the field of ancient DNA and stable

23  isotope analysis plan to pursue these studies. Because they are so well preserved, and because

24  there are two of them, the La Jolla Skeletons present a unique opportunity to study patterns at a

25  population level rather than an individual level, enabling scientists to apply the results of the

26  studies in a wide variety of other contexts. No other set of New World remains holds such a high

27  degree of research potential.

28      31.    In or about April, 2009, WHITE asked to study the La Jolla Skeletons. He

10

1 | engaged in communications with various UNIVERSITY representatives regarding his request
2 | from 2009 to 2011 without ever receiving a final response to his request. For WHITE, the La
3 | Jolla Skeletons represent part of a worldwide sample of early humanity, which is critical to the
4 | understanding of the species, *Homo sapiens*. If the La Jolla Skeletons are not repatriated,
5 | WHITE still plans to study them.

6     32.    In 2009, SCHOENINGER spoke informally to the Senior Vice Chancellor for
7 | Academic Affairs, Paul Drake, and the then Vice Chancellor for Research at UCSD, Art Ellis,
8 | about studying the La Jolla Skeletons. She gave a presentation to the Academic Senate Council
9 | regarding the research value of the skeletons in 2009. The Academic Senate Council told
10 | SCHOENINGER she could not study the La Jolla Skeletons or involve herself further in any
11 | requests to study them, because she allegedly had a "conflict of interest." SCHOENINGER
12 | wants to preserve the opportunity to study the La Jolla Skeletons in the future, especially in the
13 | event that studies by BETTINGER or WHITE implicate new research questions in her area of
14 | focus.

15     33.    On or about December 5, 2011, defendants published, or caused to be published,
16 | in the Federal Register, a Notice of Inventory Completion: The University of California, San
17 | Diego, San Diego, CA ("Repatriation Notice"). The Repatriation Notice is attached as Exhibit
18 | B. The Repatriation Notice stated that if no one else came forward and claimed the La Jolla
19 | Skeletons by January 4, 2012, the La Jolla Skeletons would be repatriated to the La Posta Band
20 | of Mission Indians after that date. The Repatriation Notice also made the following purported
21 | findings, among other findings:

22     a.    The La Jolla Skeletons are "Native American," pursuant to 25 U.S.C. §
23 | 3001(9).

24     b.    Pursuant to 25 U.S.C. § 3001(2), a relationship of shared group identity
25 | cannot be reasonably traced between the La Jolla Skeletons and any present-day Indian
26 | tribe.

27     c.    Pursuant to 25 U.S.C. § 3001(3)(A), approximately 25 objects found at the
28 | site are "reasonably believed to have been placed with or near" the La Jolla Skeletons, "at

11

1   the time of death or later as part of the death rite or ceremony."

2        d.     Pursuant to 43 C.F.R. § 10.11(c)(1), and based upon request from the

3   Kumeyaay Cultural Repatriation Committee, on behalf of the 12 associated Kumeyaay

4   tribes, disposition of the La Jolla Skeletons is to the La Posta Band of Diegueno Mission

5   Indians of the La Posta Indian Reservation, California.

6       34.    On or about January 25, 2012, the parties entered into a Tolling Agreement, by

7   which respondents and defendants agreed that, "any and all statutes of limitation applicable to

8   any claims whatsoever that plaintiffs may have against defendants relating to the La Jolla

9   Skeletons that have not already expired shall be tolled to and including April 16, 2012."

### PETITION FOR WRIT OF MANDAMUS (Code Civ. Proc. § 1085), OR IN THE ALTERNATIVE, FOR WRIT OF ADMINISTRATIVE MANDAMUS (Code Civ. Proc. § 1094.5)

#### [All Petitioners Against All Respondents]

13       35.    Petitioners hereby incorporate by reference paragraphs 1 through 33, inclusive.

14       36.    NAGPRA only applies to the La Jolla Skeletons if they meet the legal definition

15   of "Native American" under NAGPRA. Title 43, part 10.11, subdivision (a) of the Code of

16   Federal Regulations also specifically states that it applies "to human remains previously

17   determined to be Native American under § 10.9, but for which no lineal descendant or culturally

18   affiliated Indian tribe or Native Hawaiian organization has been identified."

19       37.    Under NAGPRA and its accompanying regulations, Respondents have a clear,

20   present, mandatory and ministerial duty to make a formal determination whether or not the La

21   Jolla Skeletons are "Native American" within the meaning of NAGPRA, before repatriating

22   them under the alleged authority of 43 C.F.R. § 10.11.

