Exhibit A

1  JAMES McMANIS (40958)
   CHRISTINE PEEK (234573)
2  BRANDON ROSE (269196)
   JENNIFER MURAKAMI (273603)
3  McMANIS FAULKNER
   A Professional Corporation
4  50 West San Fernando Street, 10th Floor
   San Jose, California 95113
5  Telephone:     (408) 279-8700
   Facsimile:      (408) 279-3244
6  Email:          cpeek@mcmanislaw.com

7  Attorneys for Petitioners and Plaintiffs,
   TIMOTHY WHITE,
8  ROBERT L. BETTINGER, and
   MARGARET SCHOENINGER

9

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                     FOR THE COUNTY OF ALAMEDA

12  TIMOTHY WHITE, an individual; ROBERT       Case No. RG 1 2 6 2 5 8 9
    L. BETTINGER, an individual; and
13  MARGARET SCHOENINGER, an individual,

14

15                Petitioners and plaintiffs,       **PETITION FOR WRIT OF MANDAMUS
                                                     (CODE CIV. PROC., § 1085), OR IN THE**
16          vs.                                      **ALTERNATIVE, FOR WRIT OF
                                                     ADMINISTRATIVE MANDAMUS (CODE**
17  THE UNIVERSITY OF CALIFORNIA; THE          **CIV. PROC., § 1094.5); COMPLAINT FOR
    REGENTS OF THE UNIVERSITY OF               DECLARATORY AND INJUNCTIVE**
18  CALIFORNIA; MARK G. YUDOF, in his          **RELIEF (CODE CIV. PROC., §§ 526a,
    individual and official capacity as President of   1060)**
    the University; MARYE ANNE FOX, in her
19  individual and official capacity as Chancellor of
    the University of California, San Diego; GARY
20  MATTHEWS, in his individual and official
    capacity as Vice Chancellor of the University of
21  California, San Diego; and DOES 1-50,
    inclusive,
22

23                Respondents and defendants.

24

25

26

27

28
                                            1

ENDORSED
FILED
ALAMEDA COUNTY

APR 1 6 2012

CLERK OF THE SUPERIOR COURT
By Tasha Perry, Deputy

1       1.     Petitioners and Plaintiffs, TIMOTHY WHITE ("WHITE"), ROBERT L.

2  BETTINGER ("BETTINGER"), and MARGARET SCHOENINGER ("SCHOENINGER"),

3  (collectively "Petitioners" or "Plaintiffs"), allege as follows:

4                            **PARTIES**

5       2.     Plaintiff WHITE is an individual who lives in Berkeley, California. He is a real

6  property owner in and resident of the County of Alameda and the State of California, and pays

7  federal, state, and local taxes. WHITE is a professor of Integrative Biology at the University of

8  California, Berkeley. He holds Bachelor of Science degrees in both Biology and Anthropology

9  from the University of California, Riverside, and a Master of Arts and Ph.D. in Biological

10  Anthropology from the University of Michigan, Ann Arbor. He is renowned for his work in the

11  study of ancient humans. For example, in the 1990's, WHITE led an expedition in Ethiopia that

12  resulted in the discovery of a 4.4 million-year-old skeleton, dubbed "Ardi," which predated Lucy

13  by 1.2 million years.

14       3.     Plaintiff BETTINGER is an individual who lives in Davis, California. He is a

15  real property owner in and resident of the County of Solano and the State of California, and pays

16  federal, state, and local taxes. BETTINGER is a professor of Anthropology at the University of

17  California, Davis. He holds a Bachelor of Arts and a Ph.D. in Anthropology from the University

18  of California, Riverside. BETTINGER's scholarship and fieldwork have focused on hunter-

19  gatherers and the population expansions of hunter-gatherers.

20       4.     Plaintiff SCHOENINGER is an individual who lives in Encinitas, California. She

21  is a real property owner in and resident of the County of San Diego and the State of California,

22  and pays federal, state, and local taxes. SCHOENINGER is a professor of Anthropology at the

23  University of California, San Diego. She holds a Bachelor of Arts in Anthropology from the

24  University of Florida, a Master of Arts in Anthropology from the University of Cincinnati, and a

25  Ph.D. in Anthropology from the University of Michigan. SCHOENINGER's research centers on

26  the subsistence strategies of early humans.

27       5.     Defendant UNIVERSITY OF CALIFORNIA ("UNIVERSITY") is a public trust

28  established by article IX of the California Constitution.

PETITION FOR WRIT OF MANDAMUS; COMPLAINT, Case No.

1    4.    Defendant THE REGENTS OF THE UNIVERSITY OF CALIFORNIA

2  ("REGENTS") is a public corporation that administers the UNIVERSITY. (Cal. Const., art. IX,

3  § 9, subd. (a).)

4    5.    Defendant MARK YUDOF ("YUDOF") is an individual, who serves as President

5  of the UNIVERSITY. The President is the chief executive officer of the UNIVERSITY, and

6  governs through authority delegated by the REGENTS. The President is responsible directly to

7  the REGENTS. Moreover, the President "shall serve as the guardian of the public trust, ensuring

8  legal and ethical compliance, managing system risk, and providing information regarding

9  University activities." (*See* Regents Policy 1500, Statement Of Expectations Of The President

10  Of The University (March 2011) ("Regents Policy"), *available at*

11  http://www.universityofcalifornia.edu/regents/policies/1500.html.) YUDOF is sued here in his

12  individual and official capacities.

13    6.    Defendant MARYE ANNE FOX ("FOX") is an individual employed by

14  employed by the UNIVERSITY as the Chancellor of its San Diego campus ("UCSD"). The

15  campus Chancellor is the chief campus officer and executive head of all campus activities. FOX

16  is sued here in her individual and official capacities.

17    7.    Defendant GARY MATTHEWS ("MATTHEWS") is an individual employed by

18  the UNIVERSITY as Vice Chancellor, Resource Management and Planning, at UCSD. He is

19  sued here in his individual and official capacities.

20    8.    Plaintiffs do not know the true names and capacities of Defendants DOES 1

21  through 50, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiffs

22  may amend this Writ Petition and Complaint to allege their true names and capacities when

23  ascertained. Plaintiffs are informed and believe that each of the fictitiously named Defendants is

24  responsible in some manner for the occurrences herein alleged, and that the illegal acts as herein

25  alleged were proximately caused by their conduct.

26    9.    At all times referenced herein, Defendants, including those named as DOES 1

27  through 50, were the agents, servants, and employees of their co-defendants, and in doing the

28  things alleged were acting in the scope of their authority as such agents, servants and employees,

3

PETITION FOR WRIT OF MANDAMUS; COMPLAINT, Case No.

1    under the direction and supervision and with the permission and consent of their co-defendants.

2                                **GENERAL ALLEGATIONS**

3           10.    In 1976, Professor Gail Kennedy of UCLA led an archaeological field excavation

4    project on University property in San Diego (the "site"). The Chancellor's official residence,

5    University House, is also located on the site. Professor Kennedy's team discovered a rare double

6    burial. The bones have great scientific significance due to the age of the two skeletons ("La Jolla

7    Skeletons"), which are estimated to date back 8977 to 9603 years ago. The La Jolla Skeletons

8    are extremely old by North American osteological standards. They are similar to, though likely

9    older than, another skeleton found in Kennewick in 1996, which was the subject of federal

10   litigation that resolved in 2004. (*See Bonnichsen v. United States* (9th Cir. 2004) 367 F.3d 864.)

11   Because of their extreme age and relatively good condition, the La Jolla Skeletons represent a

12   unique opportunity for all people to understand human origins in North America.

13          11.    The SAN DIEGO ARCHAEOLOGICAL CENTER ("SDAC") presently has

14   physical custody of the La Jolla Skeletons, and holds them on behalf of the UNIVERSITY. The

15   SDAC is a California nonprofit corporation located in Escondido, California. By taking custody

16   of the La Jolla Skeletons on behalf of the UNIVERSITY, the SDAC is acting as the

17   UNIVERSITY's agent with respect to the La Jolla Skeletons.

18          12.    In 1990, Congress passed the Native American Graves Protection and

19   Repatriation Act ("NAGPRA"). NAGPRA imposes various requirements on, inter alia, state

20   government agencies and institutions of higher learning that receive federal funds, and that hold

21   "Native American" human remains or cultural items. NAGPRA defines "Native American" as

22   follows:

23          'Native American' means of, or relating to, a tribe, people, or culture that is
            indigenous to the United States.
24

25   (25 U.S.C. § 3001(9).) The Ninth Circuit has held that human remains must bear some

26   relationship to a presently existing tribe, people, or culture to be considered "Native American"

27   within the meaning of NAGPRA. (*See Bonnichsen v. United States, supra*, 367 F.3d at 875-76.)

28   NAGPRA does not apply to remains that are not "Native American" or "Native Hawaiian." For

                                          4
     PETITION FOR WRIT OF MANDAMUS; COMPLAINT, Case No.

1  remains or cultural items that are "Native American," NAGPRA may require that they be

2  "repatriated" or returned to a tribe, depending on whether or not certain conditions are met.

3  NAGPRA's statutory scheme does not require repatriation of "culturally unidentifiable" human

4  remains, however.

5      13.    NAGPRA requires those entities subject to it to compile an inventory of "Native

6  American" human remains and cultural objects in their possession, and to submit the inventory

7  to the DOI. (25 U.S.C. § 3003.)

8      14.    The UNIVERSITY has created a system-wide University Advisory Group on

9  Cultural Repatriation and Human Remains and Cultural Items ("Advisory Group"). (*See*

10 University of California Policies and Procedures On Curation and Repatriation of Human

11 Remains and Cultural Items ("Human Remains Policies").) The Human Remains Policies are

12 attached as Exhibit A. If a tribe requests repatriation, the Advisory Group must review all

13 campus determinations and report its findings and recommendations to the President or the

14 President's designee. The President or the President's designee has final authority to approve or

15 disapprove determinations regarding disposition of remains and cultural items.

16     15.    Under the Human Remains Policies, each campus with a collection of Native

17 American remains or cultural items must designate a liaison to work with native communities

18 considering or requesting repatriation from the UNIVERSITY. Defendant MATTHEWS is the

19 liaison for the San Diego campus.

20     16.    The Kumeyaay Nation ("Kumeyaay"), a coalition of 12 Native American tribes,

21 claims to have occupied the site on which the La Jolla Skeletons were found. Although the

22 Kumeyaay have asserted that the La Jolla Skeletons are culturally affiliated with their coalition

23 of tribes, there is insufficient evidence to support the conclusion that the Kumeyaay are

24 descended from the people who were buried at the site, approximately 10,000 years ago. In

25 addition, there is insufficient evidence to conclude that any Kumeyaay tribe actually occupied

26 the site at the time the La Jolla Skeletons were buried there. The evidence does not support a

27 finding that there is any link between the La Jolla Skeletons and any Kumeyaay tribe, or any

28 currently existing Native American tribe, for the following reasons, among other reasons:

5

     a.     The burial pattern of the La Jolla Skeletons differs from that of the Kumeyaay as reported in early ethnographies. Before the Spanish explorers made contact with North America, the Kumeyaay cremated, rather than buried, their dead.

     b.     Preliminary carbon and nitrogen stable isotope analysis of human bone collagen from the La Jolla Skeletons is consistent with a year-round diet of open-ocean and some nearshore marine fish or marine mammals. This contrasts with the diet of the Kumeyaay, who lived on wild plants, supplemented with more small than large game, and in some places, fish. Seasonal dependence on marine foods would produce lower values of the isotope signals than those recovered from the La Jolla Skeletons.

     c.     The skeletal morphology of the La Jolla Skeletons does not show any link to the Kumeyaay, or any other Native American tribe. The La Jolla Skeletons have long, narrow cranial vaults and short, relatively narrow faces compared with extant Native Americans. A detailed 2007 morphological study by Professor Douglas Owsley concluded the La Jolla Skeletons were not Native American.

     d.     Because there has been no genetic testing of the La Jolla Skeletons (because the UNIVERSITY has not allowed any testing), there is no genetic or DNA evidence linking the Kumeyaay or any other Native American tribe to the La Jolla Skeletons.

     17.     On or about October 22, 2008, the UNIVERSITY submitted a "Notice of Inventory Completion" and inventory to the United States Department Of The Interior ("DOI"), which included the La Jolla Skeletons and various other items said to be associated with the remains. The DOI includes, as a bureau, the National Park Service ("NPS"). In turn, the NPS includes the Native American Graves Protection and Repatriation Review Committee ("NAGPRA Review Committee").

     18.     The inventory was based on a 2008 report written by the local UC San Diego NAGPRA Review Committee. The 2008 report was silent on whether the La Jolla Skeletons were "Native American" within the meaning of NAGPRA, and made no attempt to determine whether or not the La Jolla Skeletons were subject to NAGPRA. The 2008 report did conclude,

6

PETITION FOR WRIT OF MANDAMUS; COMPLAINT, Case No.

1  however, that there was insufficient evidence to conclude the remains were culturally affiliated

2  with the Kumeyaay.

3       19.    Because there is insufficient evidence to conclude the La Jolla Skeletons are

4  "Native American" within the meaning of NAGPRA, Defendants' decision to include them on

5  the October 22, 2008 inventory was legally erroneous. NAGPRA and its accompanying

6  regulations do not apply to the La Jolla Skeletons at all, because the La Jolla Skeletons do not

7  fall within the class of human remains that NAGPRA covers. Therefore, the La Jolla Skeletons

8  should not have been included on any federal inventory.

9       20.    On or about February 23, 2009, MATTHEWS submitted to the DOI, through its

10  NAGPRA Review Committee, a Request by a Museum or Federal Agency that the Review

11  Committee Act on an Agreement Concerning the Disposition of Human Remains and Associated

12  Funerary Objects Determined to be Unidentifiable ("2009 Repatriation Request").

13  MATTHEWS requested that the DOI approve an agreement between FOX and the Kumeyaay

14  Cultural Repatriation Committee ("KCRC") to transfer custody of the La Jolla Skeletons to the

15  KCRC. The KCRC is a coalition of 12 different Kumeyaay tribes of San Diego County. The

16  2009 Repatriation Request was later withdrawn.

17       21.    In 2010, the DOI and its Secretary Ken Salazar ("Salazar") purported to

18  promulgate a new federal regulation governing the disposition of "culturally unidentifiable"

19  human remains that meet NAGPRA's definition of "Native American." For all "culturally

20  unidentifiable" "Native American" human remains, Salazar and the DOI purported to impose the

21  following requirements, among other requirements:

22       a.    Requirements that the federal agency or museum in possession of the

23      remains consult with tribal representatives concerning culturally unidentifiable remains

24      and associated funerary objects;

25       b.    Requirements that federal agencies and museums offer to transfer control

26      of such remains to "(i) [t]he Indian tribe . . . from whose tribal land, at the time of the

27      excavation or removal, the human remains were removed; or (ii) [t]he Indian tribe or

28      tribes that are recognized as aboriginal to the area from which the human remains were

7

PETITION FOR WRIT OF MANDAMUS; COMPLAINT; Case No.

removed," unless the agency or museum can prove a right of possession;

    c.    Authorization for federal agencies and museums to transfer control to other tribes or Native Hawaiian organizations, in the event no tribe described above agrees to accept the remains; and

    d.    Notification requirements.

22.    On or about June 4, 2010, YUDOF wrote to FOX, stating that he planned to give "significant deference" to the Chancellors of the respective UC campuses regarding decisions about the disposition of remains. YUDOF instructed FOX that the UCSD campus had the responsibility to conduct consultations and analysis required under NAGPRA, and to make initial determinations and recommendations regarding cultural affiliation. YUDOF further instructed FOX that once UCSD completed its assessment, it should determine whether it needed to amend the previous NAGPRA inventory or prepare a new draft Notice of Inventory Completion.

23.    The La Posta Band of Diegueno Mission Indians of the La Posta Reservation ("La Posta Band of Mission Indians") is a federally recognized tribe of Kumeyaay people.

24.    On or about August 2, 2010, Steve Banegas, a spokesperson for the KCRC, wrote to the UCSD campus and requested that the La Jolla Skeletons be repatriated to the La Posta Band of Mission Indians, along with certain other objects previously excavated from the site.

25.    On or about October 21, 2010, MATTHEWS circulated a new Draft Notice of Inventory Completion ("Draft Notice") for review by the Advisory Group. The new notice was deficient for many reasons. It referred to "associated funerary items," even though the published paper describing the burials stated that no cultural items were found in association with the La Jolla Skeletons. It asserted that stone and shell recovered from the site was "reasonably believed to have been placed with or near" the La Jolla Skeletons, "at the time of death or later as part of the death rite or ceremony," without any factual support, and in apparent contradiction to Gail Kennedy's account of the excavation. The Draft Notice referred to the La Jolla Skeletons as "Native American," despite a detailed 2007 morphological study by Professor Owsley concluding they were not Native American. Finally, the Draft Notice stated that a detailed

8

1   assessment of the La Jolla Skeletons had been made by UC professional staff, when in fact, the

2   only staff who had seen the La Jolla Skeletons included Gail Kennedy (who did not refer to them

3   as Native American), Philip Walker (now deceased, who concluded they were not Native

4   American), and plaintiff SCHOENINGER. SCHOENINGER never made any determination that

5   the remains were "Native American" within the meaning of NAGPRA, nor was she asked to do

6   so. In its responses to comments published along with the final version of 43 C.F.R. § 10.11, the

7   DOI included language indicating that museums must make a "threshold determination" that

8   culturally unidentifiable remains are "Native American" before including them on a federal

9   inventory. (*See* 75 Fed.Reg. 12387 (response to Comment 55).)

10         26.    On or about March 2, 2011, the Advisory Group considered MATTHEWS' Draft

11  Notice and submitted a summary and report. The Advisory Group recommended that UCSD

12  should not forward the Draft Notice without further consultation with tribes other than the

13  Kumeyaay. The Advisory Group also recommended that the San Diego campus reanalyze

14  whether the supposed "associated funerary objects" are, in fact, funerary objects, and if not, to

15  revise the Draft Notice accordingly. The Advisory Group did not reach a consensus on any other

16  recommendations.

17         27.    On or about May 11, 2011, YUDOF wrote to FOX, stating that he intended to

18  defer to the campus's determination on the issue of whether or not the remains were "Native

19  American" under NAGPRA, and to authorize the campus to proceed under the NAGPRA

20  process. YUDOF authorized UCSD to dispose of the La Jolla Skeletons under NAGPRA,

21  subject to the following directions and recommendations:

22                a.     UCSD was required to reanalyze, including through expert analysis,

23         whether the materials listed on the Draft Notice were funerary objects, and if not, to

24         revise the Draft Notice.

25                b.     YUDOF advised UCSD to revise its Notice of Inventory Completion to

26         acknowledge an alleged "division among experts" on the issue of whether the La Jolla

27         Skeletons are "Native American" within the meaning of NAGPRA.

28                c.     YUDOF instructed UCSD to consult more broadly with other tribes in the

9

PETITION FOR WRIT OF MANDAMUS; COMPLAINT, Case No.

1 region. Following this consultation, if UCSD determined that additional tribes were

2 aboriginal to the site, YUDOFF instructed UCSD to revise its Notice of Inventory

3 Completion accordingly. If there were no competing claims, however, YUDOF

4 authorized FOX to dispose of the La Jolla Skeletons to the La Posta Band of Mission

5 Indians in accordance with NAGPRA, 30 days after publication in the Federal Register.

6 28. The La Jolla Skeletons are in good enough condition that it may be possible to

7 retrieve DNA samples and perform DNA sequencing. Not only would this provide a wealth of

8 information of interest to the general public, such sequences also could be used to assess whether

9 or not the remains share any genetic affiliation with modern Native American groups.