23       38.    Under article I, sections 7 and 15 of the California Constitution, and the

24   Fourteenth Amendment to the United States Constitution, Respondents have a clear, present,

25   mandatory and ministerial duty to comply with the minimum requirements of due process,

26   including a clear, present, mandatory and ministerial duty to avoid imposition of arbitrary

27   adjudicative procedures.

28

PETITION FOR WRIT OF MANDAMUS; COMPLAINT, Case No.

39.     In addition, Respondents have a clear, present, mandatory and ministerial duty to administer the UNIVERSITY as a public trust, pursuant to the state constitutional mandate. "[D]ecisions are to be made solely to promote the best interests of the University as a public trust, rather than the interests of a particular constituency, and that Board members will disclose personal, familial, business relationships, or other potential conflicts of interest as appropriate." (*See* Regents Policy 1100, Statement Of Expectations Of The Members Of The Board Of Regents (Jan. 2010), *available at* http://www.universityofcalifornia.edu/regents/policies/ 1100.html.) The public has an interest in preserving scientifically and historically significant items, as does the UNIVERSITY.

40.     Petitioners are beneficially interested in the issuance of a writ of mandamus, because they have a clear, present, substantial and vested right in Respondents' performance of their duty to determine whether or not NAGPRA and its accompanying regulations actually apply to the La Jolla Skeletons, before Respondents dispose of them to the Kumeyaay. A disposition without such a formal determination would arbitrarily and illegally destroy the La Jolla Skeletons' incalculable scientific value to Petitioners, and to the public at large, and would violate NAGPRA.

41.     In addition, Petitioners are beneficially interested as citizens and taxpayers in Respondents' performance of their duties under the law. Respondents' threatened act of repatriation not only would deprive Petitioners' of any opportunity to research the La Jolla Skeletons, it would also arbitrarily and illegally deprive all members of the public of the opportunity to understand the origins of humanity in North America.

42.     The above-described actions of Respondents, including but not limited to, Respondents' inclusion of the La Jolla Skeletons on the October 22, 2008 Notice of Inventory Completion and the Repatriation Notice, were arbitrary and capricious, in excess of Respondents' jurisdiction, a prejudicial abuse of their discretion, and/or there was not a fair trial, for, inter alia, the following reasons:

a.     Respondents failed to make a formal and adequate finding or determination whether or not the La Jolla Skeletons are "Native American" under

13

1   NAGPRA.  On information and belief, Respondents failed to consider any evidence or

2   conduct a hearing on this issue.  In failing to make this decision using procedures that

3   meet minimum constitutional standards, and in making their purported "findings" without

4   considering any evidence or providing Petitioners a full and fair opportunity to present

5   evidence, Respondents acted in an arbitrary and capricious manner, in violation of

6   Petitioners' fundamental due process rights, and in violation of Respondents' duty to

7   administer the University as a public trust;

8         b.    For the same reasons, Respondents' decision to include the La Jolla

9   Skeletons on the October 22, 2008 Notice of Inventory Completion and the Repatriation

10   Notice was not supported by an adequate finding or determination that the La Jolla

11   Skeletons are "Native American" under NAGPRA;

12         c.    To the extent Respondents made a formal finding or determination that the

13   La Jolla Skeletons were "Native American" under NAGPRA, their determination was

14   arbitrary and capricious, not supported by the weight of the evidence, and/or was not

15   supported by substantial evidence in light of the whole record.  Respondents' decision

16   was further flawed in that Respondents apparently based their decision on the geographic

17   relationship of the Kumeyaay to the UCSD site, even though the "aboriginal territories"

18   occupied and defined for historic Indian tribes are not in any way linked to the prehistoric

19   territories that their lineal ancestors may have occupied;

20         d.    Petitioners were not allowed to present evidence in opposition to

21   Respondents' summary conclusion that the La Jolla Skeletons were "Native American"

22   within the meaning of NAGPRA;

23         e.    On information and belief, Respondents did not reanalyze whether the

24   materials listed on the Draft Notice were funerary objects, as required by YUDOF's May

25   11, 2011 letter;

26         f.    On information and belief, Respondents' purported finding that the 25

27   objects were "reasonably believed" to have been placed at the site at or near the time of

28   death or later as part of the "death rite or ceremony" is not supported by any evidence in

14

1 the record, and/or Petitioners were not allowed to present evidence in opposition to

2 Respondents' summary conclusion.  Respondents' purported finding is arbitrary and

3 capricious ;