10 29. FOX and UCSD have authority to grant requests to study the La Jolla Skeletons,

11 but have refused to allow any research to be conducted.

12 30. On or about August 16, 2010, BETTINGER requested permission to study the La

13 Jolla Skeletons. He proposed to perform (1) macro-morphological work; (2) stable isotope

14 analyses to determine diet and place of origin; and (3) ancient DNA work to establish genetic

15 affinity. These studies are essential to understanding the colonization of California and Western

16 North America, and of the New World generally. These studies are also central to

17 BETTINGER's long-standing research on hunter gatherers and hunter gatherer expansions. Dr.

18 Art Ellis, UCSD Vice Chancellor for Research, replied that UCSD was finalizing procedures for

19 dealing with such requests and that while he (Ellis) was shortly leaving UCSD, he had forwarded

20 BETTINGER's request to Associate Vice Chancellor George Tynan, whom BETTINGER could

21 look forward to hearing from. BETTINGER never heard back from Tynan. If the repatriation

22 does not go forward, BETTINGER and other experts in the field of ancient DNA and stable

23 isotope analysis plan to pursue these studies. Because they are so well preserved, and because

24 there are two of them, the La Jolla Skeletons present a unique opportunity to study patterns at a

25 population level rather than an individual level, enabling scientists to apply the results of the

26 studies in a wide variety of other contexts. No other set of New World remains holds such a high

27 degree of research potential.

28 31. In or about April, 2009, WHITE asked to study the La Jolla Skeletons. He

PETITION FOR WRIT OF MANDAMUS; COMPLAINT, Case No.

1  engaged in communications with various UNIVERSITY representatives regarding his request

2  from 2009 to 2011 without ever receiving a final response to his request. For WHITE, the La

3  Jolla Skeletons represent part of a worldwide sample of early humanity, which is critical to the

4  understanding of the species, *Homo sapiens*. If the La Jolla Skeletons are not repatriated,

5  WHITE still plans to study them.

6       32.    In 2009, SCHOENINGER spoke informally to the Senior Vice Chancellor for

7  Academic Affairs, Paul Drake, and the then Vice Chancellor for Research at UCSD, Art Ellis,

8  about studying the La Jolla Skeletons. She gave a presentation to the Academic Senate Council

9  regarding the research value of the skeletons in 2009. The Academic Senate Council told

10  SCHOENINGER she could not study the La Jolla Skeletons or involve herself further in any

11  requests to study them, because she allegedly had a "conflict of interest." SCHOENINGER

12  wants to preserve the opportunity to study the La Jolla Skeletons in the future, especially in the

13  event that studies by BETTINGER or WHITE implicate new research questions in her area of

14  focus.

15       33.    On or about December 5, 2011, defendants published, or caused to be published,

16  in the Federal Register, a Notice of Inventory Completion: The University of California, San

17  Diego, San Diego, CA ("Repatriation Notice"). The Repatriation Notice is attached as Exhibit

18  B. The Repatriation Notice stated that if no one else came forward and claimed the La Jolla

19  Skeletons by January 4, 2012, the La Jolla Skeletons would be repatriated to the La Posta Band

20  of Mission Indians after that date. The Repatriation Notice also made the following purported

21  findings, among other findings:

22          a.    The La Jolla Skeletons are "Native American," pursuant to 25 U.S.C. §

23  3001(9).

24          b.    Pursuant to 25 U.S.C. § 3001(2), a relationship of shared group identity

25  cannot be reasonably traced between the La Jolla Skeletons and any present-day Indian

26  tribe.

27          c.    Pursuant to 25 U.S.C. § 3001(3)(A), approximately 25 objects found at the

28  site are "reasonably believed to have been placed with or near" the La Jolla Skeletons, "at

11

PETITION FOR WRIT OF MANDAMUS; COMPLAINT, Case No.

1    the time of death or later as part of the death rite or ceremony."

2          d.      Pursuant to 43 C.F.R. § 10.11(c)(1), and based upon request from the

3    Kumeyaay Cultural Repatriation Committee, on behalf of the 12 associated Kumeyaay

4    tribes, disposition of the La Jolla Skeletons is to the La Posta Band of Diegueno Mission

5    Indians of the La Posta Indian Reservation, California.

6    34.    On or about January 25, 2012, the parties entered into a Tolling Agreement, by

7    which respondents and defendants agreed that, "any and all statutes of limitation applicable to

8    any claims whatsoever that plaintiffs may have against defendants relating to the La Jolla

9    Skeletons that have not already expired shall be tolled to and including April 16, 2012."

10   **PETITION FOR WRIT OF MANDAMUS (Code Civ. Proc. § 1085),
     OR IN THE ALTERNATIVE, FOR WRIT OF ADMINISTRATIVE MANDAMUS
11   (Code Civ. Proc. § 1094.5)**

12   **[All Petitioners Against All Respondents]**

13

14   35.    Petitioners hereby incorporate by reference paragraphs 1 through 33, inclusive.

15   36.    NAGPRA only applies to the La Jolla Skeletons if they meet the legal definition

16   of "Native American" under NAGPRA.  Title 43, part 10.11, subdivision (a) of the Code of

17   Federal Regulations also specifically states that it applies "to human remains previously

18   determined to be Native American under § 10.9, but for which no lineal descendant or culturally

19   affiliated Indian tribe or Native Hawaiian organization has been identified."

20   37.    Under NAGPRA and its accompanying regulations, Respondents have a clear,

21   present, mandatory and ministerial duty to make a formal determination whether or not the La

22   Jolla Skeletons are "Native American" within the meaning of NAGPRA, before repatriating

23   them under the alleged authority of 43 C.F.R. § 10.11.

24   38.    Under article I, sections 7 and 15 of the California Constitution, and the

25   Fourteenth Amendment to the United States Constitution, Respondents have a clear, present,

26   mandatory and ministerial duty to comply with the minimum requirements of due process,

27   including a clear, present, mandatory and ministerial duty to avoid imposition of arbitrary

28   adjudicative procedures.

---

12

1    39.    In addition, Respondents have a clear, present, mandatory and ministerial duty to

2    administer the UNIVERSITY as a public trust, pursuant to the state constitutional mandate.

3    "[D]ecisions are to be made solely to promote the best interests of the University as a public

4    trust, rather than the interests of a particular constituency, and that Board members will disclose

5    personal, familial, business relationships, or other potential conflicts of interest as appropriate."

6    (*See* Regents Policy 1100, Statement Of Expectations Of The Members Of The Board Of

7    Regents (Jan. 2010), *available at* http://www.universityofcalifornia.edu/regents/policies/

8    1100.html.)   The public has an interest in preserving scientifically and historically significant

9    items, as does the UNIVERSITY.

10    40.    Petitioners are beneficially interested in the issuance of a writ of mandamus,

11    because they have a clear, present, substantial and vested right in Respondents' performance of

12    their duty to determine whether or not NAGPRA and its accompanying regulations actually

13    apply to the La Jolla Skeletons, before Respondents dispose of them to the Kumeyaay. A

14    disposition without such a formal determination would arbitrarily and illegally destroy the La

15    Jolla Skeletons' incalculable scientific value to Petitioners, and to the public at large, and would

16    violate NAGPRA.

17    41.    In addition, Petitioners are beneficially interested as citizens and taxpayers in

18    Respondents' performance of their duties under the law.  Respondents' threatened act of

19    repatriation not only would deprive Petitioners' of any opportunity to research the La Jolla

20    Skeletons, it would also arbitrarily and illegally deprive all members of the public of the

21    opportunity to understand the origins of humanity in North America.

22    42.    The above-described actions of Respondents, including but not limited to,

23    Respondents' inclusion of the La Jolla Skeletons on the October 22, 2008 Notice of Inventory

24    Completion and the Repatriation Notice, were arbitrary and capricious, in excess of

25    Respondents' jurisdiction, a prejudicial abuse of their discretion, and/or there was not a fair trial,

26    for, inter alia, the following reasons:

27    a.    Respondents failed to make a formal and adequate finding or

28    determination whether or not the La Jolla Skeletons are "Native American" under

13

PETITION FOR WRIT OF MANDAMUS; COMPLAINT, Case No.

1    NAGPRA. On information and belief, Respondents failed to consider any evidence or

2    conduct a hearing on this issue. In failing to make this decision using procedures that

3    meet minimum constitutional standards, and in making their purported "findings" without

4    considering any evidence or providing Petitioners a full and fair opportunity to present

5    evidence, Respondents acted in an arbitrary and capricious manner, in violation of

6    Petitioners' fundamental due process rights, and in violation of Respondents' duty to

7    administer the University as a public trust;

8            b.      For the same reasons, Respondents' decision to include the La Jolla

9    Skeletons on the October 22, 2008 Notice of Inventory Completion and the Repatriation

10   Notice was not supported by an adequate finding or determination that the La Jolla

11   Skeletons are "Native American" under NAGPRA;

12           c.      To the extent Respondents made a formal finding or determination that the

13   La Jolla Skeletons were "Native American" under NAGPRA, their determination was

14   arbitrary and capricious, not supported by the weight of the evidence, and/or was not

15   supported by substantial evidence in light of the whole record. Respondents' decision

16   was further flawed in that Respondents apparently based their decision on the geographic

17   relationship of the Kumeyaay to the UCSD site, even though the "aboriginal territories"

18   occupied and defined for historic Indian tribes are not in any way linked to the prehistoric

19   territories that their lineal ancestors may have occupied;

20           d.      Petitioners were not allowed to present evidence in opposition to

21   Respondents' summary conclusion that the La Jolla Skeletons were "Native American"

22   within the meaning of NAGPRA;

23           e.      On information and belief, Respondents did not reanalyze whether the

24   materials listed on the Draft Notice were funerary objects, as required by YUDOF's May

25   11, 2011 letter;

26           f.      On information and belief, Respondents' purported finding that the 25

27   objects were "reasonably believed" to have been placed at the site at or near the time of

28   death or later as part of the "death rite or ceremony" is not supported by any evidence in

14

1     the record, and/or Petitioners were not allowed to present evidence in opposition to

2     Respondents' summary conclusion. Respondents' purported finding is arbitrary and

3     capricious ;

4         g.     The Human Remains Policies Respondents followed in drafting and

5     submitting the Notice of Inventory Completion and Repatriation Notice are fatally

6     flawed, because they provide no guidelines for determining whether remains are "Native

7     American" within the meaning of NAGPRA. Furthermore, they provide no standards

8     governing what evidence is admissible on the question of whether the remains are

9     "Native American" within the meaning of NAGPRA, or what weight the evidence is to

10     be given. The lack of standards renders it impossible for Petitioners to challenge the

11     evidence presented or Respondents' summary conclusion. The Human Remains Policies

12     do not provide notice of what evidence may be relied upon in the evaluation of whether

13     remains are or are not "Native American." The lack of procedures and standards renders

14     the Human Remains Policies unconstitutionally vague and violates due process.

15     43.     By including the La Jolla Skeletons on the October 22, 2008 Notice of Inventory

16 Completion and Repatriation Notice, Respondents acted in an arbitrary and capricious manner

17 and in violation of Petitioners' and the public's right to a fair determination of whether or not the

18 La Jolla Skeletons are "Native American" within the meaning of NAGPRA.

19     44.     Petitioners have no plain, speedy, and adequate remedy in the ordinary course of

20 law other than the relief sought by this petition.

21     45.     Petitioners have exhausted all administrative procedures required of them by law.

22     46.     If the relief sought by this petition is not granted, Petitioners and the general

23 public will suffer irreparable injury and harm, in that the ability to study the La Jolla Skeletons

24 will be lost forever. Petitioners are informed and believe that Respondents will repatriate the

25 remains to the La Posta Band of Mission Indians as soon as possible after January 4, 2012,

26 unless Respondents are restrained by this Court. Petitioners are informed and believe that the La

27 Posta Band of Mission Indians will fail to maintain the skeletons in a manner that preserves their

28 scientific value, and therefore the skeletons' scientific value will be destroyed, unless

PETITION FOR WRIT OF MANDAMUS; COMPLAINT, Case No.

1  Respondents are restrained by this Court.

2  WHEREFORE, Petitioners pray for judgment against Respondents as set forth below.

3  ## COMPLAINT

4  ## FIRST CAUSE OF ACTION – DECLARATORY AND INJUNCTIVE RELIEF –
5  ## VIOLATION OF NAGPRA (Code Civ. Proc. §§ 526a, 1060)

6  ### [All Plaintiffs Against All Defendants]

7  47.   Plaintiffs hereby incorporate by reference paragraphs 1 through 45, inclusive.

8  48.   NAGPRA only applies to the La Jolla Skeletons if they meet the legal definition
of "Native American" under NAGPRA.  Title 43, part 10.11, subdivision (a) of the Code of

9  Federal Regulations also specifically states that it applies "to human remains previously

10  determined to be Native American under § 10.9, but for which no lineal descendant or culturally

11  affiliated Indian tribe or Native Hawaiian organization has been identified." Defendants' actions

12  in approving the transfer of the La Jolla Skeletons to the La Posta Band of Mission Indians are

13  illegal, invalid, null and void, because Defendants failed to make a finding or determination, or

14  failed to make an adequate finding or determination, that the remains are "Native American"

15  within the meaning of NAGPRA.  Defendants' actions are also illegal, invalid, null and void to

16  the extent Defendants concluded the remains were "Native American," because their conclusion

17  is not supported by the evidence.

18  49.   Defendants have expended public funds in support of their illegal efforts to

19  repatriate the La Jolla Skeletons, without determining whether they are "Native American"

20  within the meaning of NAGPRA, and/or without considering all of the evidence concerning

21  whether or not the La Jolla Skeletons are "Native American" within the meaning of NAGPRA.

22  50.   An actual, present controversy exists between Plaintiffs and Defendants, because

23  Plaintiffs contend and Defendants deny that that Defendants' actions in approving the transfer of

24  the La Jolla Skeletons to the La Posta Band of Mission Indians are illegal, invalid, null and void.

25  51.   Plaintiffs desire a judicial determination that Defendants' actions in approving the

26  transfer of the La Jolla Skeletons to the La Posta Band of Mission Indians are illegal, invalid,

27  null and void.  A judicial declaration is necessary and appropriate at this time, so that Plaintiffs

28

16

1   may ascertain their rights, the rights of the general public, and Defendants' duties under the law.

2       52.    Unless Defendants are enjoined, Plaintiffs and the general public will suffer

3   irreparable injury and harm, in that the ability to study the La Jolla Skeletons will be lost forever.

4   Plaintiffs are informed and believe that Defendants will repatriate the remains to the La Posta

5   Band of Mission Indians as soon as possible after January 4, 2012, unless Defendants are

6   restrained by this Court. Plaintiffs are informed and believe that the La Posta Band of Mission

7   Indians will fail to maintain the skeletons in a manner that preserves their scientific value, and

8   therefore the skeletons' scientific value will be destroyed, unless Defendants are restrained by

9   this Court.

10       53.    Plaintiffs and the general public have no plain, adequate, or speedy remedy at law

11   and are entitled to injunctive relief against Defendants. Plaintiffs and the general public have no

12   administrative remedy because Defendants' procedures for approving the transfer of the La Jolla

13   Skeletons, and the short timeframe for repatriation after Defendants published their Repatriation

14   Notice, preclude any administrative relief.

15   **SECOND CAUSE OF ACTION – DECLARATORY AND INJUNCTIVE RELIEF -**
**BREACH OF PUBLIC TRUST**

16

17   **[All Petitioners Against Defendants REGENTS, YUDOF, FOX and MATTHEWS]**

18       54.    Plaintiffs hereby incorporate by reference paragraphs 1 through 52, inclusive.

19       55.    The UNIVERSITY is a public trust established by article nine of the California

20   Constitution.

21       56.    The La Jolla Skeletons are part of the public trust that is the UNIVERSITY. In

22   addition, the UNIVERSITY maintains its collections of human remains and cultural items – to

23   which the La Jolla Skeletons belong – as a public trust.

24       57.    Defendants REGENTS and YUDOF are trustees of the UNIVERSITY. FOX is

25   an agent of YUDOF when she is performing YUDOF's duties as trustee of the UNIVERSITY.

26   MATTHEWS is an agent of YUDOF when acting as an agent of FOX when she is performing

27   YUDOF's duties as trustee of the UNIVERSITY. Plaintiffs are informed and believe that

28   YUDOF and the REGENTS neglected to take reasonable steps to compel FOX and

17

PETITION FOR WRIT OF MANDAMUS; COMPLAINT, Case No.

1  MATTHEWS to correct what defendants knew or should have known were violations of

2  NAGPRA.

3      58.    Plaintiffs and the general public are beneficiaries of the public trust, of which the

4  La Jolla Skeletons are a part.

5      59.    Defendants have a duty to administer the UNIVERSITY as a public trust,

6  pursuant to the state constitutional mandate. (*See* Regents Policy 1100 (REGENTS are to serve

7  as trustees for the people of the State of California and as stewards for the University of

8  California, "acting to govern the University in fulfillment of its educational, research, and public

9  service missions in the best interests of the people of California"); *see also* Regents Policy 1500

10 ("The President is expected to direct the management and administration of the University of

11 California system consistent with the Bylaws and Standing Orders, administering the University

12 in fulfillment of its educational, research, and public service missions in the best interests of the

13 people of California").) Defendants have a duty to fulfill the UNIVERSITY's educational,

14 research, and public service missions in the best interests of the people of California.

15     60.    Defendants breached their duty to Plaintiffs and to the public to administer the

16 public trust for the public interest by (1) arbitrarily and capriciously including the La Jolla

17 Skeletons on the October 22, 2008 Notice of Inventory Completion and Repatriation Notice,

18 even though defendants lacked a reasonable or good faith belief that the remains are "Native

19 American" within the meaning of NAGPRA; (2) approving the transfer of the La Jolla Skeletons

20 to the La Posta Band of Mission Indians, even though defendants lacked a reasonable or good

21 faith belief that the remains are "Native American" within the meaning of NAGPRA, or that they

22 had any relationship to the tribe known as the La Posta Band of Mission Indians; (3) failing to

23 conduct a good faith inquiry and make a formal determination whether or not the remains are

24 "Native American" within the meaning of NAGPRA; and (4) misrepresenting that "25 objects"

25 were "reasonably believed" to have been placed at the site at or near the time of death or later as

26 part of the "death rite or ceremony," contrary to Gail Kennedy's account of the excavation.

27     61.    An actual, present controversy exists between Plaintiffs and Defendants, because

28 Plaintiffs contend and Defendants deny that that Defendants' actions alleged above constitute a

18

1  breach of trust.

2      62.    Plaintiffs desire a judicial determination that Defendants' actions constitute a

3  breach of trust.  A judicial declaration is necessary and appropriate at this time, so that Plaintiffs

4  may ascertain their rights and the rights of the general public, and Defendants' duties under the

5  law.

6      63.    Plaintiffs seek to compel the trustees to perform their duties and to enjoin the

7  trustees from committing future breaches.  Plaintiffs are informed and believe that Defendants

8  will repatriate the remains to the La Posta Band of Mission Indians as soon as possible after

9  January 4, 2012, unless defendants are restrained by this Court.  Plaintiffs are informed and

10  believe that the La Posta Band of Mission Indians will fail to maintain the skeletons in a manner

11  that preserves their scientific value, and therefore the skeletons' scientific value will be

12  destroyed, contrary to the public interest, unless defendants are restrained by this Court.