4    g. The Human Remains Policies Respondents followed in drafting and

5 submitting the Notice of Inventory Completion and Repatriation Notice are fatally

6 flawed, because they provide no guidelines for determining whether remains are "Native

7 American" within the meaning of NAGPRA.  Furthermore, they provide no standards

8 governing what evidence is admissible on the question of whether the remains are

9 "Native American" within the meaning of NAGPRA, or what weight the evidence is to

10 be given.  The lack of standards renders it impossible for Petitioners to challenge the

11 evidence presented or Respondents' summary conclusion.  The Human Remains Policies

12 do not provide notice of what evidence may be relied upon in the evaluation of whether

13 remains are or are not "Native American."  The lack of procedures and standards renders

14 the Human Remains Policies unconstitutionally vague and violates due process.

15  43. By including the La Jolla Skeletons on the October 22, 2008 Notice of Inventory

16 Completion and Repatriation Notice, Respondents acted in an arbitrary and capricious manner

17 and in violation of Petitioners' and the public's right to a fair determination of whether or not the

18 La Jolla Skeletons are "Native American" within the meaning of NAGPRA.

19  44. Petitioners have no plain, speedy, and adequate remedy in the ordinary course of

20 law other than the relief sought by this petition.

21  45. Petitioners have exhausted all administrative procedures required of them by law.

22  46. If the relief sought by this petition is not granted, Petitioners and the general

23 public will suffer irreparable injury and harm, in that the ability to study the La Jolla Skeletons

24 will be lost forever.  Petitioners are informed and believe that Respondents will repatriate the

25 remains to the La Posta Band of Mission Indians as soon as possible after January 4, 2012,

26 unless Respondents are restrained by this Court.  Petitioners are informed and believe that the La

27 Posta Band of Mission Indians will fail to maintain the skeletons in a manner that preserves their

28 scientific value, and therefore the skeletons' scientific value will be destroyed, unless

15

1    Respondents are restrained by this Court.

2    WHEREFORE, Petitioners pray for judgment against Respondents as set forth below.

3    ## COMPLAINT

4    ## FIRST CAUSE OF ACTION – DECLARATORY AND INJUNCTIVE RELIEF -
5    ## VIOLATION OF NAGPRA (Code Civ. Proc. §§ 526a, 1060)

6    ### [All Plaintiffs Against All Defendants]

7    47.    Plaintiffs hereby incorporate by reference paragraphs 1 through 45, inclusive.

8    48.    NAGPRA only applies to the La Jolla Skeletons if they meet the legal definition

of "Native American" under NAGPRA.  Title 43, part 10.11, subdivision (a) of the Code of

9    Federal Regulations also specifically states that it applies "to human remains previously

10   determined to be Native American under § 10.9, but for which no lineal descendant or culturally

11   affiliated Indian tribe or Native Hawaiian organization has been identified."  Defendants' actions

12   in approving the transfer of the La Jolla Skeletons to the La Posta Band of Mission Indians are

13   illegal, invalid, null and void, because Defendants failed to make a finding or determination, or

14   failed to make an adequate finding or determination, that the remains are "Native American"

15   within the meaning of NAGPRA.  Defendants' actions are also illegal, invalid, null and void to

16   the extent Defendants concluded the remains were "Native American," because their conclusion

17   is not supported by the evidence.

18   49.    Defendants have expended public funds in support of their illegal efforts to

19   repatriate the La Jolla Skeletons, without determining whether they are "Native American"

20   within the meaning of NAGPRA, and/or without considering all of the evidence concerning

21   whether or not the La Jolla Skeletons are "Native American" within the meaning of NAGPRA.

22   50.    An actual, present controversy exists between Plaintiffs and Defendants, because

23   Plaintiffs contend and Defendants deny that that Defendants' actions in approving the transfer of

24   the La Jolla Skeletons to the La Posta Band of Mission Indians are illegal, invalid, null and void.

25   51.    Plaintiffs desire a judicial determination that Defendants' actions in approving the

26   transfer of the La Jolla Skeletons to the La Posta Band of Mission Indians are illegal, invalid,

27   null and void.  A judicial declaration is necessary and appropriate at this time, so that Plaintiffs

28   

16

1  may ascertain their rights, the rights of the general public, and Defendants' duties under the law.

2      52.      Unless Defendants are enjoined, Plaintiffs and the general public will suffer

3  irreparable injury and harm, in that the ability to study the La Jolla Skeletons will be lost forever.