13      64.    Plaintiffs and the general public have no plain, adequate, or speedy remedy at law

14  and are entitled to injunctive relief against Defendants.  Plaintiffs and the general public have no

15  administrative remedy because Defendants' procedures for approving the transfer of the La Jolla

16  Skeletons, and the short timeframe for repatriation after Defendants published their Repatriation

17  Notice, preclude any administrative relief.

18  ## THIRD CAUSE OF ACTION – 42 U.S.C. § 1983 AND THE UNITED STATES
CONSTITUTION – FIRST AMENDMENT

19

20  ### [All Plaintiffs Against Defendants YUDOF, FOX, and MATTHEWS]

21      65.    Plaintiffs hereby incorporate by reference paragraphs 1 through 63, inclusive.

22      66.    Plaintiffs have a First Amendment right to receive information and ideas.  The

23  opportunity to use the La Jolla Skeletons for research purposes is the only means of accessing the

24  information and ideas contained within them.

25      67.    Defendants' actions alleged above have deprived, and will continue to deprive,

26  Plaintiffs of their right to receive information under the First Amendment to the United States

27  Constitution.  Plaintiffs have been unable to study the remains, despite having made study

28  requests.  The government may not, "consistently with the spirit of the First Amendment,

19

1   contract the spectrum of available knowledge." (*See Griswold v. Connecticut* (1965) 381 U.S.

2   479, 482.)

3      68.     In committing the acts herein alleged, Defendants were acting under color of state

4   law.

5      69.    ·  Plaintiffs desire a judicial determination that Defendants' actions violate

6   Plaintiffs' First Amendment right to receive information.  A judicial declaration is necessary and

7   appropriate at this time, so that Plaintiffs may ascertain their rights and the rights of the general

8   public, and Defendants' duties under the law.

9      70.     An actual and immediate controversy has arisen and now exists between Plaintiffs

10  and Defendants related to their respective rights and duties.  Plaintiffs contend, and Defendants

11  deny, that Defendants' actions have deprived, and will continue to deprive, Plaintiffs of their

12  right to receive information under the First Amendment to the United States Constitution.

13     71.     Plaintiffs and the general public have no plain, adequate, or speedy remedy at law

14  and are entitled to injunctive relief against Defendants.  Unless Defendants are enjoined,

15  Plaintiffs and the general public will suffer irreparable injury and harm, in that the ability to

16  study the La Jolla Skeletons will be lost forever.  Plaintiffs are informed and believe that

17  Defendants will repatriate the remains to the La Posta Band of Mission Indians as soon as

18  possible after January 4, 2012, unless Defendants are restrained by this Court.  Plaintiffs are

19  informed and believe that the La Posta Band of Mission Indians will fail to maintain the

20  skeletons in a manner that preserves their scientific value, and therefore the skeletons' scientific

21  value will be destroyed, unless Defendants are restrained by this Court.

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

PETITION FOR WRIT OF MANDAMUS; COMPLAINT, Case No.

## PRAYER FOR RELIEF

Petitioners and Plaintiffs pray for judgment against Respondents and Defendants as follows:

1.    On the petition for writ of traditional mandamus, or in the alternative, writ of administrative mandamus:

(a)    For a peremptory writ directing Respondents to set aside the Notice of Inventory Completion of October 22, 2008 and December 5, 2011, respectively; AND

(b)    For a peremptory writ directing Respondents to make a formal determination whether or not the La Jolla Skeletons are "Native American" within the meaning of NAGPRA; AND

(c)    For a peremptory writ directing Respondents to set aside and cease and desist from any actions taken to implement the decision to transfer possession of the La Jolla Skeletons to the La Posta Band of Mission Indians, unless and until Respondents have made a formal determination that the remains are "Native American" within the meaning of NAGPRA.

OR IN THE ALTERNATIVE:

(a)    For a peremptory writ directing Respondents to set aside the Notice of Inventory Completion of October 22, 2008 and December 5, 2011, respectively; AND

(b)    For a peremptory writ prohibiting Respondents from transferring possession of the La Jolla Skeletons to the La Posta Band of Mission Indians, on the ground that they are not "Native American" within the meaning of NAGPRA.

2.    On the first cause of action for declaratory and injunctive relief:

(a)    A declaration, order and judgment that the La Jolla Skeletons are not "Native American" within the meaning of NAGPRA; AND

(b)    A declaration, order and judgment that Defendants, in attempting to transfer possession of the La Jolla Skeletons to the La Posta Band of Mission Indians, acted arbitrarily and without jurisdiction or authority, and that Defendants' decision to approve such transfer, and all subsequent actions to implement such transfer, are illegal,

21

PETITION FOR WRIT OF MANDAMUS; COMPLAINT, Case No.

1    invalid, null and void; AND

2         (c)    A preliminary and permanent injunction requiring Defendants to set aside

3    and cease and desist from any and all actions implementing the decision to transfer

4    possession of the La Jolla Skeletons to the La Posta Band of Mission Indians; AND

5         (d)    A permanent injunction prohibiting Defendants from taking any action in

6    the future to approve or implement a transfer of possession of the La Jolla Skeletons to

7    the La Posta Band of Mission Indians, or any other Native American tribe.

8    3.    On the second cause of action for breach of trust:

9         (a)    A declaration, order and judgment Defendants' actions constituted a

10   breach of trust; AND

11        (b)    A preliminary and permanent injunction requiring Defendants to compel

12   the Defendants to perform their duties as trustees of the UNIVERSITY and protect the

13   UNIVERSITY's research assets from destruction; AND

14        (c)    A preliminary and permanent injunction requiring Defendants set aside

15   and cease and desist from any and all actions implementing the decision to transfer

16   possession of the La Jolla Skeletons to the La Posta Band of Mission Indians; AND

17        (d)    A permanent injunction prohibiting Defendants from taking any action in

18   the future to approve or implement a transfer of possession of the La Jolla Skeletons to

19   the La Posta Band of Mission Indians, or any other Native American tribe.

20   4.    On the third cause of action for violation of the First Amendment:

21        (a)    A declaration, order and judgment that Defendants' actions violate

22   Plaintiffs' First Amendment right to receive information; AND

23        (b)    A preliminary and permanent injunction requiring Defendants set aside

24   and cease and desist from any and all actions implementing the decision to transfer

25   possession of the La Jolla Skeletons to the La Posta Band of Mission Indians; AND

26        (c)    A permanent injunction prohibiting Defendants from taking any action in

27   the future to approve or implement a transfer of possession of the La Jolla Skeletons to

28   the La Posta Band of Mission Indians, or any other Native American tribe.

22

1     5.    For Petitioners' and Plaintiffs' costs of suit;

2     6.    For Petitioners' and Plaintiffs' attorneys' fees; AND

3     7.    For any other and further relief that this Court may deem just and proper.

4  DATED: April 16, 2012                McMANIS FAULKNER

5

6                                *Christine E. Peek*

7                        JAMES MCMANIS
                              CHRISTINE PEEK

8                        Attorneys for Petitioners and Plaintiffs,

9                        TIMOTHY WHITE,
                        ROBERT L. BETTINGER, and

10                       MARGARET SCHOENINGER

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PETITION FOR WRIT OF MANDAMUS; COMPLAINT, Case No.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VERIFICATION TO PETITION FOR WRIT OF MANDAMUS
### (CODE CIV. PROC., § 1085), OR IN THE ALTERNATIVE,
## FOR WRIT OF ADMINISTRATIVE MANDAMUS (CODE CIV. PROC., § 1094.5)

I, Timothy White, Ph.D., declare:

I am one of the Petitioners and Plaintiffs in the instant action.  I have read the Petition For Writ Of Mandamus (Code Civ. Proc., § 1085), Or In The Alternative, For Writ Of Administrative Mandamus (Code Civ. Proc., § 1094.5) against Respondents and know its contents.  The allegations of the Petition For Writ Of Mandamus (Code Civ. Proc., § 1085), Or In The Alternative, For Writ Of Administrative Mandamus (Code Civ. Proc., § 1094.5) are true of my own knowledge, except as to those matters which are alleged on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: APRIL 9, 2012

Name:   Timothy White, Ph.D.

Verification to Petition for Writ of Mandate, Case No.

1

# EXHIBIT A

University of California
May 1, 2001

# UNIVERSITY OF CALIFORNIA POLICY AND PROCEDURES ON CURATION AND REPATRIATION OF HUMAN REMAINS AND CULTURAL ITEMS

## I. GENERAL PRINCIPLES

It is the policy of the University of California to assure the respectful and dignified treatment of human remains and the consideration of living descendants of those deceased. The University recognizes that individuals and communities have cultural and religious concerns that must be considered in determining the treatment and disposition of human remains in its collections.

At the same time, the University's collections of human remains and cultural items serve valuable educational and research purposes important to the enhancement of knowledge in various disciplines. The University maintains these collections as a public trust and is responsible for preserving them according to the highest standards while fulfilling its mission to provide education and understanding about the past and present through continued teaching, research and public service.

The general principles of this policy, as stated above, apply to all human remains in the University's collections. The remainder of this policy pertains to Native American and Native Hawaiian human remains and "cultural items." "Cultural items," as used throughout this policy, refers to associated and unassociated funerary objects, sacred objects, and objects of cultural patrimony, as defined by the federal Native American Graves Protection and Repatriation Act ("NAGPRA;" P.L. 101-601). This policy is intended to ensure both adherence to the above statement of principles and compliance with NAGPRA.

## II. POLICY REGARDING NATIVE AMERICAN HUMAN REMAINS AND CULTURAL ITEMS

It is the policy of the University of California to respect Native American and Native Hawaiian concerns regarding the treatment and disposition of Native American and Native Hawaiian remains and cultural items that are part of the University's collections, and to repatriate such remains and cultural items to lineal descendants (as defined by NAGPRA), Indian tribes, and Native Hawaiian organizations under specified conditions, in accordance with federal and state law.

With respect to implementation of the requirements of NAGPRA, Indian tribes are defined as federally-recognized tribes (that is, as any tribe, band, nation or community of Indians "recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians") [43 CFR Part 10, Subpart A, §10.2 (b) (2)].

NAGPRA does not give standing to non-federally-recognized groups to seek repatriation of human remains or cultural items. However, in the event that the State of California develops a process for according official state recognition for repatriation purposes to Native American tribes, bands, nations, rancherias or other entities that is consistent with state and federal law including the California and United

States constitutions, the University, in addition to repatriating to federally-recognized tribes under specified conditions, will also repatriate to such state-recognized tribes under specified conditions and to the extent permissible under law.

The University recognizes the right of all native peoples, including non-federally-recognized tribes, to make inquiries to its museums about possible cultural relationships to the human remains and cultural items in its collections, to visit the collections, and to study them under normal museum procedures. The University recognizes that the participation of such groups may lend a different and vital perspective to the present understanding of scholars and others studying the collections and also that such participation may allow Native Americans and Native Hawaiians to enrich their own cultural knowledge.

## III. UNIVERSITY ADVISORY GROUP ON CULTURAL AFFILIATION AND REPATRIATION OF HUMAN REMAINS AND CULTURAL ITEMS

A. **Composition.** The President or the President's designee shall establish a University Advisory Group on Cultural Affiliation and Repatriation of Human Remains and Cultural Items ("Advisory Group"), which shall be composed of one University faculty member delegated principal responsibility for compliance with this policy from each of those campuses that house collections covered by NAGPRA, and two Native American members to be selected by the President or designee from among nominees submitted by each campus. The Vice Provost for Research (or designee) will be the UC Office of the President liaison to the Advisory Group.

B. **Responsibilities.** The Advisory Group shall:

1. Review and advise the President or designee regarding campus implementation of and compliance with this policy and related applicable law and regulations;

2. Review campus decisions regarding potential cultural affiliation and repatriation of Native American or Native Hawaiian remains and cultural items, and report its findings and recommendations to the President or designee;

3. Make recommendations to the President or designee for revisions to this policy and any associated guidelines; and

4. Assist in the resolution of disputes that may arise in connection with this policy.

C. **Additional input.** Campuses are encouraged to solicit input on significant policy matters, as appropriate, from members of Native American and Native Hawaiian groups and from additional University faculty members drawn from a variety of disciplines in which the study, treatment, curation, and repatriation of human remains is relevant. Campuses are encouraged to forward input received from such consultations to the Office of the President via their Advisory Group representative.

The following procedures and criteria shall be utilized to implement this policy:

## IV.  REVIEW OF COLLECTIONS: INVENTORIES AND SUMMARIES

A.  **Inventories of Native American and Native Hawaiian human remains and associated funerary objects.**

In accordance with NAGPRA, each campus with Native American or Native Hawaiian human remains and associated funerary objects shall complete inventories of all such remains and associated funerary objects in its collections by reviewing existing documentation. Campus inventories shall draw on the best available academic expertise and involve consultation with tribal authorities representing Native American and Native Hawaiian groups. The inventories shall include descriptions of human remains and associated funerary objects and shall, to the extent possible, identify the geographical and cultural affiliation of those human remains and associated cultural items, as required by NAGPRA.

Final campus inventories and notices of inventory completion shall be transmitted to the Advisory Group and to the President or designee upon completion. Upon approval, the President or designee shall direct the campus to make them available to federal agencies and to lineal descendants, Native American tribes and Native Hawaiian organizations, as required by law.

Upon request by lineal descendants or appropriate tribal authorities, the campus shall provide additional available documentation to supplement the information provided in the campus inventories. Existing information is sufficient to fulfill this requirement; no additional scientific studies need be undertaken to provide such information.

B.  **Summaries of unassociated funerary objects, sacred objects, and objects of cultural patrimony.**

In accordance with NAGPRA, each campus shall complete a written summary of Native American and Native Hawaiian unassociated funerary objects, sacred objects, and objects of cultural patrimony held in its collections. These summaries provide a basis for further consultations with Native American and Native Hawaiian tribal authorities to determine cultural affiliation. Final campus summaries shall be submitted to federal agencies, lineal descendants, Native American tribes and Native Hawaiian organizations, as required by law.

Upon request by lineal descendants or appropriate tribal authorities, the campus shall provide access to records, catalogues, relevant studies, or other pertinent data for the purpose of determining the geographic origin, cultural affiliation and basic facts surrounding the acquisition and accession of objects covered in the summary.

C.  **Updates to inventories and summaries.**

In the course of the review of their collections and of continuing NAGPRA implementation efforts, campuses may determine that their inventories or summaries require additions or revisions. Such revisions to campus inventories shall be transmitted to the Advisory Group and to the President or designee upon completion. Upon approval, the President or designee shall direct the campus to make them available to federal agencies and to the appropriate lineal descendants, Native American tribes and Native Hawaiian organizations.

## V. DETERMINATION OF CULTURAL AFFILIATION

To the extent possible, campus inventories and summaries shall identify the cultural affiliation of human remains, funerary objects, sacred objects, and objects of cultural patrimony, as defined by federal law. "Cultural affiliation" refers to a relationship of shared group identity that can be reasonably traced historically or prehistorically between a present-day Native Hawaiian organization or federally-recognized Indian tribe and an identifiable earlier group.

Under NAGPRA, all of the following requirements must be met to determine cultural affiliation between a present-day Indian tribe or Native Hawaiian organization and human remains, funerary objects, sacred objects, or objects of cultural patrimony of an earlier group:

A.    Existence of an identifiable present-day Indian tribe or Native Hawaiian organization with standing under NAGPRA;

A.    Existence of an identifiable earlier group; and

B.    Existence of a shared group identity that can be reasonably traced between the present-day Indian tribe or Native Hawaiian organization and the earlier group. Evidence to support this requirement must establish that a present-day Indian tribe or Native Hawaiian organization has been identified from prehistoric or historic times to the present as descending from the earlier group.

Evidence to establish cultural affiliation may include biological, geographical, kinship, archaeological, anthropological, linguistic, folkloric, oral tradition, historical, or other relevant information or expert opinion. All campus determinations of cultural affiliation shall be reviewed by the Advisory Group, which shall make a recommendation to the President or designee regarding final determinations.

In accordance with NAGPRA, remains and cultural items that cannot be identified as affiliated with a particular lineal descendent or federally-recognized Indian tribe or Native Hawaiian organization are to be classified on inventories as culturally unidentifiable.

Tribal authorities shall be permitted reasonable access to examine items in the University's collections in order to evaluate the cultural affiliation of items listed in the inventory as culturally unidentifiable. They shall also be given reasonable opportunity, upon request, to present their views orally or in writing to campus officials responsible for NAGPRA implementation regarding the identification of any such human remains, funerary objects, sacred objects, or objects of cultural patrimony. The perspectives of such tribal authorities shall be considered in determining cultural affiliation.

## VI. REQUESTS FOR REPATRIATION

### A.    General

Campus review of repatriation requests shall reflect consideration of academic expertise and Native American or Native Hawaiian viewpoints, and shall provide for consultation with requesting

individuals or tribes, as required by NAGPRA.

All campus determinations of cultural affiliation and all campus determinations regarding repatriation requests made pursuant to this policy shall be reviewed by the Advisory Group, which shall report its findings and recommendations to the President or designee. The President or designee shall have final authority to approve or disapprove determinations regarding disposition of remains and cultural items in University collections. The University shall follow guidelines and procedures for implementing repatriation that are in accordance with accepted professional museum standards and federal and state law and regulations. Campuses may proceed with the deaccession and repatriation of materials in the University's collections, pursuant to this policy, after obtaining the written approval for such action from the President or designee.

**B.   Requests from Lineal Descendants and Federally-recognized Indian Tribes and Native Hawaiian Organizations.**

Upon the written request of a lineal descendant, Indian tribe or Native Hawaiian organization, the University will expeditiously repatriate human remains, funerary objects, sacred objects, and objects of cultural patrimony if lineal descent has been established or if cultural affiliation between the requesting tribe or organization and the requested remains or cultural items has been established in accordance with federal law and if all other requirements for repatriation of such human remains or cultural items as set forth in federal law are met.

**C.   Requests from California-recognized Indian tribes.**

In the case of a written request from an Indian tribe, band, nation, rancheria, reservation or other entity that is California-recognized but not federally-recognized, the University will expeditiously repatriate human remains, funerary objects, sacred objects, and objects of cultural patrimony if it is established that all requirements for repatriation under the federal law have been met except the requirement that the requesting tribe or group be federally-recognized.

In order for repatriation to a non-federally-recognized California-recognized tribe to take place, it must be determined that:

1.   "Cultural association" exists; i.e., affiliation between the requesting tribe and the requested remains or cultural items would have been established in accordance with federal law if the requesting tribe were federally-recognized. In order for this criterion to be met, it must be determined that the requesting tribe is an identifiable present-day tribe, and that there is evidence establishing that the requesting tribe has been identified from prehistoric or historic times to the present as descended from an identifiable earlier group from whom the requested human remains or cultural items originated; and

2.   The standards for repatriation of such human remains or cultural items as set forth in federal law are met.

In addition, in the case of human remains that meet the above criteria and that have been (or should

have been) reported on the campus inventory as "culturally unidentifiable," the University will consult with the Secretary of the Interior ("Secretary"), and will proceed with repatriation only upon recommendation of the Secretary, as specified in federal law. The University also will consult with the Secretary prior to repatriating cultural items that have been (or that should have been) reported on the campus inventory as "culturally unidentifiable," and will proceed with repatriation only upon recommendation of the Secretary. Prior to any repatriation under this section, the University will seek to notify all other Native American or Native Hawaiian tribes or organizations that have been determined to have a potential interest in the requested remains or cultural items. Repatriation will not take place until there has been a reasonable opportunity for other potentially-interested groups to notify the University of any conflicting claims.