4  Plaintiffs are informed and believe that Defendants will repatriate the remains to the La Posta

5  Band of Mission Indians as soon as possible after January 4, 2012, unless Defendants are

6  restrained by this Court.  Plaintiffs are informed and believe that the La Posta Band of Mission

7  Indians will fail to maintain the skeletons in a manner that preserves their scientific value, and

8  therefore the skeletons' scientific value will be destroyed, unless Defendants are restrained by

9  this Court.

10      53.      Plaintiffs and the general public have no plain, adequate, or speedy remedy at law

11  and are entitled to injunctive relief against Defendants.  Plaintiffs and the general public have no

12  administrative remedy because Defendants' procedures for approving the transfer of the La Jolla

13  Skeletons, and the short timeframe for repatriation after Defendants published their Repatriation

14  Notice, preclude any administrative relief.

15  ## SECOND CAUSE OF ACTION – DECLARATORY AND INJUNCTIVE RELIEF –
16  ## BREACH OF PUBLIC TRUST

17  ### [All Petitioners Against Defendants REGENTS, YUDOF, FOX and MATTHEWS]

18      54.      Plaintiffs hereby incorporate by reference paragraphs 1 through 52, inclusive.

19      55.      The UNIVERSITY is a public trust established by article nine of the California

20  Constitution.

21      56.      The La Jolla Skeletons are part of the public trust that is the UNIVERSITY.  In

22  addition, the UNIVERSITY maintains its collections of human remains and cultural items – to

23  which the La Jolla Skeletons belong – as a public trust.

24      57.      Defendants REGENTS and YUDOF are trustees of the UNIVERSITY.  FOX is

25  an agent of YUDOF when she is performing YUDOF's duties as trustee of the UNIVERSITY.

26  MATTHEWS is an agent of YUDOF when acting as an agent of FOX when she is performing

27  YUDOF's duties as trustee of the UNIVERSITY.  Plaintiffs are informed and believe that

28  YUDOF and the REGENTS neglected to take reasonable steps to compel FOX and

17

1    MATTHEWS to correct what defendants knew or should have known were violations of

2    NAGPRA.

3        58.    Plaintiffs and the general public are beneficiaries of the public trust, of which the

4    La Jolla Skeletons are a part.

5        59.    Defendants have a duty to administer the UNIVERSITY as a public trust,

6    pursuant to the state constitutional mandate. (*See* Regents Policy 1100 (REGENTS are to serve

7    as trustees for the people of the State of California and as stewards for the University of

8    California, "acting to govern the University in fulfillment of its educational, research, and public

9    service missions in the best interests of the people of California"); *see also* Regents Policy 1500

10   ("The President is expected to direct the management and administration of the University of

11   California system consistent with the Bylaws and Standing Orders, administering the University

12   in fulfillment of its educational, research, and public service missions in the best interests of the

13   people of California").) Defendants have a duty to fulfill the UNIVERSITY's educational,

14   research, and public service missions in the best interests of the people of California.

15       60.    Defendants breached their duty to Plaintiffs and to the public to administer the

16   public trust for the public interest by (1) arbitrarily and capriciously including the La Jolla

17   Skeletons on the October 22, 2008 Notice of Inventory Completion and Repatriation Notice,

18   even though defendants lacked a reasonable or good faith belief that the remains are "Native

19   American" within the meaning of NAGPRA; (2) approving the transfer of the La Jolla Skeletons

20   to the La Posta Band of Mission Indians, even though defendants lacked a reasonable or good

21   faith belief that the remains are "Native American" within the meaning of NAGPRA, or that they

22   had any relationship to the tribe known as the La Posta Band of Mission Indians; (3) failing to

23   conduct a good faith inquiry and make a formal determination whether or not the remains are

24   "Native American" within the meaning of NAGPRA; and (4) misrepresenting that "25 objects"

25   were "reasonably believed" to have been placed at the site at or near the time of death or later as

26   part of the "death rite or ceremony," contrary to Gail Kennedy's account of the excavation.

27       61.    An actual, present controversy exists between Plaintiffs and Defendants, because

28   Plaintiffs contend and Defendants deny that that Defendants' actions alleged above constitute a

18

1  breach of trust.

2      62.    Plaintiffs desire a judicial determination that Defendants' actions constitute a

3  breach of trust.  A judicial declaration is necessary and appropriate at this time, so that Plaintiffs

4  may ascertain their rights and the rights of the general public, and Defendants' duties under the

5  law.