## VII.  Liaisons, Conflicts, and Mediation

### A.  Liaison.

Each campus with a collection of Native American or Native Hawaiian remains, funerary objects, sacred objects, or objects of cultural patrimony shall designate a liaison to work with native communities considering or requesting repatriation from the University's collections. The liaison shall be a person familiar with NAGPRA and the repatriation process, and shall cultivate a positive relationship with Native American communities. It will be the responsibility of the liaison to make University collections of Native remains and items accessible to all tribes, and to assist tribes in understanding and invoking the repatriation process. The liaison will assist tribes in planning for repatriation of culturally affiliated items. With respect to human remains and cultural items in campus collections that are categorized as "culturally unidentifiable," the liaison will facilitate examination of the items by tribal authorities.

### B.  Resolution of Disputed Claims for Cultural Affiliation and Repatriation.

Tribal authorities who disagree with determinations regarding cultural affiliation (or cultural association) and repatriation are encouraged to work with campus museum officials at the campus where the remains or cultural items at issue are housed and with the campus liaison to resolve disputes. Tribal authorities shall be given reasonable opportunity, upon request, to present their views orally or in writing to campus authorities responsible for making determinations relating to cultural affiliation and repatriation.

Third-party mediation is encouraged to assist in efforts to reach agreement about disputed claims to items in the University's collections. Such mediation may include any means mutually agreed to by all parties to a repatriation discussion and approved by the Chancellor of the campus that houses the disputed items.

Repatriation disputes remaining unresolved following initial dialogue among the parties shall be reviewed and decided by the Chancellor, subject to review by the President or designee. The President or designee may seek a recommendation from the University Advisory Group, and shall have final authority regarding disposition of Native American remains and cultural items in University collections, in accordance with this policy and applicable laws and regulations.

## C.   Multiple Claims for Repatriation.

Where there are multiple requests for repatriation, and where the University is unable to determine which requesting party is the most appropriate claimant, the University shall retain and preserve the human remains or cultural items until the requesting parties reach agreement on proper disposition or until the dispute is resolved by mediation, a court of competent jurisdiction, or other appropriate means. The parties may choose mediation by a third party, which may be the NAGPRA Review Committee established by federal law or other appropriate entity mutually agreeable to the disputants.

In cases involving multiple repatriation claims, the Native American claimants may determine for themselves the proper disposition of the remains or cultural items.  Once the multiple claimants agree upon a proper disposition, and once the University is provided with assurance of protection against multiple liability (either under the provisions of NAGPRA or under an agreement among the claimants), the University will repatriate to the Native American tribe specified in such an agreement, provided that the tribe is one that has been determined by the University to be entitled to repatriation under this policy.   If the conflict is not resolved by this means, then the matter may be resolved by a court of competent jurisdiction through a declaratory or interpleader action, or by other appropriate means.

## VIII.  TEACHING AND RESEARCH USE OF REMAINS AND CULTURAL ITEMS IN UNIVERSITY COLLECTIONS

Campuses are granted the authority to make decisions about the use of Native American or Native Hawaiian human remains, associated and unassociated funerary objects, sacred objects, and objects of cultural patrimony in University collections for teaching and research purposes, subject to the following guidelines:

A.   Given the importance of the study of human osteology in archaeology, paleontology, and comparative morphology, and the importance of skeletal material in training students at the lower division, upper division and graduate level, campuses normally retain the discretion to use such items in teaching. Campuses are encouraged to take into consideration the views and concerns of Native American and Native Hawaiian representatives when making decisions regarding the teaching and research use of Native American and Native Hawaiian skeletal materials.

B.   Remains and cultural items covered by this policy shall normally remain accessible for research by qualified investigators, subject to approval by the curator of the relevant campus collection.

C.   Once a repatriation request has been granted and actual repatriation is pending, the remains and cultural items covered by the request shall not be used in teaching or research unless expressly permitted by the tribal authority that has been granted jurisdiction over the materials, subject to exceptions provided by federal law.

D.   In circumstances in which cultural affiliation (or cultural association) has been established and other repatriation requirements have been met but in which an affiliated (or associated) tribe has chosen not to request repatriation, an affiliated (or associated) tribe may request that the affiliated (or

associated) remains or cultural items not be used for teaching or research. The decision of the affiliated (or associated) tribe as to whether the remains and cultural items can be used in teaching or research shall normally be accepted as final by the University, subject to exceptions provided by federal law.

Questions concerning the implementation of any part of this policy may be directed to the Vice Provost for Research in the Office of the President.

# EXHIBIT B

## Determinations Made by the Minnesota Indian Affairs Council

Officials of the MIAC have determined that:

• Based on non-destructive physical analysis and catalogue records, the human remains are Native American.

• Pursuant to 25 U.S.C. 3001(2), a relationship of shared group identity cannot be reasonably traced between the Native American human remains and any present-day Indian tribe.

• According to final judgments of the Indian Claims Commission, the land from which the Native American human remains and associated funerary objects were removed is the aboriginal land of The Tribes.

• Pursuant to 25 U.S.C. 3001(9), the human remains described in this notice represent the physical remains of two individuals of Native American ancestry.

• Pursuant to 25 U.S.C. 3001(3)(A), the one object described above is reasonably believed to have been placed with or near individual human remains at the time of death or later as part of the death rite or ceremony.

• Pursuant to 43 CFR 10.11(c)(1), the disposition of the human remains is to The Tribes.

### Additional Requestors and Disposition

Representatives of any Indian tribe that believes itself to be culturally affiliated with the human remains or any other Indian tribe that believes it satisfies the criteria in 43 CFR 10.11(c)(1) should contact James L. (Jim) Jones, Cultural Resource Director, Minnesota Indian Affairs Council; 3801 Bemidji Avenue NW., Suite 5, Bemidji, MN 56601, telephone (218) 755–3223, before January 4, 2012. Disposition of the human remains to The Tribes may proceed after that date if no additional requestors come forward.

The Minnesota Indian Affairs Council is responsible for notifying The Tribes that this notice has been published.

Dated: November 29, 2011.

**Sherry Hutt,**

*Manager, National NAGPRA Program.*

[FR Doc. 2011–31072 Filed 12–2–11; 8:45 am]

**BILLING CODE 4312-50-P**

---

## DEPARTMENT OF THE INTERIOR

### National Park Service

[2253–665]

### Notice of Inventory Completion: The University of California, San Diego, CA

**AGENCY:** National Park Service, Interior.

**ACTION:** Notice.

**SUMMARY:** The Regents of the University of California on behalf of the University of California, San Diego, have completed an inventory of human remains and associated funerary objects, in consultation with the appropriate Indian tribes, and have determined that there is no cultural affiliation between the remains and any present-day Indian tribe. Representatives of any Indian tribe that believes itself to be culturally affiliated with the human remains may contact the University of California, San Diego. Disposition of the human remains and associated funerary objects to the Indian tribes stated below may occur if no additional requestors come forward.

**DATES:** Representatives of any Indian tribe that believes it has a cultural affiliation with the human remains should contact the University of California, San Diego at the address below by January 4, 2012.

**ADDRESSES:** Gary C. Matthews, Vice Chancellor Resource Management & Planning, University of California, San Diego, 9500 Gilman Drive #0057, La Jolla, CA 92093–0057, telephone (858) 534–6820.

**SUPPLEMENTARY INFORMATION:** Notice is hereby given in accordance with the Native American Graves Protection and Repatriation Act (NAGPRA), 25 U.S.C. 3003, of the completion of an inventory of human remains and associated funerary objects in the possession of the University of California, San Diego. The human remains and associated funerary objects were removed from the University of California, San Diego's University House site in San Diego County, CA.

This notice is published as part of the National Park Service's administrative responsibilities under NAGPRA, 25 U.S.C. 3003(d)(3) and 43 CFR 10.11(d). The determinations in this notice are the sole responsibility of the museum, institution, or Federal agency that has control of the Native American human remains. The National Park Service is not responsible for the determinations in this notice.

### Consultation

A detailed assessment of the human remains was made by University of California professional staff in consultation with representatives of the Barona Group of Capitan Grande Band of Mission Indians of the Barona Reservation, California; Campo Band of Diegueno Mission Indians of the Campo Indian Reservation, California; Ewiiaapaayp Band of Kumeyaay

Indians, California; Iipay Nation of Santa Ysabel, California (formerly the Santa Ysabel Band of Diegueno Mission Indians of the Santa Ysabel Reservation); Inaja Band of Diegueno Mission Indians of the Inaja and Cosmit Reservation, California; Jamul Indian Village of California; La Posta Band of Diegueno Mission Indians of the La Posta Indian Reservation, California; Manzanita Band of Diegueno Mission Indians of the Manzanita Reservation, California; Mesa Grande Band of Diegueno Mission Indians of the Mesa Grande Reservation, California; San Pasqual Band of Diegueno Mission Indians of California; Sycuan Band of the Kumeyaay Nation; and the Viejas (Baron Long) Group of Capitan Grande Band of Mission Indians of the Viejas Reservation, California (herein after referred to as "The Tribes").

### History and Description of the Remains

In 1976, human remains representing, at minimum, two individuals were removed from the University of California, San Diego's University House site, in San Diego, CA. The site is variously referred to as the Black, William House; SDM–W–12A (as recorded by the San Diego Museum of Man); CA–SDI–4669 (as recorded with the State of California); and NPS No.: 08000343. No known individuals were identified. The approximately 25 associated funerary objects consist of shell, stone, charcoal, and bone.

### Determinations Made by the University of California, San Diego

Officials of the University of California, San Diego have determined that:

• The calibrated dates for the human remains are believed to fall between 8,977 and 9,603 years B.P.

• The human remains are Native American.

• Pursuant to 25 U.S.C. 3001(2), a relationship of shared group identity cannot be reasonably traced between the Native American human remains and any present-day Indian tribe.

• Evidence indicates that the land from which the Native American human remains were removed is the aboriginal land of the Diegueno (Kumeyaay) Tribe. As noted in the Schedule of Indian Land Cessions, on or about January 7, 1852, the Diegueno (Kumeyaay) ceded to the United States an area that includes present-day San Diego County.

• The present-day descendants of the Diegueno (Kumeyaay) are The Tribes.

• Pursuant to 25 U.S.C. 3001(9), the human remains described in this notice represent the physical remains of two

individuals of Native American ancestry.

• Pursuant to 25 U.S.C. 3001(3)(A), the approximately 25 objects described above are reasonably believed to have been placed with or near individual human remains at the time of death or later as part of the death rite or ceremony.

• Pursuant to 43 CFR 10.11(c)(1), and based upon request from the Kumeyaay Cultural Repatriation Committee, on behalf of The Tribes, disposition of the human remains is to the La Posta Band of Diegueno Mission Indians of the La Posta Indian Reservation, California.

**Additional Requestors and Disposition**

Representatives of any Indian tribe that believes itself to be culturally affiliated with the human remains or any other Indian tribe that believes it satisfies the criteria in 43 CFR 10.11(c)(1) should contact Gary C. Matthews, Vice Chancellor Resource Management & Planning, University of California, San Diego, 9500 Gilman Drive #0057, La Jolla, CA 92093–0057, telephone (858) 534–6820, before January 4, 2012. Disposition of the human remains to the La Posta Band of Diegueno Mission Indians of the La Posta Indian Reservation, California may proceed after that date if no additional requestors come forward.

The University of California, San Diego is responsible for notifying The Tribes that this notice has been published.

Dated: November 29, 2011.
**Sherry Hutt,**
*Manager, National NAGPRA Program.*
[FR Doc. 2011–31068 Filed 12–2–11; 8:45 am]
**BILLING CODE 4312–50–P**

---

**DEPARTMENT OF THE INTERIOR**

**National Park Service**

[2253–665]

**Notice of Inventory Completion: Minnesota Indian Affairs Council, Bemidji, MN**

**AGENCY:** National Park Service, Interior.
**ACTION:** Notice.

**SUMMARY:** The Minnesota Indian Affairs Council has completed an inventory of human remains in consultation with the appropriate Indian tribes, and has determined that there is no cultural affiliation between the remains and any present-day Indian tribe. Representatives of any Indian tribe that believes itself to be culturally affiliated with the human remains may contact the Minnesota Indian Affairs Council.

Disposition of the human remains to the Indian tribes stated below may occur if no additional requestors come forward.
**DATES:** Representatives of any Indian tribe that believes it has a cultural affiliation with the human remains should contact the Minnesota Indian Affairs Council at the address below by January 4, 2012.
**ADDRESSES:** James L. (Jim) Jones, Cultural Resource Director, Minnesota Indian Affairs Council, 3801 Bemidji Avenue NW., Suite 5, Bemidji, MN 56601, telephone (218) 755–3223.
**SUPPLEMENTARY INFORMATION:** Notice is here given in accordance with the Native American Graves Protection and Repatriation Act (NAGPRA), 25 U.S.C. 3003, of the completion of an inventory of human remains in the possession of the Minnesota Indian Affairs Council (MIAC). The human remains were removed from Marshall County, MN.

This notice is published as part of the National Park Service's administrative responsibilities under NAGPRA, 25 U.S.C. 3003(d)(3) and 43 CFR 10.11(d). The determinations in this notice are the sole responsibility of the museum, institution, or Federal agency that has control of the Native American human remains. The National Park Service is not responsible for the determinations in this notice.

**Consultation**

A detailed assessment of the human remains was made by the MIAC professional staff in consultation with representatives of the Lower Sioux Indian Community in the State of Minnesota; Prairie Island Indian Community in the State of Minnesota; Red Lake Band of Chippewa Indians, Minnesota; Sisseton-Wahpeton Oyate of the Lake Traverse Reservation, South Dakota; Turtle Mountain Band of Chippewa Indians of North Dakota (hereinafter referred to as "The Tribes").

**History and Description of the Remains**

In 1998, human remains representing, at minimum, three individuals were recovered from site 21–MA–70, Wright Quarry, in Marshall County during gravel quarrying operations by the Marshall County Highway Department. In 1999, the human remains were transferred to the Minnesota Office of the State Archaeologist. In 2002, the human remains were transferred to the MIAC (H375). No known individuals were identified. No associated funerary objects are present.

Examination of the site context by professional staff of the Minnesota Office of the State Archaeologist suggests a pre-contact burial site.

Additionally, a number of pre-historic sites are recorded in the immediate vicinity. Cranial, dental and femora morphology identify the human remains as American Indian. These human remains have no archeological classification and cannot be associated with any present-day Indian tribe.

In 2009, human remains representing, at minimum, one individual were unearthed from an unknown site in Warren, MN, during new home construction. The human remains were transferred to the Marshall County Sheriff's Department, to the Minnesota Bureau of Criminal Apprehension Laboratory, and then to the Human Identification Laboratory at the University of North Dakota for identification. The human remains were then transferred to the MIAC (H443). No known individuals were identified. No associated funerary objects are present.

The burial context and morphology of the human remains suggest identification as pre-contact American Indian. These human remains have no archeological classification and cannot be associated with any present-day Indian tribe.

**Determinations Made by the Minnesota Indian Affairs Council**

Officials of the MIAC have determined that:

• Based on non-destructive physical analysis and catalogue records, the human remains are Native American.

• Pursuant to 25 U.S.C. 3001(2), a relationship of shared group identity cannot be reasonably traced between the Native American human remains and any present-day Indian tribe.

• According to final judgments of the Indian Claims Commission, the land from which the Native American human remains were removed is the aboriginal land of The Tribes.

• Pursuant to 25 U.S.C. 3001(9), the human remains described in this notice represent the physical remains of four individuals of Native American ancestry.

• Pursuant to 43 CFR 10.11(c)(1), the disposition of the human remains is to The Tribes.

**Additional Requestors and Disposition**

Representatives of any Indian tribe that believes itself to be culturally affiliated with the human remains or any other Indian tribe that believes it satisfies the criteria in 43 CFR 10.11(c)(1) should contact James L. (Jim) Jones, Cultural Resource Director, Minnesota Indian Affairs Council, 3801 Bemidji Avenue NW., Suite 5, Bemidji, MN 56601, telephone (218) 755–3223, before January 4, 2012. Disposition of

Exhibit B

objects (43 CFR 10.9(e)(2)). The Secretary has also required publication of a notice of inventory completion prior to the disposition of culturally unidentifiable human remains, with or without associated funerary objects. The proposed text formalizes as regulation the administrative notice requirement for culturally unidentifiable human remains, with or without associated funerary objects. This rule will have no effect on museums and Federal agencies that previously published notices for disposition of culturally unidentifiable human remains, with or without associated funerary objects, pursuant to a recommendation from the Secretary.

*Section 10.9   Other General Comments*

*Comment 53:* Two commenters stated that the proposed rule puts museums in the position of determining whether human remains and associated funerary objects are "Native American."

*Our Response:* Under the Act, museums and Federal agencies already have the role and responsibility of determining what constitutes "Native American" cultural items in their possession or control. While the statute contemplates consultation on this determination and other topics related to cultural items, the final determination is the museum or Federal agency's alone. Challenges to such determinations may be raised as disputes before the Review Committee or litigated in a U.S. District Court.

*Comment 54:* Two commenters requested clarification as to who is responsible for determining the geographic or cultural affiliation of Native American human remains and associated funerary objects.

*Our Response:* The statute (25 U.S.C. 3003(a)) and current regulations (43 CFR 10.9(a)) are clear that each museum or Federal agency that has possession or control over holdings or collections of human remains and associated funerary objects must compile an inventory of such objects, and, to the fullest extent possible based on information possessed by the museum or Federal agency, must identify the geographical and cultural affiliation of each item. While these decisions must be made in consultation with Indian tribes and Native Hawaiian organizations, the museum or Federal agency is responsible for identifying the geographical and cultural affiliation of each item.

*Comment 55:* One commenter recommended that current inventories of culturally unidentifiable human remains be reevaluated in light of *U.S. v. Bonnichsen* (357 F.3d 962 (9th Cir. 2004)).

*Our Response:* The proposed rule does not change the definition of "Native American" or "human remains." To come within the scope of the Act, a Federal agency or museum must make a threshold determination that the culturally unidentifiable remains or funerary objects are Native American before they may include culturally unidentifiable human remains or funerary objects with which they are associated in the inventories that are submitted to the Review Committee pursuant to § 10.9(d)(2).

*Comment 56:* One commenter recommended that the regulations reaffirm that Federal agencies, like museums, must comply with the inventory, consultation, and repatriation requirements of the Act.

*Our Response:* Like museums, Federal agencies must comply with the summary, inventory, consultation, notice, and repatriation process of the Act and the regulations.

*Comment 57:* Seven commenters requested a clear and explicit explanation of how the proposed rule takes into account the potential interests of the public in scientific research and education.

*Our Response:* The issue of scientific research is specifically addressed by Congress. Section 5(b)(2) of the Act states that "[Documentation] does not mean, and this Act shall not be construed to be an authorization for the initiation of new scientific studies of such remains and associated funerary objects or other means of acquiring or preserving additional scientific information from such remains and objects." The rule repeats this language at § 10.9(5)(ii).

*Comment 58:* Eight comments recommended that Indian tribes and Native Hawaiian organizations should have the primary role in determining whether human remains are "culturally unidentifiable."

*Our Response:* Museum and Federal agency officials, in consultation with Indian tribes and Native Hawaiian organizations, are required to determine the cultural affiliation of all Native American human remains and associated funerary objects in their possession or control (43 CFR 10.9).

*Section 10.11   Disposition of Culturally Unidentifiable Human Remains*

This new section fulfills the Secretary's responsibility to promulgate regulations under sections 8(c)(5) and 13 of the Act (25 U.S.C. 3006(c)(5) and 3011)) and 25 U.S.C. 9 regarding the process for the disposition of culturally unidentifiable human remains. The Department of the Interior developed

this section after full and careful consideration of the Review Committee's recommendations and other relevant legislation and policy.