6      63.    Plaintiffs seek to compel the trustees to perform their duties and to enjoin the

7  trustees from committing future breaches.  Plaintiffs are informed and believe that Defendants

8  will repatriate the remains to the La Posta Band of Mission Indians as soon as possible after

9  January 4, 2012, unless defendants are restrained by this Court.  Plaintiffs are informed and

10  believe that the La Posta Band of Mission Indians will fail to maintain the skeletons in a manner

11  that preserves their scientific value, and therefore the skeletons' scientific value will be

12  destroyed, contrary to the public interest, unless defendants are restrained by this Court.

13      64.    Plaintiffs and the general public have no plain, adequate, or speedy remedy at law

14  and are entitled to injunctive relief against Defendants.  Plaintiffs and the general public have no

15  administrative remedy because Defendants' procedures for approving the transfer of the La Jolla

16  Skeletons, and the short timeframe for repatriation after Defendants published their Repatriation

17  Notice, preclude any administrative relief.

### THIRD CAUSE OF ACTION – 42 U.S.C. § 1983 AND THE UNITED STATES CONSTITUTION – FIRST AMENDMENT

### [All Plaintiffs Against Defendants YUDOF, FOX, and MATTHEWS]

21      65.    Plaintiffs hereby incorporate by reference paragraphs 1 through 63, inclusive.

22      66.    Plaintiffs have a First Amendment right to receive information and ideas.  The

23  opportunity to use the La Jolla Skeletons for research purposes is the only means of accessing the

24  information and ideas contained within them.

25      67.    Defendants' actions alleged above have deprived, and will continue to deprive,

26  Plaintiffs of their right to receive information under the First Amendment to the United States

27  Constitution.  Plaintiffs have been unable to study the remains, despite having made study

28  requests.  The government may not, "consistently with the spirit of the First Amendment,

19

PETITION FOR WRIT OF MANDAMUS; COMPLAINT, Case No.

1  contract the spectrum of available knowledge." (*See Griswold v. Connecticut* (1965) 381 U.S.

2  479, 482.)

3       68.  In committing the acts herein alleged, Defendants were acting under color of state

4  law.

5       69.  Plaintiffs desire a judicial determination that Defendants' actions violate

6  Plaintiffs' First Amendment right to receive information. A judicial declaration is necessary and

7  appropriate at this time, so that Plaintiffs may ascertain their rights and the rights of the general

8  public, and Defendants' duties under the law.

9       70.  An actual and immediate controversy has arisen and now exists between Plaintiffs

10  and Defendants related to their respective rights and duties. Plaintiffs contend, and Defendants

11  deny, that Defendants' actions have deprived, and will continue to deprive, Plaintiffs of their

12  right to receive information under the First Amendment to the United States Constitution.

13       71.  Plaintiffs and the general public have no plain, adequate, or speedy remedy at law

14  and are entitled to injunctive relief against Defendants. Unless Defendants are enjoined,

15  Plaintiffs and the general public will suffer irreparable injury and harm, in that the ability to

16  study the La Jolla Skeletons will be lost forever. Plaintiffs are informed and believe that

17  Defendants will repatriate the remains to the La Posta Band of Mission Indians as soon as

18  possible after January 4, 2012, unless Defendants are restrained by this Court. Plaintiffs are

19  informed and believe that the La Posta Band of Mission Indians will fail to maintain the

20  skeletons in a manner that preserves their scientific value, and therefore the skeletons' scientific

21  value will be destroyed, unless Defendants are restrained by this Court.

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

PETITION FOR WRIT OF MANDAMUS; COMPLAINT, Case No.

## PRAYER FOR RELIEF

Petitioners and Plaintiffs pray for judgment against Respondents and Defendants as follows:

1.     On the petition for writ of traditional mandamus, or in the alternative, writ of administrative mandamus:

(a)     For a peremptory writ directing Respondents to set aside the Notice of Inventory Completion of October 22, 2008 and December 5, 2011, respectively; AND

(b)     For a peremptory writ directing Respondents to make a formal determination whether or not the La Jolla Skeletons are "Native American" within the meaning of NAGPRA; AND

(c)     For a peremptory writ directing Respondents to set aside and cease and desist from any actions taken to implement the decision to transfer possession of the La Jolla Skeletons to the La Posta Band of Mission Indians, unless and until Respondents have made a formal determination that the remains are "Native American" within the meaning of NAGPRA.