*Comment 59:* Thirty-two commenters generally supported this section. Twenty-four commenters generally opposed this section. One commenter recommended retaining the term "disposition" in the title of this section.

*Our Response:* The term has been retained.

*Comment 60:* One commenter recommended removing any timelines or deadlines from this section.

*Our Response:* The proposed rule includes only two deadlines. Section 10.11(b)(1) requires that the museum or Federal agency official initiate consultation within ninety days of receiving a request from an Indian tribe or Native Hawaiian organization to transfer control of culturally unidentifiable human remains or, absent such a request, before making any offer to transfer control of culturally unidentifiable human remains. Section 10.11(d)(2) requires that the manager of the National NAGPRA Program to update and make accessible the Review Committee's inventory of culturally unidentifiable human remains within 30 days of publishing a notice of inventory completion for culturally unidentifiable human remains. Both deadlines seem reasonable and necessary for the effective implementation of this section.

*Comment 61:* The preamble to the proposed rule specifically requested comments regarding the meaning of the term "cultural relationship" which is used in Section 3 of the Act (25 U.S.C. 3002) as a basis for the disposition of Native American human remains, funerary objects, sacred objects or objects of cultural patrimony excavated or removed from Federal or tribal land after 1990 (25 U.S.C. 3002(a)(2)(C)(2)), and was included in the proposed rule as a basis for consultation (43 CFR 10.11(b)) and disposition (43 CFR 10.11(c)) of culturally unidentifiable human remains. Only four commenters offered specific recommendations on how the term should be defined. One proposed a definition that is indistinguishable from that of cultural affiliation—"a relationship that exists between federally-recognized tribes and earlier Native American groups with which those federally-recognized tribes have a relationship of shared group identity."

*Our Response:* As a matter of regulatory drafting, different terms should not be accorded the same meaning when this can be avoided.

*Comment 62:* Three other commenters recognized that from its context in

Exhibit C

**Schneider, Elena**

| | |
|---|---|
| **From:** | Schneider, Elena |
| **Sent:** | Tuesday, December 20, 2011 4:29 PM |
| **To:** | 'dpark@ucsd.edu'; 'charles.robinson@ucop.edu' |
| **Cc:** | McManis, James; Peek, Christine |
| **Subject:** | Notice of Inventory Completion (Native American Graves Protection and Repatriation Act), 76 Fed.Reg. 75908 |
| **Attachments:** | 2011-12-20 LT Dan Park and Charles Robinson - UC.pdf |

Dear Mr. Park and Mr. Robinson,

Attached please find Mr. McManis' letter of today's date.

Thank you.

Elena Schneider
Legal Assistant

**ELENA K. SCHNEIDER, CCLS**
**McMANIS FAULKNER**
Fairmont Plaza - 10th Floor
50 West San Fernando Street
San Jose, CA 95113
408.279.8700 Telephone
408.279.3244 Facsimile
www.mcmanislaw.com

# McManis Faulkner

This email contains confidential information that may be privileged. Unless you are the addressee named above, you may not copy, use, or distribute it. If you have received it in error, please contact the sender by reply email and delete all copies. Thank you.

December 20, 2011

<u>VIA ELECTRONIC MAIL & CERTIFIED MAIL, RETURN RECEIPT REQUESTED</u>

Dan Park, Chief Campus Counsel &
Associate General Counsel
University of California, San Diego
Office of the Chancellor
9500 Gilman Drive
La Jolla, CA 92093-0005
dpark@ucsd.edu

Charles F. Robinson, Vice President and
General Counsel for Legal Affairs
University of California
Office of the General Counsel
1111 Franklin Street, 8th Floor
Oakland, CA 94607
charles.robinson@ucop.edu

Re:   **Notice of Inventory Completion (Native American Graves
      Protection and Repatriation Act), 76 Fed.Reg. 75908**

Dear Counsel:

Our office represents three professors of the University of California – Timothy
White, Robert Bettinger, and Margaret Schoeninger – with respect to the two
skeletons, approximately 10,000 years old ("La Jolla Skeletons"), described in the
above-referenced Notice of Inventory Completion, published December 5, 2011, in
the Federal Register ("Repatriation Notice"). A copy of the Repatriation Notice is
enclosed for your convenience.

We understand the University intends to dispose of the La Jolla Skeletons to the La
Posta Band of Mission Indians, pursuant to NAGPRA. This would result in the
permanent loss of an irreplaceable opportunity for all people to understand the
origins of humanity in North America.

We urge the University to reconsider, and to withdraw the Repatriation Notice. The
Repatriation Notice reports the "finding" that the skeletons are "Native American,"
but it does not appear that the University actually made any findings or considered
any evidence on this issue. If the La Jolla Skeletons are not "Native American," the
University is not authorized to dispose of them under NAGPRA.

In fact, it is virtually impossible that the skeletons are "Native American" under
NAGPRA, or in other words, that they are, "of, or relating to, a tribe, people, or
culture that <u>is</u> indigenous to the United States." (25 U.S.C. § 3001(9) (emphasis
added).) Human remains must bear some relationship to a <u>presently existing</u> tribe,
people, or culture to be considered "Native American" within the meaning of
NAGPRA. (*See Bonnichsen v. United States* (9th Cir. 2004) 367 F.3d 864, 875-76.)

We are unaware of any evidence establishing a relationship between the La Jolla
Skeletons and any presently existing tribe, let alone the La Posta Band of Mission
Indians. To the contrary, a 2007 detailed morphological study by Professor Douglas

University Counsel
December 20, 2011
Page 2

Owsley concluded the La Jolla Skeletons were not Native American. Indeed, the
University's own "finding" that "a relationship of shared group identity cannot be
reasonably traced between the Native American human remains and any present-
day Indian tribe" appears to refute its "finding" that the La Jolla Skeletons are "Native
American."

We do not believe the University has made a proper finding or conducted a sufficient
inquiry into whether or not the La Jolla Skeletons are "Native American" within the
meaning of NAGPRA. As a result, the University's decision to include them in its
Repatriation Notice (or any other federal inventory) was legally wrong.

To the extent the University is relying on 43 C.F.R. § 10.11 to support its decision, its
reliance is misplaced. Title 43, part 10.11 of the Code of Federal Regulations is
invalid because it impermissibly conflicts with NAGPRA, among other reasons. No
law authorizes the University to give the La Jolla Skeletons to any Indian tribe, and
doing so would constitute a breach of the public trust.

Finally, we understand that our clients have asked to study the La Jolla Skeletons,
but the University has not agreed to their requests. Please be advised that
NAGPRA does not authorize the University to deny these study requests, because
there has not been a proper finding, supported by reliable evidence, that the
skeletons are even subject to NAGPRA.

We ask that the University do the following:

(1) Withdraw the Repatriation Notice;

(2) Conduct a good faith inquiry, in the form of a noticed, full evidentiary
hearing, with opportunity for cross-examination of any testifying witnesses,
into whether or not the La Jolla Skeletons are "Native American" within the
meaning of NAGPRA, and if not, withdraw or amend any other federal
inventories on which they appear; and

(3) Allow our clients to study the skeletons, as they have requested.

Even if the University will not agree to reconsider its decision to dispose of the La
Jolla Skeletons to the La Posta Band of Mission Indians, we ask that the University
stipulate to continue to retain the La Jolla Skeletons in their current condition and
location at the San Diego Archaeological Center (SDAC), until their legal status may
be determined. Although we hope to avoid litigation, this will allow all concerned to
preserve the status quo, even if litigation cannot be avoided. Because the skeletons
have been under the University's control since their discovery in 1976, we do not
believe anyone would be prejudiced by such an agreement.

Please let us know on or before 5:00 p.m. on Tuesday, December 27, 2011, whether
the University will agree to withdraw the Repatriation Notice, conduct a good faith
inquiry into the legal status of the La Jolla Skeletons, allow our clients to study the

**McManis·Faulkner**

University Counsel
December 20, 2011
Page 3

skeletons, and agree not to move the skeletons from the SDAC until their legal
status is determined.

If the University will not agree, or if we do not hear from you by the above deadline,
we may file a civil action to enjoin repatriation of the La Jolla Skeletons, and we may
seek a TRO and preliminary injunction. Because the potential destruction of the
skeletons and the invaluable information contained within them is a matter affecting
the public interest, our clients are entitled to recover their attorneys' fees under Code
of Civil Procedure, section 1021.5.

Thank you very much for your prompt attention to this matter.

Very truly yours,

McMANIS FAULKNER

*Christine E. Peek for*
*James McManis*

JAMES McMANIS
JM:eks

Encl.

cc.   United States Department of Interior, Office of the Solicitor



**Determinations Made by the Minnesota Indian Affairs Council**

Officials of the MIAC have determined that:

• Based on non-destructive physical analysis and catalogue records, the human remains are Native American.

• Pursuant to 25 U.S.C. 3001(2), a relationship of shared group identity cannot be reasonably traced between the Native American human remains and any present-day Indian tribe.

• According to final judgments of the Indian Claims Commission, the land from which the Native American human remains and associated funerary objects were removed is the aboriginal land of The Tribes.

• Pursuant to 25 U.S.C. 3001(9), the human remains described in this notice represent the physical remains of two individuals of Native American ancestry.

• Pursuant to 25 U.S.C. 3001(3)(A), the one object described above is reasonably believed to have been placed with or near individual human remains at the time of death or later as part of the death rite or ceremony.

• Pursuant to 43 CFR 10.11(c)(1), the disposition of the human remains is to The Tribes.

**Additional Requestors and Disposition**

Representatives of any Indian tribe that believes itself to be culturally affiliated with the human remains or any other Indian tribe that believes it satisfies the criteria in 43 CFR 10.11(c)(1) should contact James L. (Jim) Jones, Cultural Resource Director, Minnesota Indian Affairs Council, 3801 Bemidji Avenue NW., Suite 5, Bemidji, MN 56601, telephone (218) 755–3223, before January 4, 2012. Disposition of the human remains to The Tribes may proceed after that date if no additional requestors come forward.

The Minnesota Indian Affairs Council is responsible for notifying The Tribes that this notice has been published.

Dated: November 29, 2011.

Sherry Hutt,

*Manager, National NAGPRA Program.*

[FR Doc. 2011–31072 Filed 12–2–11; 8:45 am]

BILLING CODE 4312–50–P

---

**DEPARTMENT OF THE INTERIOR**

**National Park Service**

[2253–665]

**Notice of Inventory Completion: The University of California, San Diego, San Diego, CA**

**AGENCY:** National Park Service, Interior.

**ACTION:** Notice.

**SUMMARY:** The Regents of the University of California on behalf of the University of California, San Diego, have completed an inventory of human remains and associated funerary objects, in consultation with the appropriate Indian tribes, and have determined that there is no cultural affiliation between the remains and any present-day Indian tribe. Representatives of any Indian tribe that believes itself to be culturally affiliated with the human remains may contact the University of California, San Diego. Disposition of the human remains and associated funerary objects to the Indian tribes stated below may occur if no additional requestors come forward.

**DATES:** Representatives of any Indian tribe that believes it has a cultural affiliation with the human remains should contact the University of California, San Diego at the address below by January 4, 2012.

**ADDRESSES:** Gary C. Matthews, Vice Chancellor Resource Management & Planning, University of California, San Diego, 9500 Gilman Drive #0057, La Jolla, CA 92093–0057, telephone (858) 534–6820.

**SUPPLEMENTARY INFORMATION:** Notice is hereby given in accordance with the Native American Graves Protection and Repatriation Act (NAGPRA), 25 U.S.C. 3003, of the completion of an inventory of human remains and associated funerary objects in the possession of the University of California, San Diego. The human remains and associated funerary objects were removed from the University of California, San Diego's University House site in San Diego County, CA.

This notice is published as part of the National Park Service's administrative responsibilities under NAGPRA, 25 U.S.C. 3003(d)(3) and 43 CFR 10.11(d). The determinations in this notice are the sole responsibility of the museum, institution, or Federal agency that has control of the Native American human remains. The National Park Service is not responsible for the determinations in this notice.

**Consultation**

A detailed assessment of the human remains was made by University of California professional staff in consultation with representatives of the Barona Group of Capitan Grande Band of Mission Indians of the Barona Reservation, California; Campo Band of Diegueno Mission Indians of the Campo Indian Reservation, California; Ewiiaapaayp Band of Kumeyaay

Indians, California; Iipay Nation of Santa Ysabel, California (formerly the Santa Ysabel Band of Diegueno Mission Indians of the Santa Ysabel Reservation); Inaja Band of Diegueno Mission Indians of the Inaja and Cosmit Reservation, California; Jamul Indian Village of California; La Posta Band of Diegueno Mission Indians of the La Posta Indian Reservation, California; Manzanita Band of Diegueno Mission Indians of the Manzanita Reservation, California; Mesa Grande Band of Diegueno Mission Indians of the Mesa Grande Reservation, California; San Pasqual Band of Diegueno Mission Indians of California; Sycuan Band of the Kumeyaay Nation; and the Viejas (Baron Long) Group of Capitan Grande Band of Mission Indians of the Viejas Reservation, California (herein after referred to as "The Tribes").

**History and Description of the Remains**

In 1976, human remains representing, at minimum, two individuals were removed from the University of California, San Diego's University House site, in San Diego, CA. The site is variously referred to as the Black, William House; SDM–W–12A (as recorded by the San Diego Museum of Man); CA–SDI–4669 (as recorded with the State of California); and NPS No.: 08000343. No known individuals were identified. The approximately 25 associated funerary objects consist of shell, stone, charcoal, and bone.

**Determinations Made by the University of California, San Diego**

Officials of the University of California, San Diego have determined that:

• The calibrated dates for the human remains are believed to fall between 8,977 and 9,603 years B.P.

• The human remains are Native American.

• Pursuant to 25 U.S.C. 3001(2), a relationship of shared group identity cannot be reasonably traced between the Native American human remains and any present-day Indian tribe.

• Evidence indicates that the land from which the Native American human remains were removed is the aboriginal land of the Diegueno (Kumeyaay) Tribe. As noted in the Schedule of Indian Land Cessions, on or about January 7, 1852, the Diegueno (Kumeyaay) ceded to the United States an area that includes present-day San Diego County.

• The present-day descendants of the Diegueno (Kumeyaay) are The Tribes.

• Pursuant to 25 U.S.C. 3001(9), the human remains described in this notice represent the physical remains of two

individuals of Native American ancestry.

• Pursuant to 25 U.S.C. 3001(3)(A), the approximately 25 objects described above are reasonably believed to have been placed with or near individual human remains at the time of death or later as part of the death rite or ceremony.

• Pursuant to 43 CFR 10.11(c)(1), and based upon request from the Kumeyaay Cultural Repatriation Committee, on behalf of The Tribes, disposition of the human remains is to the La Posta Band of Diegueno Mission Indians of the La Posta Indian Reservation, California.

## Additional Requestors and Disposition

Representatives of any Indian tribe that believes itself to be culturally affiliated with the human remains or any other Indian tribe that believes it satisfies the criteria in 43 CFR 10.11(c)(1) should contact Gary C. Matthews, Vice Chancellor Resource Management & Planning, University of California, San Diego, 9500 Gilman Drive #0057, La Jolla, CA 92093–0057, telephone (858) 534–6820, before January 4, 2012. Disposition of the human remains to the La Posta Band of Diegueno Mission Indians of the La Posta Indian Reservation, California may proceed after that date if no additional requestors come forward.

The University of California, San Diego is responsible for notifying The Tribes that this notice has been published.

Dated: November 29, 2011.

Sherry Hutt,

*Manager, National NAGPRA Program.*

[FR Doc. 2011–31056 Filed 12–2–11; 8:45 am]

BILLING CODE 4312–50–P

## DEPARTMENT OF THE INTERIOR

### National Park Service

[2253–665]

### Notice of Inventory Completion: Minnesota Indian Affairs Council, Bemidji, MN

**AGENCY:** National Park Service, Interior.

**ACTION:** Notice.

**SUMMARY:** The Minnesota Indian Affairs Council has completed an inventory of human remains in consultation with the appropriate Indian tribes, and has determined that there is no cultural affiliation between the remains and any present-day Indian tribe. Representatives of any Indian tribe that believes itself to be culturally affiliated with the human remains may contact the Minnesota Indian Affairs Council.

Disposition of the human remains to the Indian tribes stated below may occur if no additional requestors come forward.

**DATES:** Representatives of any Indian tribe that believes it has a cultural affiliation with the human remains should contact the Minnesota Indian Affairs Council at the address below by January 4, 2012.

**ADDRESSES:** James L. (Jim) Jones, Cultural Resource Director, Minnesota Indian Affairs Council, 3801 Bemidji Avenue NW., Suite 5, Bemidji, MN 56601, telephone (218) 755–3223.

**SUPPLEMENTARY INFORMATION:** Notice is here given in accordance with the Native American Graves Protection and Repatriation Act (NAGPRA), 25 U.S.C. 3003, of the completion of an inventory of human remains in the possession of the Minnesota Indian Affairs Council (MIAC). The human remains were removed from Marshall County, MN.

This notice is published as part of the National Park Service's administrative responsibilities under NAGPRA, 25 U.S.C. 3003(d)(3) and 43 CFR 10.11(d). The determinations in this notice are the sole responsibility of the museum, institution, or Federal agency that has control of the Native American human remains. The National Park Service is not responsible for the determinations in this notice.

### Consultation

A detailed assessment of the human remains was made by the MIAC professional staff in consultation with representatives of the Lower Sioux Indian Community in the State of Minnesota; Prairie Island Indian Community in the State of Minnesota; Red Lake Band of Chippewa Indians, Minnesota; Sisseton-Wahpeton Oyate of the Lake Traverse Reservation, South Dakota; Turtle Mountain Band of Chippewa Indians of North Dakota (hereinafter referred to as "The Tribes").

### History and Description of the Remains

In 1998, human remains representing, at minimum, three individuals were recovered from site 21–MA–70, Wright Quarry, in Marshall County during gravel quarrying operations by the Marshall County Highway Department. In 1999, the human remains were transferred to the Minnesota Office of the State Archaeologist. In 2002, the human remains were transferred to the MIAC (H375). No known individuals were identified. No associated funerary objects are present.

Examination of the site context by professional staff of the Minnesota Office of the State Archaeologist suggests a pre-contact burial site.

Additionally, a number of pre-historic sites are recorded in the immediate vicinity. Cranial, dental and femora morphology identify the human remains as American Indian. These human remains have no archeological classification and cannot be associated with any present-day Indian tribe.

In 2009, human remains representing, at minimum, one individual were unearthed from an unknown site in Warren, MN, during new home construction. The human remains were transferred to the Marshall County Sheriff's Department, to the Minnesota Bureau of Criminal Apprehension Laboratory, and then to the Human Identification Laboratory at the University of North Dakota for identification. The human remains were then transferred to the MIAC (H443). No known individuals were identified. No associated funerary objects are present.

The burial context and morphology of the human remains suggest identification as pre-contact American Indian. These human remains have no archeological classification and cannot be associated with any present-day Indian tribe.

### Determinations Made by the Minnesota Indian Affairs Council

Officials of the MIAC have determined that:

• Based on non-destructive physical analysis and catalogue records, the human remains are Native American.

• Pursuant to 25 U.S.C. 3001(2), a relationship of shared group identity cannot be reasonably traced between the Native American human remains and any present-day Indian tribe.

• According to final judgments of the Indian Claims Commission, the land from which the Native American human remains were removed is the aboriginal land of The Tribes.

• Pursuant to 25 U.S.C. 3001(9), the human remains described in this notice represent the physical remains of four individuals of Native American ancestry.

• Pursuant to 43 CFR 10.11(c)(1), the disposition of the human remains is to The Tribes.