OR IN THE ALTERNATIVE:

(a)     For a peremptory writ directing Respondents to set aside the Notice of Inventory Completion of October 22, 2008 and December 5, 2011, respectively; AND

(b)     For a peremptory writ prohibiting Respondents from transferring possession of the La Jolla Skeletons to the La Posta Band of Mission Indians, on the ground that they are not "Native American" within the meaning of NAGPRA.

2.     On the first cause of action for declaratory and injunctive relief:

(a)     A declaration, order and judgment that the La Jolla Skeletons are not "Native American" within the meaning of NAGPRA; AND

(b)     A declaration, order and judgment that Defendants, in attempting to transfer possession of the La Jolla Skeletons to the La Posta Band of Mission Indians, acted arbitrarily and without jurisdiction or authority, and that Defendants' decision to approve such transfer, and all subsequent actions to implement such transfer, are illegal,

21

PETITION FOR WRIT OF MANDAMUS; COMPLAINT, Case No.

invalid, null and void; AND

(c)    A preliminary and permanent injunction requiring Defendants to set aside and cease and desist from any and all actions implementing the decision to transfer possession of the La Jolla Skeletons to the La Posta Band of Mission Indians; AND

(d)    A permanent injunction prohibiting Defendants from taking any action in the future to approve or implement a transfer of possession of the La Jolla Skeletons to the La Posta Band of Mission Indians, or any other Native American tribe.

3.    On the second cause of action for breach of trust:

(a)    A declaration, order and judgment Defendants' actions constituted a breach of trust; AND

(b)    A preliminary and permanent injunction requiring Defendants to compel the Defendants to perform their duties as trustees of the UNIVERSITY and protect the UNIVERSITY's research assets from destruction; AND

(c)    A preliminary and permanent injunction requiring Defendants set aside and cease and desist from any and all actions implementing the decision to transfer possession of the La Jolla Skeletons to the La Posta Band of Mission Indians; AND

(d)    A permanent injunction prohibiting Defendants from taking any action in the future to approve or implement a transfer of possession of the La Jolla Skeletons to the La Posta Band of Mission Indians, or any other Native American tribe.

4.    On the third cause of action for violation of the First Amendment:

(a)    A declaration, order and judgment that Defendants' actions violate Plaintiffs' First Amendment right to receive information; AND

(b)    A preliminary and permanent injunction requiring Defendants set aside and cease and desist from any and all actions implementing the decision to transfer possession of the La Jolla Skeletons to the La Posta Band of Mission Indians; AND

(c)    A permanent injunction prohibiting Defendants from taking any action in the future to approve or implement a transfer of possession of the La Jolla Skeletons to the La Posta Band of Mission Indians, or any other Native American tribe.

22

PETITION FOR WRIT OF MANDAMUS; COMPLAINT, Case No.

5.     For Petitioners' and Plaintiffs' costs of suit;

6.     For Petitioners' and Plaintiffs' attorneys' fees; AND

7.     For any other and further relief that this Court may deem just and proper.

DATED: April 16, 2012               McMANIS FAULKNER

                                         Christine E. Peek

                                         JAMES MCMANIS
                                         CHRISTINE PEEK

                                         Attorneys for Petitioners and Plaintiffs,

                                         TIMOTHY WHITE,
                                         ROBERT L. BETTINGER, and
                                         MARGARET SCHOENINGER.

23

1      **VERIFICATION TO PETITION FOR WRIT OF MANDAMUS**
           **(CODE CIV. PROC., § 1085), OR IN THE ALTERNATIVE,**

2      **FOR WRIT OF ADMINISTRATIVE MANDAMUS (CODE CIV. PROC., § 1094.5)**

3      . I, Timothy White, Ph.D., declare:

4      I am one of the Petitioners and Plaintiffs in the instant action. I have read the Petition For

5 Writ Of Mandamus (Code Civ. Proc., § 1085), Or In The Alternative, For Writ Of

6 Administrative Mandamus (Code Civ. Proc., § 1094.5) against Respondents and know its

7 contents. The allegations of the Petition For Writ Of Mandamus (Code Civ. Proc., § 1085), Or

8 In The Alternative, For Writ Of Administrative Mandamus (Code Civ. Proc., § 1094.5) are true

9 of my own knowledge, except as to those matters which are alleged on information and belief,

10 and as to those matters, I believe them to be true.

11      I declare under penalty of perjury under the laws of the State of California that the

12 foregoing is true and correct.

13

14 Date: APRIL 9, 2012                                          
                                 Name:  Timothy White, Ph.D.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Verification to Petition for Writ of Mandate, Case No.