### Additional Requestors and Disposition

Representatives of any Indian tribe that believes itself to be culturally affiliated with the human remains or any other Indian tribe that believes it satisfies the criteria in 43 CFR 10.11(c)(1) should contact James L. (Jim) Jones, Cultural Resource Director, Minnesota Indian Affairs Council, 3801 Bemidji Avenue NW., Suite 5, Bemidji, MN 56601, telephone (218) 755–3223, before January 4, 2012. Disposition of

Exhibit D

**Schneider, Elena**

| | |
|---|---|
| **From:** | Schneider, Elena |
| **Sent:** | Wednesday, December 21, 2011 11:36 AM |
| **To:** | 'dklein@ucsd.edu'; 'adrienne.witte@ucop.edu' |
| **Cc:** | 'dpark@ucsd.edu'; 'charles.robinson@ucop.edu'; Pipkin, Elizabeth; McManis, James |
| **Subject:** | FW: Notice of Inventory Completion (Native American Graves Protection and Repatriation Act), 76 Fed.Reg. 75908 |
| **Attachments:** | 2011-12-20 LT Dan Park and Charles Robinson - UC.pdf |

Dear Mr. Klein and Ms. Witte:

Please see Mr. McManis' letter attached. The original email below was sent yesterday to your colleagues. Being that this is a time sensitive matter and we wanted to be sure it has been received by your respective offices.

A response is requested on or before December 27, 2011.

Thank you for your attention to this matter.

Elena Schneider
Legal Assistant

**From:** Schneider, Elena
**Sent:** Tuesday, December 20, 2011 4:29 PM
**To:** 'dpark@ucsd.edu'; 'charles.robinson@ucop.edu'
**Cc:** McManis, James; Peek, Christine
**Subject:** Notice of Inventory Completion (Native American Graves Protection and Repatriation Act), 76 Fed.Reg. 75908

Dear Mr. Park and Mr. Robinson,

Attached please find Mr. McManis' letter of today's date.

Thank you.

Elena Schneider
Legal Assistant

**ELENA K. SCHNEIDER, CCLS**
**McMANIS FAULKNER**
Fairmont Plaza - 10th Floor
50 West San Fernando Street
San Jose, CA 95113
408.279.8700 Telephone
408.279.3244 Facsimile
www.mcmanislaw.com

# McManis+Faulkner

This email contains confidential information that may be privileged. Unless you are the addressee named above, you may not copy, use, or distribute it. If you have received it in error, please contact the sender by reply email and delete all copies. Thank you.

1

December 20, 2011

**VIA ELECTRONIC MAIL & CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

Dan Park, Chief Campus Counsel &
Associate General Counsel
University of California, San Diego
Office of the Chancellor
9500 Gilman Drive
La Jolla, CA 92093-0005
dpark@ucsd.edu

Charles F. Robinson, Vice President and
General Counsel for Legal Affairs
University of California
Office of the General Counsel
1111 Franklin Street, 8th Floor
Oakland, CA 94607
charles.robinson@ucop.edu

Re:   **Notice of Inventory Completion (Native American Graves
Protection and Repatriation Act), 76 Fed.Reg. 75908**

Dear Counsel:

Our office represents three professors of the University of California – Timothy
White, Robert Bettinger, and Margaret Schoeninger – with respect to the two
skeletons, approximately 10,000 years old ("La Jolla Skeletons"), described in the
above-referenced Notice of Inventory Completion, published December 5, 2011, in
the Federal Register ("Repatriation Notice"). A copy of the Repatriation Notice is
enclosed for your convenience.

We understand the University intends to dispose of the La Jolla Skeletons to the La
Posta Band of Mission Indians, pursuant to NAGPRA. This would result in the
permanent loss of an irreplaceable opportunity for all people to understand the
origins of humanity in North America.

We urge the University to reconsider, and to withdraw the Repatriation Notice. The
Repatriation Notice reports the "finding" that the skeletons are "Native American,"
but it does not appear that the University actually made any findings or considered
any evidence on this issue. If the La Jolla Skeletons are not "Native American," the
University is not authorized to dispose of them under NAGPRA.

In fact, it is virtually impossible that the skeletons are "Native American" under
NAGPRA, or in other words, that they are, "of, or relating to, a tribe, people, or
culture that is indigenous to the United States." (25 U.S.C. § 3001(9) (emphasis
added).) Human remains must bear some relationship to a presently existing tribe,
people, or culture to be considered "Native American" within the meaning of
NAGPRA. (*See Bonnichsen v. United States* (9th Cir. 2004) 367 F.3d 864, 875-76.)

We are unaware of any evidence establishing a relationship between the La Jolla
Skeletons and any presently existing tribe, let alone the La Posta Band of Mission
Indians. To the contrary, a 2007 detailed morphological study by Professor Douglas

**McManis Faulkner**

University Counsel
December 20, 2011
Page 2

Owsley concluded the La Jolla Skeletons were not Native American. Indeed, the University's own "finding" that "a relationship of shared group identity cannot be reasonably traced between the Native American human remains and any present-day Indian tribe" appears to refute its "finding" that the La Jolla Skeletons are "Native American."

We do not believe the University has made a proper finding or conducted a sufficient inquiry into whether or not the La Jolla Skeletons are "Native American" within the meaning of NAGPRA. As a result, the University's decision to include them in its Repatriation Notice (or any other federal inventory) was legally wrong.

To the extent the University is relying on 43 C.F.R. § 10.11 to support its decision, its reliance is misplaced. Title 43, part 10.11 of the Code of Federal Regulations is invalid because it impermissibly conflicts with NAGPRA, among other reasons. No law authorizes the University to give the La Jolla Skeletons to any Indian tribe, and doing so would constitute a breach of the public trust.

Finally, we understand that our clients have asked to study the La Jolla Skeletons, but the University has not agreed to their requests. Please be advised that NAGPRA does not authorize the University to deny these study requests, because there has not been a proper finding, supported by reliable evidence, that the skeletons are even subject to NAGPRA.

We ask that the University do the following:

    (1) Withdraw the Repatriation Notice;

    (2) Conduct a good faith inquiry, in the form of a noticed, full evidentiary hearing, with opportunity for cross-examination of any testifying witnesses, into whether or not the La Jolla Skeletons are "Native American" within the meaning of NAGPRA, and if not, withdraw or amend any other federal inventories on which they appear; and

    (3) Allow our clients to study the skeletons, as they have requested.

Even if the University will not agree to reconsider its decision to dispose of the La Jolla Skeletons to the La Posta Band of Mission Indians, we ask that the University stipulate to continue to retain the La Jolla Skeletons in their current condition and location at the San Diego Archaeological Center (SDAC), until their legal status may be determined. Although we hope to avoid litigation, this will allow all concerned to preserve the status quo, even if litigation cannot be avoided. Because the skeletons have been under the University's control since their discovery in 1976, we do not believe anyone would be prejudiced by such an agreement.

Please let us know on or before 5:00 p.m. on Tuesday, December 27, 2011, whether the University will agree to withdraw the Repatriation Notice, conduct a good faith inquiry into the legal status of the La Jolla Skeletons, allow our clients to study the

# McManis-Faulkner

University Counsel
December 20, 2011
Page 3

skeletons, and agree not to move the skeletons from the SDAC until their legal
status is determined.

If the University will not agree, or if we do not hear from you by the above deadline,
we may file a civil action to enjoin repatriation of the La Jolla Skeletons, and we may
seek a TRO and preliminary injunction.  Because the potential destruction of the
skeletons and the invaluable information contained within them is a matter affecting
the public interest, our clients are entitled to recover their attorneys' fees under Code
of Civil Procedure, section 1021.5.

Thank you very much for your prompt attention to this matter.


Very truly yours,

McMANIS FAULKNER

*Christine E. Puck for*
*James McManis*

JAMES McMANIS
JM:eks

Encl.


cc.     United States Department of Interior, Office of the Solicitor


**McManis⊣Faulkner**

Telephone 408.279.8700  |  Facsimile 408.279.3244  |  mcmanislaw.com
Fairmont Plaza, 10th floor, 50 W. San Fernando Street, San Jose, California 95113



## Determinations Made by the Minnesota Indian Affairs Council

Officials of the MIAC have determined that:

• Based on non-destructive physical analysis and catalogue records, the human remains are Native American.

• Pursuant to 25 U.S.C. 3001(2), a relationship of shared group identity cannot be reasonably traced between the Native American human remains and any present-day Indian tribe.

• According to final judgments of the Indian Claims Commission, the land from which the Native American human remains and associated funerary objects were removed is the aboriginal land of The Tribes.

• Pursuant to 25 U.S.C. 3001(9), the human remains described in this notice represent the physical remains of two individuals of Native American ancestry.

• Pursuant to 25 U.S.C. 3001(3)(A), the one object described above is reasonably believed to have been placed with or near individual human remains at the time of death or later as part of the death rite or ceremony.

• Pursuant to 43 CFR 10.11(c)(1), the disposition of the human remains is to The Tribes.

## Additional Requestors and Disposition

Representatives of any Indian tribe that believes itself to be culturally affiliated with the human remains or any other Indian tribe that believes it satisfies the criteria in 43 CFR 10.11(c)(1) should contact James L. (Jim) Jones, Cultural Resource Director, Minnesota Indian Affairs Council, 3801 Bemidji Avenue NW., Suite 5, Bemidji, MN 56601, telephone (218) 755–3223, before January 4, 2012. Disposition of the human remains to The Tribes may proceed after that date if no additional requestors come forward.

The Minnesota Indian Affairs Council is responsible for notifying The Tribes that this notice has been published.

Dated: November 29, 2011.

Sherry Hutt,

*Manager, National NAGPRA Program.*

[FR Doc. 2011–31072 Filed 12–2–11; 8:45 am]

BILLING CODE 4312–50–P

## DEPARTMENT OF THE INTERIOR

### National Park Service

[2253–665]

### Notice of Inventory Completion: The University of California, San Diego, San Diego, CA

**AGENCY:** National Park Service, Interior.

**ACTION:** Notice.

**SUMMARY:** The Regents of the University of California on behalf of the University of California, San Diego, have completed an inventory of human remains and associated funerary objects, in consultation with the appropriate Indian tribes, and have determined that there is no cultural affiliation between the remains and any present-day Indian tribe. Representatives of any Indian tribe that believes itself to be culturally affiliated with the human remains may contact the University of California, San Diego. Disposition of the human remains and associated funerary objects to the Indian tribes stated below may occur if no additional requestors come forward.

**DATES:** Representatives of any Indian tribe that believes it has a cultural affiliation with the human remains should contact the University of California, San Diego at the address below by January 4, 2012.

**ADDRESSES:** Gary C. Matthews, Vice Chancellor Resource Management & Planning, University of California, San Diego, 9500 Gilman Drive #0057, La Jolla, CA 92093–0057, telephone (858) 534–6820.

**SUPPLEMENTARY INFORMATION:** Notice is hereby given in accordance with the Native American Graves Protection and Repatriation Act (NAGPRA), 25 U.S.C. 3003, of the completion of an inventory of human remains and associated funerary objects in the possession of the University of California, San Diego. The human remains and associated funerary objects were removed from the University of California, San Diego's University House site in San Diego County, CA.

This notice is published as part of the National Park Service's administrative responsibilities under NAGPRA, 25 U.S.C. 3003(d)(3) and 43 CFR 10.11(d). The determinations in this notice are the sole responsibility of the museum, institution, or Federal agency that has control of the Native American human remains. The National Park Service is not responsible for the determinations in this notice.

## Consultation

A detailed assessment of the human remains was made by University of California professional staff in consultation with representatives of the Barona Group of Capitan Grande Band of Mission Indians of the Barona Reservation, California; Campo Band of Diegueno Mission Indians of the Campo Indian Reservation, California; Ewiiaapaayp Band of Kumeyaay

Indians, California; Iipay Nation of Santa Ysabel, California (formerly the Santa Ysabel Band of Diegueno Mission Indians of the Santa Ysabel Reservation); Inaja Band of Diegueno Mission Indians of the Inaja and Cosmit Reservation, California; Jamul Indian Village of California; La Posta Band of Diegueno Mission Indians of the La Posta Indian Reservation, California; Manzanita Band of Diegueno Mission Indians of the Manzanita Reservation, California; Mesa Grande Band of Diegueno Mission Indians of the Mesa Grande Reservation, California; San Pasqual Band of Diegueno Mission Indians of California; Sycuan Band of the Kumeyaay Nation; and the Viejas (Baron Long) Group of Capitan Grande Band of Mission Indians of the Viejas Reservation, California (herein after referred to as "The Tribes").

## History and Description of the Remains

In 1976, human remains representing, at minimum, two individuals were removed from the University of California, San Diego's University House site in San Diego, CA. The site is variously referred to as the Black, William House; SDM–W–12A (as recorded by the San Diego Museum of Man); CA–SDI–4669 (as recorded with the State of California); and NPS No.: 08000343. No known individuals were identified. The approximately 25 associated funerary objects consist of shell, stone, charcoal, and bone.

## Determinations Made by the University of California, San Diego

Officials of the University of California, San Diego have determined that:

• The calibrated dates for the human remains are believed to fall between 8,977 and 9,603 years B.P.

• The human remains are Native American.

• Pursuant to 25 U.S.C. 3001(2), a relationship of shared group identity cannot be reasonably traced between the Native American human remains and any present-day Indian tribe.

• Evidence indicates that the land from which the Native American human remains were removed is the aboriginal land of the Diegueno (Kumeyaay) Tribe. As noted in the Schedule of Indian Land Cessions, on or about January 7, 1852, the Diegueno (Kumeyaay) ceded to the United States an area that includes present-day San Diego County.

• The present-day descendants of the Diegueno (Kumeyaay) are The Tribes.

• Pursuant to 25 U.S.C. 3001(9), the human remains described in this notice represent the physical remains of two

individuals of Native American ancestry.

• Pursuant to 25 U.S.C. 3001(3)(A), the approximately 25 objects described above are reasonably believed to have been placed with or near individual human remains at the time of death or later as part of the death rite or ceremony.

• Pursuant to 43 CFR 10.11(c)(1), and based upon request from the Kumeyaay Cultural Repatriation Committee, on behalf of The Tribes, disposition of the human remains is to the La Posta Band of Diegueno Mission Indians of the La Posta Indian Reservation, California.

Additional Requestors and Disposition

Representatives of any Indian tribe that believes itself to be culturally affiliated with the human remains or any other Indian tribe that believes it satisfies the criteria in 43 CFR 10.11(c)(1) should contact Gary C. Matthews, Vice Chancellor Resource Management & Planning, University of California, San Diego, 9500 Gilman Drive #0057, La Jolla, CA 92093–0057, telephone (858) 534–6820, before January 4, 2012. Disposition of the human remains to the La Posta Band of Diegueno Mission Indians of the La Posta Indian Reservation, California may proceed after that date if no additional requestors come forward.

The University of California, San Diego is responsible for notifying The Tribes that this notice has been published.

Dated: November 29, 2011.
Sherry Hutt,
*Manager, National NAGPRA Program.*
[FR Doc. 2011–31068 Filed 12–2–11; 8:45 am]
BILLING CODE 4312–50–P

---

DEPARTMENT OF THE INTERIOR

National Park Service

[2253–665]

Notice of Inventory Completion: Minnesota Indian Affairs Council, Bemidji, MN

AGENCY: National Park Service, Interior.
ACTION: Notice.

SUMMARY: The Minnesota Indian Affairs Council has completed an inventory of human remains in consultation with the appropriate Indian tribes, and has determined that there is no cultural affiliation between the remains and any present-day Indian tribe. Representatives of any Indian tribe that believes itself to be culturally affiliated with the human remains may contact the Minnesota Indian Affairs Council.

Disposition of the human remains to the Indian tribes stated below may occur if no additional requestors come forward.
DATES: Representatives of any Indian tribe that believes it has a cultural affiliation with the human remains should contact the Minnesota Indian Affairs Council at the address below by January 4, 2012.
ADDRESSES: James L. (Jim) Jones, Cultural Resource Director, Minnesota Indian Affairs Council, 3801 Bemidji Avenue NW., Suite 5, Bemidji, MN 56601, telephone (218) 755–3223.
SUPPLEMENTARY INFORMATION: Notice is here given in accordance with the Native American Graves Protection and Repatriation Act (NAGPRA), 25 U.S.C. 3003, of the completion of an inventory of human remains in the possession of the Minnesota Indian Affairs Council (MIAC). The human remains were removed from Marshall County, MN.

This notice is published as part of the National Park Service's administrative responsibilities under NAGPRA, 25 U.S.C. 3003(d)(3) and 43 CFR 10.11(d). The determinations in this notice are the sole responsibility of the museum, institution, or Federal agency that has control of the Native American human remains. The National Park Service is not responsible for the determinations in this notice.

Consultation

A detailed assessment of the human remains was made by the MIAC professional staff in consultation with representatives of the Lower Sioux Indian Community in the State of Minnesota; Prairie Island Indian Community in the State of Minnesota; Red Lake Band of Chippewa Indians, Minnesota; Sisseton-Wahpeton Oyate of the Lake Traverse Reservation, South Dakota; Turtle Mountain Band of Chippewa Indians of North Dakota (hereinafter referred to as "The Tribes").

History and Description of the Remains

In 1998, human remains representing, at minimum, three individuals were recovered from site 21–MA–70, Wright Quarry, in Marshall County during gravel quarrying operations by the Marshall County Highway Department. In 1999, the human remains were transferred to the Minnesota Office of the State Archaeologist. In 2002, the human remains were transferred to the MIAC (H375). No known individuals were identified. No associated funerary objects are present.

Examination of the site context by professional staff of the Minnesota Office of the State Archaeologist suggests a pre-contact burial site.

Additionally, a number of pre-historic sites are recorded in the immediate vicinity. Cranial, dental and femora morphology identify the human remains as American Indian. These human remains have no archeological classification and cannot be associated with any present-day Indian tribe.

In 2009, human remains representing, at minimum, one individual were unearthed from an unknown site in Warren, MN, during new home construction. The human remains were transferred to the Marshall County Sheriff's Department, to the Minnesota Bureau of Criminal Apprehension Laboratory, and then to the Human Identification Laboratory at the University of North Dakota for identification. The human remains were then transferred to the MIAC (H443). No known individuals were identified. No associated funerary objects are present.

The burial context and morphology of the human remains suggest identification as pre-contact American Indian. These human remains have no archeological classification and cannot be associated with any present-day Indian tribe.

Determinations Made by the Minnesota Indian Affairs Council

Officials of the MIAC have determined that:

• Based on non-destructive physical analysis and catalogue records, the human remains are Native American.

• Pursuant to 25 U.S.C. 3001(2), a relationship of shared group identity cannot be reasonably traced between the Native American human remains and any present-day Indian tribe.

• According to final judgments of the Indian Claims Commission, the land from which the Native American human remains were removed is the aboriginal land of The Tribes.

• Pursuant to 25 U.S.C. 3001(9), the human remains described in this notice represent the physical remains of four individuals of Native American ancestry.

• Pursuant to 43 CFR 10.11(c)(1), the disposition of the human remains is to The Tribes.

Additional Requestors and Disposition

Representatives of any Indian tribe that believes itself to be culturally affiliated with the human remains or any other Indian tribe that believes it satisfies the criteria in 43 CFR 10.11(c)(1) should contact James L. (Jim) Jones, Cultural Resource Director, Minnesota Indian Affairs Council, 3801 Bemidji Avenue NW., Suite 5, Bemidji, MN 56601, telephone (218) 755–3223, before January 4, 2012. Disposition of

Exhibit E

## Peek, Christine

| | |
|---|---|
| **From:** | Peek, Christine |
| **Sent:** | Thursday, December 22, 2011 5:47 PM |
| **To:** | 'dklein@ucsd.edu'; 'charles.robinson@ucop.edu'; 'dwpark@ucsd.edu'; 'adrienne.witte@ucop.edu' |
| **Cc:** | McManis, James; Schneider, Elena |
| **Subject:** | RE: Notice of Inventory Completion (Native American Graves Protection and Repatriation Act), 76 Fed.Reg. 75908 |

Dear Mr. Klein,

Thank you for your email (below) responding in Mr. Park's absence. We forwarded our letter to you at the suggestion of your front office, because **this is a time-sensitive matter that requires immediate attention.**

We need someone at the University who has the authority to enter into a stipulation not to transfer possession of the La Jolla Skeletons until their legal status may be determined. If you do not have that authority, we would appreciate your forwarding our letter to the person who does.

We understand this time of year poses difficulties. Regrettably, the University published its Notice of Inventory Completion on December 5, 2011, and apparently did not provide our clients notice of its decision until December 19, 2011—three (3) days ago.

Although you pointed out the campus is closed, it appears your office is not, and we still need a response by next Tuesday, December 27, 2011. We would like to avoid having to file a lawsuit and seek a TRO. In this regard, we would like a written assurance from your office that **no transfer of possession** will occur until the parties have at least had an opportunity to discuss some interim arrangement to preserve the status quo pending further proceedings.

Please advise.

Thank you.

Very truly yours,

Christine Peek

**From:** "Klein, Dennis" <dklein@ucsd.edu>
**Date:** December 22, 2011 9:13:47 AM PST
**To:** "'Schneider, Elena'" <eschneider@mcmanislaw.com>, "McManis, James" <jmcmanis@mcmanislaw.com>
**Cc:** "Park, Daniel" <dwpark@ucsd.edu>, "charles.robinson@ucop.edu" <charles.robinson@ucop.edu>, "Pipkin, Elizabeth" <epipkin@mcmanislaw.com>, "adrienne.witte@ucop.edu" <adrienne.witte@ucop.edu>
**Subject: RE: Notice of Inventory Completion (Native American Graves Protection and Repatriation Act), 76 Fed.Reg. 75908**

Mr. McManis and Ms. Schneider:

This email confirms that we have received your letter. Please understand that the campus officially closes for 10 days from December 24, 2011 to January 2, 2012. Therefore, we will follow up on this matter in January, after the campus reopens. Thank you.

**Dennis M. Klein**
Associate Campus Counsel
UC San Diego
Office of the Campus Counsel
9500 Gilman Drive, MC 0097
University Center 201
La Jolla, CA 92093-0097
Phone: (858) 822-1236
Email: dklein@ucsd.edu

**From:** Schneider, Elena [mailto:eschneider@mcmanislaw.com]
**Sent:** Wednesday, December 21, 2011 11:36 AM
**To:** Klein, Dennis; adrienne.witte@ucop.edu
**Cc:** Park, Daniel; charles.robinson@ucop.edu; Pipkin, Elizabeth; McManis, James
**Subject:** FW: Notice of Inventory Completion (Native American Graves Protection and Repatriation Act), 76 Fed.Reg. 75908

Dear Mr. Klein and Ms. Witte:

Please see Mr. McManis' letter attached. The original email below was sent yesterday to your colleagues. Being that this is a time sensitive matter and we wanted to be sure it has been received by your respective offices.

A response is requested on or before December 27, 2011.

Thank you for your attention to this matter.

Elena Schneider
Legal Assistant

**From:** Schneider, Elena
**Sent:** Tuesday, December 20, 2011 4:29 PM
**To:** 'dpark@ucsd.edu'; 'charles.robinson@ucop.edu'
**Cc:** McManis, James; Peek, Christine
**Subject:** Notice of Inventory Completion (Native American Graves Protection and Repatriation Act), 76 Fed.Reg. 75908

Dear Mr. Park and Mr. Robinson,

Attached please find Mr. McManis' letter of today's date.

Thank you.

Elena Schneider
Legal Assistant

**ELENA K. SCHNEIDER, CCLS**

**McMANIS FAULKNER**
Fairmont Plaza - 10th Floor
50 West San Fernando Street
San Jose, CA 95113
408.279.8700 Telephone
408.279.3244 Facsimile
www.mcmanislaw.com

This email contains confidential information that may be privileged.  Unless you are the addressee named above, you may not copy, use, or distribute it.  If you have received it in error, please contact the sender by reply email and delete all copies.  Thank you.

3

Exhibit F

**Schneider, Elena**

| | |
|---|---|
| **From:** | Klein, Dennis [dklein@ucsd.edu] |
| **Sent:** | Thursday, December 22, 2011 9:14 AM |
| **To:** | Schneider, Elena; McManis, James |
| **Cc:** | Park, Daniel; charles.robinson@ucop.edu; Pipkin, Elizabeth; adrienne.witte@ucop.edu |
| **Subject:** | RE: Notice of Inventory Completion (Native American Graves Protection and Repatriation Act), 76 Fed.Reg. 75908 |

Mr. McManis and Ms. Schneider:

This email confirms that we have received your letter. Please understand that the campus officially closes for 10 days from December 24, 2011 to January 2, 2012. Therefore, we will follow up on this matter in January, after the campus reopens. Thank you.

**Dennis M. Klein**
Associate Campus Counsel
UC San Diego
Office of the Campus Counsel
9500 Gilman Drive, MC 0097
University Center 201
La Jolla, CA 92093-0097
Phone: (858) 822-1236
Email: dklein@ucsd.edu

---

**From:** Schneider, Elena [mailto:eschneider@mcmanislaw.com]
**Sent:** Wednesday, December 21, 2011 11:36 AM
**To:** Klein, Dennis; adrienne.witte@ucop.edu
**Cc:** Park, Daniel; charles.robinson@ucop.edu; Pipkin, Elizabeth; McManis, James
**Subject:** FW: Notice of Inventory Completion (Native American Graves Protection and Repatriation Act), 76 Fed.Reg. 75908

Dear Mr. Klein and Ms. Witte:

Please see Mr. McManis' letter attached. The original email below was sent yesterday to your colleagues. Being that this is a time sensitive matter and we wanted to be sure it has been received by your respective offices.

A response is requested on or before December 27, 2011.

Thank you for your attention to this matter.

Elena Schneider
Legal Assistant

---

**From:** Schneider, Elena
**Sent:** Tuesday, December 20, 2011 4:29 PM
**To:** 'dpark@ucsd.edu'; 'charles.robinson@ucop.edu'
**Cc:** McManis, James; Peek, Christine
**Subject:** Notice of Inventory Completion (Native American Graves Protection and Repatriation Act), 76 Fed.Reg. 75908

Dear Mr. Park and Mr. Robinson,

Attached please find Mr. McManis' letter of today's date.

Thank you.

Elena Schneider
Legal Assistant

**ELENA K. SCHNEIDER, CCLS**
**McMANIS FAULKNER**
Fairmont Plaza - 10th Floor
50 West San Fernando Street
San Jose, CA 95113
408.279.8700 Telephone
408.279.3244 Facsimile
www.mcmanislaw.com

# McManis Faulkner

This email contains confidential information that may be privileged. Unless you are the addressee named above, you may not copy, use, or distribute it. If you have received it in error, please contact the sender by reply email and delete all copies. Thank you.

Exhibit G

## Peek, Christine

| | |
|---|---|
| **From:** | Klein, Dennis [dklein@ucsd.edu] |
| **Sent:** | Friday, December 23, 2011 9:50 AM |
| **To:** | Peek, Christine; charles.robinson@ucop.edu; Park, Daniel; adrienne.witte@ucop.edu |
| **Cc:** | McManis, James; Schneider, Elena |
| **Subject:** | RE: Notice of Inventory Completion (Native American Graves Protection and Repatriation Act), 76 Fed.Reg. 75908 |

Ms. Peek:

The campus does not intend to transfer possession of the remains before having an opportunity to communicate with you further, after the campus reopens.

**Dennis M. Klein**
Associate Campus Counsel
UC San Diego
Office of the Campus Counsel
9500 Gilman Drive, MC 0097
University Center 201
La Jolla, CA 92093-0097
Phone: (858) 822-1236
Email: dklein@ucsd.edu

---

**From:** Peek, Christine [mailto:cpeek@mcmanislaw.com]
**Sent:** Thursday, December 22, 2011 5:47 PM
**To:** Klein, Dennis; charles.robinson@ucop.edu; Park, Daniel; adrienne.witte@ucop.edu
**Cc:** McManis, James; Schneider, Elena
**Subject:** RE: Notice of Inventory Completion (Native American Graves Protection and Repatriation Act), 76 Fed.Reg. 75908

Dear Mr. Klein,

Thank you for your email (below) responding in Mr. Park's absence. We forwarded our letter to you at the suggestion of your front office, because **this is a time-sensitive matter that requires immediate attention**.

We need someone at the University who has the authority to enter into a stipulation not to transfer possession of the La Jolla Skeletons until their legal status may be determined. If you do not have that authority, we would appreciate your forwarding our letter to the person who does.

We understand this time of year poses difficulties. Regrettably, the University published its Notice of Inventory Completion on December 5, 2011, and apparently did not provide our clients notice of its decision until December 19, 2011—three (3) days ago.

Although you pointed out the campus is closed, it appears your office is not, and we still need a response by next Tuesday, December 27, 2011. We would like to avoid having to file a lawsuit and seek a TRO. In this regard, we would like a written assurance from your office that **no transfer of possession**

1

will occur until the parties have at least had an opportunity to discuss some interim arrangement to preserve the status quo pending further proceedings.

Please advise.

Thank you.

Very truly yours,

Christine Peek

**From:** "Klein, Dennis" <dklein@ucsd.edu>
**Date:** December 22, 2011 9:13:47 AM PST
**To:** "'Schneider, Elena'" <eschneider@mcmanislaw.com>, "McManis, James" <jmcmanis@mcmanislaw.com>
**Cc:** "Park, Daniel" <dwpark@ucsd.edu>, "charles.robinson@ucop.edu" <charles.robinson@ucop.edu>, "Pipkin, Elizabeth" <epipkin@mcmanislaw.com>, "adrienne.witte@ucop.edu" <adrienne.witte@ucop.edu>
**Subject: RE: Notice of Inventory Completion (Native American Graves Protection and Repatriation Act), 76 Fed.Reg. 75908**

Mr. McManis and Ms. Schneider:

This email confirms that we have received your letter. Please understand that the campus officially closes for 10 days from December 24, 2011 to January 2, 2012. Therefore, we will follow up on this matter in January, after the campus reopens. Thank you.

**Dennis M. Klein**
Associate Campus Counsel
UC San Diego
Office of the Campus Counsel
9500 Gilman Drive, MC 0097
University Center 201
La Jolla, CA  92093-0097
Phone: (858) 822-1236
Email:  dklein@ucsd.edu

---

**From:** Schneider, Elena [mailto:eschneider@mcmanislaw.com]
**Sent:** Wednesday, December 21, 2011 11:36 AM
**To:** Klein, Dennis; adrienne.witte@ucop.edu
**Cc:** Park, Daniel; charles.robinson@ucop.edu; Pipkin, Elizabeth; McManis, James
**Subject:** FW: Notice of Inventory Completion (Native American Graves Protection and Repatriation Act), 76 Fed.Reg. 75908

Dear Mr. Klein and Ms. Witte:

Please see Mr. McManis' letter attached.  The original email below was sent yesterday to your colleagues.  Being that this is a time sensitive matter and we wanted to be sure it has been received by your respective offices.

A response is requested on or before December 27, 2011.

Thank you for your attention to this matter.

Elena Schneider
Legal Assistant

---

**From:** Schneider, Elena
**Sent:** Tuesday, December 20, 2011 4:29 PM
**To:** 'dpark@ucsd.edu'; 'charles.robinson@ucop.edu'
**Cc:** McManis, James; Peek, Christine
**Subject:** Notice of Inventory Completion (Native American Graves Protection and Repatriation Act), 76 Fed.Reg. 75908

Dear Mr. Park and Mr. Robinson,

Attached please find Mr. McManis' letter of today's date.

Thank you.

Elena Schneider
Legal Assistant

**ELENA K. SCHNEIDER, CCLS**
**McMANIS FAULKNER**
Fairmont Plaza - 10th Floor
50 West San Fernando Street
San Jose, CA 95113
408.279.8700 Telephone
408.279.3244 Facsimile
www.mcmanislaw.com

This email contains confidential information that may be privileged. Unless you are the addressee named above, you may not copy, use, or distribute it. If you have received it in error, please contact the sender by reply email and delete all copies. Thank you.

3

Exhibit H

## Peek, Christine

| | |
|---|---|
| **From:** | Peek, Christine |
| **Sent:** | Friday, December 23, 2011 12:02 PM |
| **To:** | 'Klein, Dennis'; charles.robinson@ucop.edu; Park, Daniel; adrienne.witte@ucop.edu |
| **Cc:** | McManis, James; Schneider, Elena |
| **Subject:** | RE: Notice of Inventory Completion (Native American Graves Protection and Repatriation Act), 76 Fed.Reg. 75908 |

Dear Mr. Klein,

Thank you very much for this courtesy, and for responding so close to the holiday. Would the University be willing to agree to give our office 20 days written notice before transferring possession? Please let us know.

Best wishes,
Christine Peek

**From:** Klein, Dennis [mailto:dklein@ucsd.edu]
**Sent:** Friday, December 23, 2011 9:50 AM
**To:** Peek, Christine; charles.robinson@ucop.edu; Park, Daniel; adrienne.witte@ucop.edu
**Cc:** McManis, James; Schneider, Elena
**Subject:** RE: Notice of Inventory Completion (Native American Graves Protection and Repatriation Act), 76 Fed.Reg. 75908

Ms. Peek:

The campus does not intend to transfer possession of the remains before having an opportunity to communicate with you further, after the campus reopens.

**Dennis M. Klein**
Associate Campus Counsel
UC San Diego
Office of the Campus Counsel
9500 Gilman Drive, MC 0097
University Center 201
La Jolla, CA 92093-0097
Phone: (858) 822-1236
Email: dklein@ucsd.edu

**From:** Peek, Christine [mailto:cpeek@mcmanislaw.com]
**Sent:** Thursday, December 22, 2011 5:47 PM
**To:** Klein, Dennis; charles.robinson@ucop.edu; Park, Daniel; adrienne.witte@ucop.edu
**Cc:** McManis, James; Schneider, Elena
**Subject:** RE: Notice of Inventory Completion (Native American Graves Protection and Repatriation Act), 76 Fed.Reg. 75908

Dear Mr. Klein,

1

Thank you for your email (below) responding in Mr. Park's absence. We forwarded our letter to you at the suggestion of your front office, because **this is a time-sensitive matter that requires immediate attention**.

We need someone at the University who has the authority to enter into a stipulation not to transfer possession of the La Jolla Skeletons until their legal status may be determined. If you do not have that authority, we would appreciate your forwarding our letter to the person who does.

We understand this time of year poses difficulties. Regrettably, the University published its Notice of Inventory Completion on December 5, 2011, and apparently did not provide our clients notice of its decision until December 19, 2011—three (3) days ago.

Although you pointed out the campus is closed, it appears your office is not, and we still need a response by next Tuesday, December 27, 2011. We would like to avoid having to file a lawsuit and seek a TRO. In this regard, we would like a written assurance from your office that **no transfer of possession** will occur until the parties have at least had an opportunity to discuss some interim arrangement to preserve the status quo pending further proceedings.

Please advise.

Thank you.

Very truly yours,

Christine Peek


**From:** "Klein, Dennis" <dklein@ucsd.edu>
**Date:** December 22, 2011 9:13:47 AM PST
**To:** "'Schneider, Elena'" <eschneider@mcmanislaw.com>, "McManis, James" <jmcmanis@mcmanislaw.com>
**Cc:** "Park, Daniel" <dwpark@ucsd.edu>, "charles.robinson@ucop.edu" <charles.robinson@ucop.edu>, "Pipkin, Elizabeth" <epipkin@mcmanislaw.com>, "adrienne.witte@ucop.edu" <adrienne.witte@ucop.edu>
**Subject: RE: Notice of Inventory Completion (Native American Graves Protection and Repatriation Act), 76 Fed.Reg. 75908**

Mr. McManis and Ms. Schneider:

This email confirms that we have received your letter. Please understand that the campus officially closes for 10 days from December 24, 2011 to January 2, 2012. Therefore, we will follow up on this matter in January, after the campus reopens. Thank you.

**Dennis M. Klein**
Associate Campus Counsel
UC San Diego
Office of the Campus Counsel
9500 Gilman Drive, MC 0097
University Center 201
La Jolla, CA 92093-0097
Phone: (858) 822-1236
Email: dklein@ucsd.edu

2

**From:** Schneider, Elena [mailto:eschneider@mcmanislaw.com]
**Sent:** Wednesday, December 21, 2011 11:36 AM
**To:** Klein, Dennis; adrienne.witte@ucop.edu
**Cc:** Park, Daniel; charles.robinson@ucop.edu; Pipkin, Elizabeth; McManis, James
**Subject:** FW: Notice of Inventory Completion (Native American Graves Protection and Repatriation Act), 76 Fed.Reg. 75908

Dear Mr. Klein and Ms. Witte:

Please see Mr. McManis' letter attached. The original email below was sent yesterday to your colleagues. Being that this is a time sensitive matter and we wanted to be sure it has been received by your respective offices.

A response is requested on or before December 27, 2011.

Thank you for your attention to this matter.

Elena Schneider
Legal Assistant

---

**From:** Schneider, Elena
**Sent:** Tuesday, December 20, 2011 4:29 PM
**To:** 'dpark@ucsd.edu'; 'charles.robinson@ucop.edu'
**Cc:** McManis, James; Peek, Christine
**Subject:** Notice of Inventory Completion (Native American Graves Protection and Repatriation Act), 76 Fed.Reg. 75908

Dear Mr. Park and Mr. Robinson,

Attached please find Mr. McManis' letter of today's date.

Thank you.

Elena Schneider
Legal Assistant

**ELENA K. SCHNEIDER, CCLS**
**McMANIS FAULKNER**
Fairmont Plaza - 10th Floor
50 West San Fernando Street
San Jose, CA 95113
408.279.8700 Telephone
408.279.3244 Facsimile
www.mcmanislaw.com

. This email contains confidential information that may be privileged. Unless you are the addressee named above, you may not copy, use, or distribute it. If you have received it in error, please contact the sender by reply email and delete all copies. Thank you.

Exhibit I

## Peek, Christine

| | |
|---|---|
| **From:** | Klein, Dennis [dklein@ucsd.edu] |
| **Sent:** | Friday, December 23, 2011 3:33 PM |
| **To:** | Peek, Christine; charles.robinson@ucop.edu; Park, Daniel; adrienne.witte@ucop.edu |
| **Cc:** | McManis, James; Schneider, Elena |
| **Subject:** | RE: Notice of Inventory Completion (Native American Graves Protection and Repatriation Act), 76 Fed.Reg. 75908 |

Ms. Peek:

I will pass along your request for consideration, and we will be in touch after the campus reopens. Please also understand that I will now be out of the office in connection with the campus' closure and therefore may be unable to respond to any further emails until after the campus reopens.

Thank you.

---

**From:** Peek, Christine [mailto:cpeek@mcmanislaw.com]
**Sent:** Friday, December 23, 2011 12:02 PM
**To:** Klein, Dennis; charles.robinson@ucop.edu; Park, Daniel; adrienne.witte@ucop.edu
**Cc:** McManis, James; Schneider, Elena
**Subject:** RE: Notice of Inventory Completion (Native American Graves Protection and Repatriation Act), 76 Fed.Reg. 75908

Dear Mr. Klein,

Thank you very much for this courtesy, and for responding so close to the holiday. Would the University be willing to agree to give our office 20 days written notice before transferring possession? Please let us know.

Best wishes,
Christine Peek

---

**From:** Klein, Dennis [mailto:dklein@ucsd.edu]
**Sent:** Friday, December 23, 2011 9:50 AM
**To:** Peek, Christine; charles.robinson@ucop.edu; Park, Daniel; adrienne.witte@ucop.edu
**Cc:** McManis, James; Schneider, Elena
**Subject:** RE: Notice of Inventory Completion (Native American Graves Protection and Repatriation Act), 76 Fed.Reg. 75908

Ms. Peek:

The campus does not intend to transfer possession of the remains before having an opportunity to communicate with you further, after the campus reopens.

**Dennis M. Klein**
Associate Campus Counsel
UC San Diego
Office of the Campus Counsel
9500 Gilman Drive, MC 0097
University Center 201
La Jolla, CA 92093-0097

1

Phone: (858) 822-1236
Email: dklein@ucsd.edu

---

**From:** Peek, Christine [mailto:cpeek@mcmanislaw.com]
**Sent:** Thursday, December 22, 2011 5:47 PM
**To:** Klein, Dennis; charles.robinson@ucop.edu; Park, Daniel; adrienne.witte@ucop.edu
**Cc:** McManis, James; Schneider, Elena
**Subject:** RE: Notice of Inventory Completion (Native American Graves Protection and Repatriation Act), 76 Fed.Reg.
75908

Dear Mr. Klein,

Thank you for your email (below) responding in Mr. Park's absence. We forwarded our letter to you at
the suggestion of your front office, because **this is a time-sensitive matter that requires immediate
attention**.

We need someone at the University who has the authority to enter into a stipulation not to transfer
possession of the La Jolla Skeletons until their legal status may be determined. If you do not have that
authority, we would appreciate your forwarding our letter to the person who does.

We understand this time of year poses difficulties. Regrettably, the University published its Notice of
Inventory Completion on December 5, 2011, and apparently did not provide our clients notice of its
decision until December 19, 2011—three (3) days ago.

Although you pointed out the campus is closed, it appears your office is not, and we still need a
response by next Tuesday, December 27, 2011. We would like to avoid having to file a lawsuit and seek
a TRO. In this regard, we would like a written assurance from your office that **no transfer of possession**
will occur until the parties have at least had an opportunity to discuss some interim arrangement to
preserve the status quo pending further proceedings.

Please advise.

Thank you.

Very truly yours,

Christine Peek

**From:** "Klein, Dennis" <dklein@ucsd.edu>
**Date:** December 22, 2011 9:13:47 AM PST
**To:** "'Schneider, Elena'" <eschneider@mcmanislaw.com>, "McManis, James"
<jmcmanis@mcmanislaw.com>
**Cc:** "Park, Daniel" <dwpark@ucsd.edu>, "charles.robinson@ucop.edu" <charles.robinson@ucop.edu>,
"Pipkin, Elizabeth" <epipkin@mcmanislaw.com>, "adrienne.witte@ucop.edu"
<adrienne.witte@ucop.edu>
**Subject:** RE: Notice of Inventory Completion (Native American Graves Protection and Repatriation
Act), 76 Fed.Reg. 75908

Mr. McManis and Ms. Schneider:

This email confirms that we have received your letter. Please understand that the campus officially closes for 10 days from December 24, 2011 to January 2, 2012. Therefore, we will follow up on this matter in January, after the campus reopens. Thank you.

**Dennis M. Klein**
Associate Campus Counsel
UC San Diego
Office of the Campus Counsel
9500 Gilman Drive, MC 0097
University Center 201
La Jolla, CA 92093-0097
Phone: (858) 822-1236
Email: dklein@ucsd.edu

---

**From:** Schneider, Elena [mailto:eschneider@mcmanislaw.com]
**Sent:** Wednesday, December 21, 2011 11:36 AM
**To:** Klein, Dennis; adrienne.witte@ucop.edu
**Cc:** Park, Daniel; charles.robinson@ucop.edu; Pipkin, Elizabeth; McManis, James
**Subject:** FW: Notice of Inventory Completion (Native American Graves Protection and Repatriation Act), 76 Fed.Reg. 75908

Dear Mr. Klein and Ms. Witte:

Please see Mr. McManis' letter attached. The original email below was sent yesterday to your colleagues. Being that this is a time sensitive matter and we wanted to be sure it has been received by your respective offices.

A response is requested on or before December 27, 2011.

Thank you for your attention to this matter.

Elena Schneider
Legal Assistant

---

**From:** Schneider, Elena
**Sent:** Tuesday, December 20, 2011 4:29 PM
**To:** 'dpark@ucsd.edu'; 'charles.robinson@ucop.edu'
**Cc:** McManis, James; Peek, Christine
**Subject:** Notice of Inventory Completion (Native American Graves Protection and Repatriation Act), 76 Fed.Reg. 75908

Dear Mr. Park and Mr. Robinson,

Attached please find Mr. McManis' letter of today's date.

Thank you.

Elena Schneider
Legal Assistant

**ELENA K. SCHNEIDER, CCLS**

3

**McMANIS FAULKNER**
Fairmont Plaza - 10ᵗʰ Floor
50 West San Fernando Street
San Jose, CA 95113
408.279.8700 Telephone
408.279.3244 Facsimile
www.mcmanislaw.com

This email contains confidential information that may be privileged.  Unless you are the addressee named above, you may not copy, use, or distribute it.  If you have received it in error, please contact the sender by reply email and delete all copies.  Thank you.

4

Exhibit J

## Peek, Christine

| | |
|---|---|
| **From:** | Schneider, Elena |
| **Sent:** | Friday, December 30, 2011 3:01 PM |
| **To:** | Tim White; Margaret Schoeninger; Robert Bettinger |
| **Cc:** | McManis, James; Peek, Christine |
| **Subject:** | Request for Stipulation (La Jolla Skeletons) |
| **Attachments:** | 2011-12-30 LT Dan Park, Charles Robinson and Dennis Klein (req. for stipulation).pdf |

Dear All,

Attached please find a copy of Ms. Peek's letter of today's date to Dan Park, Charles Robinson, and Dennis Klein.

Thank you.

Elena Schneider
Legal Assistant to Christine Peek, Esq.

**ELENA K. SCHNEIDER, CCLS**
**McMANIS FAULKNER**
Fairmont Plaza - 10th Floor
50 West San Fernando Street
San Jose, CA 95113
408.279.8700 Telephone
408.279.3244 Facsimile
www.mcmanislaw.com

# McManis Faulkner

This email contains confidential information that may be privileged. Unless you are the addressee named above, you may not copy, use, or distribute it. If you have received it in error, please contact the sender by reply email and delete all copies. Thank you.

December 30, 2011

**VIA ELECTRONIC MAIL & CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

Dan Park, Chief Campus Counsel &
Associate General Counsel
University of California, San Diego
Office of the Chancellor
9500 Gilman Drive
La Jolla, CA 92093-0005
dpark@ucsd.edu

Charles F. Robinson, Vice President and
General Counsel for Legal Affairs
University of California
Office of the General Counsel
1111 Franklin Street, 8th Floor
Oakland, CA 94607
charles.robinson@ucop.edu

Dennis Klein
Associate Campus Counsel
University of California, San Diego
Office of the Chancellor
9500 Gilman Drive
La Jolla, CA 92093-0005
dklein@ucsd.edu

　　　　Re:　　**Request for Stipulation (La Jolla Skeletons)**

Dear Counsel:

This letter follows our communications last week, concerning the matter of the two, approximately 10,000 year-old skeletons currently located at the San Diego Archaeological Center ("SDAC"). Thank you again for speaking with us, even though your campus was closed.

We appreciate very much your agreement not to transfer the skeletons until we have had an opportunity to speak further. As you know, however, the January 4, 2012 deadline is approaching quickly. We understand the campus does not reopen until January 3, 2012. Although we hope we can reach an agreement that UCSD will give our office 20 days prior notice before transferring possession of the skeletons, if this cannot be accomplished by January 3, we do not have much time to seek relief from the Court.

We would very much like to avoid having to burden the University and our clients with unnecessary legal proceedings. Please let us know when you are available to speak on January 3, 2012.

If you cannot agree to the requested 20-days notice, can you at least agree to forbear transferring possession of the skeletons until we have had an opportunity to present our request for a temporary restraining order and preliminary injunction to the Court?

**McManis Faulkner**

Telephone 408.279.8700  |  Facsimile 408.279.3244  |  **mcmanislaw.com**
Fairmont Plaza, 10th floor, 50 W. San Fernando Street, San Jose, California 95113

University Counsel
December 30, 2011
Page 2

In order to provide notice of the arguments we intend to present, we have enclosed
our points and authorities and declarations in support of our TRO and injunction
request, which we have not yet filed. If we cannot reach a satisfactory agreement
regarding the maintenance of the skeletons in a manner that preserves their full
research potential by January 3, 2012, we will seek a TRO at 11:00 a.m. on January
4, 2012, in Department 31 of the Alameda County Superior Court.

**We wish to emphasize that we are committed to negotiating a voluntary
agreement to preserve the skeletons in their current location and condition.
The timing of the University's Repatriation Notice, however, requires us also
to give notice of our intent to seek a TRO. We look forward to working with
you next week to avoid the need for such measures.**

Thank you very much for your prompt attention to this matter.

Very truly yours,

McMANIS FAULKNER

*Christine E. Peek*

JAMES McMANIS
CHRISTINE PEEK
JM:CP:eks

Encl.

cc.    United States Department of Interior, Office of the Solicitor

# McManis Faulkner

Exhibit K

## TOLLING AGREEMENT

This tolling agreement ("agreement") is made and entered into this 25th day of January, 2012, by and between TIMOTHY WHITE, ROBERT L. BETTINGER, and MARGARET SCHOENINGER (collectively, "plaintiffs"), and THE REGENTS OF THE UNIVERSITY OF CALIFORNIA (including, and on behalf of, the University of California, and the University of California, San Diego), MARK G. YUDOF, MARYE ANNE FOX, and GARY MATTHEWS (collectively, "defendants").

WHEREAS, on or about December 5, 2011, a Notice of Inventory Completion: The University of California, San Diego, San Diego, CA was published in the Federal Register, which asserted that the University of California, San Diego "completed an inventory of human remains and associated funerary objects, in consultation with the appropriate Indian Tribes, and have determined that there is no cultural affiliation between the remains and any present-day Indian Tribe." The notice further provided that after January 4, 2012, disposition of the human remains ("La Jolla Skeletons") and associated funerary objects to the La Posta Band of Diegueno Mission Indians may proceed if no additional requestors came forward;

WHEREAS, plaintiffs wish to study the La Jolla Skeletons and therefore oppose such disposition;

WHEREAS, on December 20, 2011, plaintiffs provided notice to defendants of their opposition to the disposition, and asked the University to continue to retain the La Jolla Skeletons in their current condition and location at the San Diego Archaeological Center (SDAC);

WHEREAS, plaintiffs and defendants (collectively, the "parties") have been attempting to avoid litigation by allowing themselves the opportunity to discuss and seek possible resolution of claims relating to the La Jolla Skeletons, and therefore have been meeting and conferring with each other since December 20, 2011;

THEREFORE, the parties agree and bind themselves as follows:

1.   The parties agree that any and all statutes of limitation applicable to any claims whatsoever that plaintiffs may have against defendants relating to the La Jolla Skeletons that have not already expired shall be tolled to and including April 16, 2012.

2.   The parties agree that defendants will continue to retain the La Jolla Skeletons in their current condition and location at the SDAC, to and including April 30, 2012.

3.   The parties agree that plaintiffs and their counsel will refrain from initiating any legal action concerning the La Jolla Skeletons until April 16, 2012.

4.   The persons signing on behalf of the parties set forth below represent that they have authority to enter into this agreement on behalf of those parties.

5.   Facsimile signatures and signatures executed in counterparts shall be valid as originals.

Dated: 1/24/12                              TIMOTHY WHITE,
                                            ROBERT L. BETTINGER, and
                                            MARGARET SCHOENINGER


                                            By: _Christine P. Peek_
                                                CHRISTINE PEEK
                                                Attorneys for Plaintiffs

Dated: 1-25-12                              THE REGENTS OF THE
                                            UNIVERSITY OF CALIFORNIA,
                                            MARK G. YUDOF,
                                            MARYE ANNE FOX,
                                            GARY MATTHEWS, AND
                                            DOES 1-50


                                            By: _Karen J. Petrulakis_
                                                UNIVERSITY COUNSEL
                                                Attorneys for Defendants

Exhibit L

March 22, 2012

**VIA ELECTRONIC MAIL & UNITED STATES MAIL**

Margaret Wu, Esq.
Senior Counsel
University of California
Office of the General Counsel
1111 Franklin Street, 8th Floor
Oakland, CA 94607
margaret.wu@ucop.edu

Dennis Klein, Esq.
Associate Campus Counsel
University of California, San Diego
Office of the Chancellor
9500 Gilman Drive
La Jolla, CA 92093-0005
dklein@ucsd.edu

  Re:   **White et al. v. University of California et al.**

Dear Margaret and Dennis:

We have discussed the University's settlement position with our clients. This letter is their response.

First, both Jim and I appreciated your willingness to meet with us in an effort to settle this dispute.

Second, we are satisfied that both sides acted in good faith in their efforts to settle this case. We understand the University's unwillingness to proceed further with settlement negotiations unless the Native American tribes are parties to the proceedings, and although we respectfully disagree with your client's view in that regard, we accept your assertion that it is a sincerely held one.

That said, we do not believe that the tribes be involved in the initial stages of negotiation is conducive to settlement. Our clients' dispute is with the University, not with the tribes. We understand your apprehension regarding the tribes. We do not want to become embroiled in the University's dispute with the tribes, however. We want to settle our dispute with the University.

Accordingly, we respectfully decline to accept the condition that further settlement proceedings may only occur with the immediate participation of the Native American tribes.

Given this impasse, I suggest we discuss next steps in the litigation, principally: filing and service of the complaint and petition, time for response by the defendants, and a procedure to preserve the status quo with respect to the human remains, i.e., an order keeping them in the same location and condition while the litigation is pending.

**McManis-Faulkner**

University Counsel
March 22, 2012
Page 2

Perhaps you might suggest a time for a conference call.

Thank you.

Very truly yours,

McMANIS FAULKNER

*Christine F. Peek*

CHRISTINE PEEK
CP:eks

**McManis Faulkner**

Exhibit M

## MUNGER, TOLLES & OLSON LLP

560 MISSION STREET

TWENTY-SEVENTH FLOOR

SAN FRANCISCO, CALIFORNIA 94105-2907

TELEPHONE (415) 512-4000

FACSIMILE (415) 512-4077

———

355 SOUTH GRAND AVENUE

LOS ANGELES, CALIFORNIA 90071-1560

TELEPHONE (213) 683-9100

FACSIMILE (213) 687-3702

April 4, 2012

'A PROFESSIONAL CORPORATION

**VIA E-MAIL AND US MAIL**

Christine Peek
McManis Faulkner
Fairmont Plaza, 10th Floor
50 W. San Fernando St.
San Jose, CA 95113
cpeek@mcmanislaw.com

WRITER'S DIRECT LINE
(415) 512-4042
(415) 644-6942 FAX
Michelle.Friedland@mto.com

RECEIVED
APR 0 6 2012
BY:

Re:  *White, et al. v. University of California, et al.*

Dear Ms. Peek:

We have been retained to represent the defendants in the expected above-referenced litigation. Our clients were disappointed that Plaintiffs declined to engage in mediation. Because Ms. Wu and Mr. Klein have already discussed with you why Defendants believe any mediated resolution of this matter would require participation of the Tribes, I will not discuss that further here. Rather, I write to respond to the other topics in your March 22, 2012 letter.

Under the terms of the existing tolling agreement, we expect Plaintiffs will file their complaint and petition on April 16, 2012, or soon thereafter. If Plaintiffs file papers substantially the same as the drafts you already shared with us, Defendants will be able to respond within the time provided by the applicable rules. If Plaintiffs' papers are not substantially the same, Defendants may need to seek an appropriate extension. You may email and FedEx me Plaintiffs' papers in lieu of service.

Assuming Plaintiffs file the week of April 16, 2012, and assuming that Plaintiffs

MUNGER, TOLLES & OLSON LLP
Christine Peek
April 4, 2012
Page 2

do not unreasonably attempt to delay the progress of the litigation, Defendants will agree to keep the human remains in the same location and condition while the litigation is pending.  We expect that Defendants' agreement to do so will avoid any need for Plaintiffs to move for a temporary restraining order or preliminary injunction.

If you would like to discuss any of these issues by phone, please let me know.

Sincerely,

Michelle Friedland

Michele Friedland

16964885.1

MUNGER, TOLLES & OLSON LLP

560 MISSION STREET
TWENTY-SEVENTH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2907

mf21940-00009

95113-2415

Christine Peek
McManis Faulkner
Fairmont Plaza, 10th Floor
50 W. San Fernando St.
San Jose, CA 95113





HASLER

014H1S214312
$0.450
Mailed From 94105
04/04/2012

US POSTAGE

APR 0 6 2012

Exhibit N

**Peek, Christine**

| | |
|---|---|
| **From:** | Schneider, Elena |
| **Sent:** | Monday, April 09, 2012 5:17 PM |
| **To:** | Michelle.Friedland@mto.com |
| **Cc:** | Peek, Christine |
| **Subject:** | White v. University of California, et al. |
| **Attachments:** | 2012-04-09 LTA Friedland (stip re preserving skeletons).pdf |

Dear Ms. Friedland,

Attached please find Christine Peek's letter of today's date. A hard copy will follow via U.S. Mail.

Thank you.

Elena Schneider
**ELENA K. SCHNEIDER, CCLS**
**LEGAL ASSISTANT TO CHRISTINE PEEK, ESQ.**
**McMANIS FAULKNER**
Fairmont Plaza - 10th Floor
50 West San Fernando Street
San Jose, CA 95113
408.279.8700 Telephone
408.279.3244 Facsimile
www.mcmanislaw.com

# McManis+Faulkner

This email contains confidential information that may be privileged. Unless you are the addressee named above, you may not copy, use, or distribute it. If you have received it in error, please contact the sender by reply email and delete all copies. Thank you.

April 9, 2012

**VIA ELECTRONIC MAIL & UNITED STATES MAIL**

Michelle T. Friedland
Munger, Tolles & Olson LLP
560 Mission Street
27th Floor
San Francisco CA 94105

      · **Re:** · ***White v. University of California, et al.***

Dear Ms. Friedland:

Thank you for agreeing to keep the La Jolla Skeletons in the same location and condition while the litigation is pending. Enclosed for your review and signature please find a Stipulation And Proposed Order Preserving The La Jolla Skeletons In Their Current Location And Condition.

If the enclosed stipulation is acceptable, please sign and date it, and return the signature page to our office by mail and facsimile. We will file it as soon as possible after we file the Writ Petition and Complaint.

If you have any questions, please call me.

Thank you.


Very truly yours,

McMANIS FAULKNER

*Christine E. Peek*

CHRISTINE PEEK
CP:eks

Encl.


# McManis Faulkner

Telephone 408.279.8700   |   Facsimile 408.279.3244   |   **mcmanislaw.com**
Fairmont Plaza, 10th floor, 50 W. San Fernando Street, San Jose, California 95113